# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| TRAVIS JAMES, STEFANIE SHEEHAN, KIMBERLY GAMBOA, and KOREY WILLIAMS, individually and on behalf of all others similarly situated, | Case No. 3:21-cv-02318-M<br><br>Hon. Barbara M. G. Lynn |
| Plaintiffs, | |
| v. | |
| DAVACO, INC., and DAVACO LP, | |
| Defendants. | |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

**TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................................1

II.    CASE SUMMARY...............................................................................................1

    A.  Factual Background ....................................................................................1

    B.  Procedural Background ...............................................................................2

    C.  Settlement Negotiations .............................................................................3

III.   THE PROPOSED SETTLEMENT .....................................................................3

    A.  The Settlement Class Definition .................................................................3

    B.  Compensation to Settlement Class ............................................................3

    C.  Security Measures Undertaken by Defendants ..........................................7

    D.  Notice to the Class and Costs of Claims Administration ...........................8

    E.  Attorneys' Fees, Costs, and Expenses and Service Awards.......................8

    F.  Cost of Serving Notices Under the Class Action Fairness Act...................8

IV.    PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT IS APPROPRIATE............8

    A.  Legal Standard and Reed Factors...............................................................8

    B.  The Proposed Settlement Merits Preliminary Approval...........................10

        1.  The Class is Adequately Represented .................................................10

        2.  The Proposed Settlement is the Result of Arm's Length Negotiations and Free from Fraud or Collusion .................................................................11

        3.  The Proposed Settlement Offers Class Benefits and Compensation that are Fair, Adequate, and Reasonable Alternatives to the Costs, Risks, and Delay of Trial and Appeal .................................................................13

        4.  Other Factors Required under Rule 23(e)(2)(C) Support Preliminary Approval ........15

        5.  The Settlement Treats All Class Members Equitably Relative to One Another..........16

        6.  The Stage of the Proceedings and the Amount of Discovery Completed....................17

        7.  The Opinions of Class Counsel, Plaintiffs, and Absent Class Members........................18

V.   THE COURT SHOULD CERTIFY THE PROPOSED CLASS...................................................19

   A.   The Class meets the Requirements of Rule 23(a)...............................................................19

      1.   The Class is Sufficiently Numerous .................................................................................19

      2.   The Commonality Requirement is Met .............................................................................20

      3.   The Typicality Requirement is Met...................................................................................20

      4.   The Adequacy Requirement is Met ...................................................................................21

   B.   The Class Satisfies the Predominance Test Under Rule 23(b)(3) .......................................22

      1.   Common Questions Predominate Over Any Individual Questions.................................22

      2.   A Class Action Is Superior to Other Available Methods for the Fair and
           Efficient Adjudication of the Controversy.......................................................................23

VI.   CONCLUSION .......................................................................................................................25

# Table of Authorities

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA,*
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ............................................................... 11

*Amchem Prod., Inc. v. Windsor,*
521 U.S. 591 (1997) ............................................................................................. 10, 23

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.,*
211 F.R.D. 457 (S.D. Fla. 2002) .............................................................................. 14

*Bennet v. Behring Corp.,*
737 F.2d 982 (11th Cir. 1984) .................................................................................. 10

*Butler v. Sears Roebuck & Co.,*
727 F.3d 796 (7th Cir. 2013) .................................................................................... 24

*Chambers v. Whirlpool Corp.,*
980 F.3d 645 (9th Cir. 2020) .................................................................................... 13

*Collins v. Sanderson Farms, Inc.,*
568 F. Supp. 2d 714 (E.D. La. 2008) ....................................................................... 14

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977) ......................................................................... 9, 10, 14

*DeHoyos v. Allstate Corp.,*
240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................ 15, 26

*Erica P. John Fund, Inc. v. Halliburton Co.,*
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........................................................... 13

*Feder v. Elec. Data, Sys. Corp.,*
429 F.3d 125 (5th Cir. 2005) ............................................................................... 12, 23

*Hays v. Eaton Grp. Att'ys, LLC,*
2019 WL 427331 (M.D. La. Feb. 4, 2019) ................................................................ 11

*Ibe v. Jones,*
836 F.3d 516 (5th Cir. 2016) .................................................................................... 22

*In re Combustion, Inc.,*
968 F. Supp. 1116 (W.D. La. 1997) .......................................................................... 14

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195 (5th Cir. 1981) ............................................................................... 10, 19

*In re Extreme Networks,*
2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................................................. 18

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
851 F.Supp.2d 1040 (S.D. Tex. 2012) ................................................................. 12, 14

*In re Katrina Canal Breaches Litig.*,
  628 F.3d 185 (5th Cir. 2010) ................................................................................11

*In re Lease Oil Antitrust Litig. (No. II)*,
  186 F.R.D. 403 (S.D. Tex. 1999) ..........................................................................19

*In re Oil Spill by Oil Rig Deepwater Horizon*,
  910 F. Supp. 2d 891 (E.D. La. 2012) ...................................................................24

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2nd Cir. 1998) ................................................................................9

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993) ...........................................................................11

*In re TWL*,
  712 F.3d 886 (5th Cir. 2013) ................................................................................25

*Jones v. Singing River Health Servs. Found.*,
  865 F.3d 285 (5th Cir. 2017) ................................................................................13

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ...........................................................................13

*Maher v. Zapata*,
  714 F.2d 436 (5th Cir. 1983) ..................................................................................9

*Marcus v. J.C. Penney Co., Inc.*,
  2017 WL 6590976 (E.D. Tex. 2017) ....................................................................19

*Morrow v. Washington*,
  277 F.R.D. 172 (E.D. Tex. 2011) .........................................................................23

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ...............................................................21, 22, 25

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) ................................................................................11

*Nguyen v. Baxter Healthcare Corp.*,
  275 F.R.D. 596 (C.D. Cal. 2011) .........................................................................25

*ODonnell v. Harris Cnty.*,
  2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ......................................................11

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) .......................................................................11, 15

*Quintanilla v. A & R Demolition Inc.*,
  2008 WL 9410399 (S.D. Tex. May 7, 2007) .......................................................16

*Radcliffe v. Experian Info. Sols., Inc.*,
  715 F.3d 1157 (9th Cir. 2013) ..............................................................................12

iv

*Reed v. General Motors Corp.,*
    703 F.2d 170 (5th Cir. 1983) ........................................................................ 11, 13, 14, 19

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 21, 23

*Stott v. Cap. Fin. Servs. Inc.,*
    277 F.R.D. 316 (N.D. Tex. Nov. 8, 2005) ........................................................ 11

*Turner v. Murphy Oil USA, Inc.,*
    472 F. Supp. 2d 830 (E.D. La. 2007) .............................................................. 9, 20

*Union Asset Mgmt. Holding A.G. v. Dell,*
    669 F.3d 632 (5th Cir. 2012) ......................................................................... 11

*United States v. Allegheny-Ludlum Indus., Inc.,*
    517 F.2d 826 (5th Cir. 1975) ......................................................................... 10

*Vaughn v. Am. Honda Motor Co.,*
    627 F. Supp. 2d 738 (E.D. Tex. 2007) ............................................................ 9, 25

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ................................................................................... 21, 24

*Welsh v. Navy Fed. Credit Union,*
    2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ................................................ 13, 25

*Zamora Jordan v. Nationstar Mortg., LLC,*
    2019 WL 1966112 (E.D. Wash. May 2, 2019) ................................................ 18

**Statutes**
28 U.S.C. § 1715 ................................................................................................ 9

**Rules**
Federal Rule of Civil Procedure 23 ................................................................. passim

**Treatises**
*Manual for Complex Litigation, Second* § 30.44 (1985) ................................ 11

## I.      INTRODUCTION

This case stems from the data security incident whereby a third party or parties gained unauthorized access to Davaco, Inc's. and Davaco LP's (collectively "Defendants" or "Davaco") computer systems on or about June 11, 2021, which may have affected approximately 14,193 past and current Davaco employees' Personal Information ("Security Incident"). Plaintiffs allege the Security Incident occurred as a result of Defendants' failure to properly secure and safeguard private information belonging to their current and former employees, including but not limited to, employee names, Social Security numbers, and driver's license numbers or government-issued identification numbers (collectively, "Personal Information"). Defendants have and continue to deny Plaintiffs' allegations and claims of wrongdoing or liability of any kind related to the Security Incident.

On April 7, 2022, the Parties attended a full day mediation session with Christopher Nolland, Esq., a highly experienced mediator. Thereafter, the Parties continued negotiations and attended three additional partial day mediation sessions over the next two weeks. These negotiations resulted in agreement on the basic terms of the settlement, and ultimately, continuing negotiations resulted in the written settlement agreement ("Settlement Agreement" or "SA") attached hereto as **Exhibit 1**.

## II.     CASE SUMMARY

### A.       Factual Background

Defendants are a leading provider of customized logistics solutions. They provide support to public and private sector clients with multi-site project management and resource deployment for the development, transformation, and maintenance of physical sites. Defendants employ over 1,700 individuals across North America.[1] As a prerequisite to employment with Defendants, current and former employees provided Defendants with Personal Information such as names, dates of birth, Social Security numbers (or National IDs), and other information.

_____

[1] *See* https://www.davaco.com/about (last accessed August 15, 2022)

On or about July 2, 2021, Defendants began notifying 14,193 current and former employees and state Attorneys General about the Data Breach that occurred on or about June 11, 2021. According to the Notice of Data Breach letters ("Notice") sent to persons whose data may have been impacted, Defendants were alerted to suspicious activity on their computer network on June 11, 2021. Unauthorized actors had entered Defendants' network and a ransomware event followed. The Notice advised that the unauthorized actor(s) viewed and removed data stored in Defendants' computer network that potentially included Plaintiffs' and Class Members' Personal Information, including their names, Social Security numbers, and driver's license or government issued identification numbers.[2]

### B.   Procedural Background

On September 29, 2021, Plaintiff James filed his complaint in the U.S. District Court, Northern District of Texas (Dallas Division): *Travis James v. Davaco, Inc., Davaco LP, and Crane Worldwide Logistics LLC*, No. 3:22-cv-02318-M. ECF No. 1. Thereafter, pursuant to a Joint Stipulation to transfer *Charles Chacon v. Davaco*, then pending in the Central District of California, to the Northern District of Texas, on December 6, 2021, it was transferred to this Court and assigned case No. 3:21-cv-02786-M. Consolidation followed on December 7, 2021, under case No. 3:21-cv-02318-M. ECF No. 15.

On January 10, 2022, Plaintiffs James, Gamboa, Sheehan and Williams filed a Consolidated Class Action Complaint ("CAC"), asserting causes of action for: (1) negligence; (2) invasion of privacy; (3) breach of implied contract; (4) unjust enrichment; (5) breach of fiduciary duty; (6) breach of confidence; (7) declaratory and injunctive relief; (8) violation of the California Consumer Privacy Act (Cal. Civ. § 1798.100) ("CCPA"); and (9) violation of the California Unfair Competition Law

---

[2] https://apps.web.maine.gov/online/aeviewer/ME/40/07bf9dbb-2a4a-47d4-9530-1a0d446b5c6c/9468d6db-bebf-42fb-8fb3-bb3cae764ba4/document.html (sample of Notice Defendant sent to members of the proposed Class and state Attorneys General) (last accessed August 15, 2022).

(Cal. Business & Professions Code § 17200, *et seq.*). ECF No. 23. On February 22, 2022, the Court granted the parties' Joint Motion to Stay Pending Mediation. ECF No. 27.

### C. Settlement Negotiations

The Parties were assisted in settlement negotiations by Christopher Nolland, Esq.[3] With Mr. Nolland's assistance, the Parties reached the proposed settlement. The settlement described below is fair, adequate, and reasonable, was negotiated at arm's length, in good faith, and is free of any collusion. *See* Declaration of Gayle M. Blatt ("Blatt Decl.") ¶ 10, attached as Exhibit 1, Declaration of M. Anderson Berry ("Berry Decl.") ¶ 2, attached as Exhibit 2, Declaration of Joshua B. Swigart ("Swigart Decl.") ¶ 2, attached as Exhibit 3, and Declaration of Rachele R. Byrd ("Byrd Decl.") ¶ 2, attached as Exhibit 4.

## III. THE PROPOSED SETTLEMENT

### A. The Settlement Class Definition

The proposed Settlement Class includes a nationwide class and California Subclass (collectively "Settlement Class") defined as:

> Settlement Class: All individuals identified by Defendants and to whom Defendants sent notice on or about July 2, 2021 that their information may have been impacted in the Security Incident.

> California Subclass: All individuals in the Settlement Class who resided in California on June 11, 2021.

The Settlement Class specifically excludes all Members who fully and properly execute a written request to be excluded (opt-out) that is timely delivered to the Claims Administrator and is postmarked on or before the end of the Opt-Out Period. SA ¶ 1.21.

### B. Compensation to Settlement Class

The Parties negotiated a Common Settlement Fund ("Settlement Fund") of five hundred

---

[3] Mr. Nolland has been a mediator and arbitrator since 1993 and is a Fellow of the American College of Civil Trial Mediators, a member of the National Academy of Distinguished Neutrals (both by invitation only), and a member of the Association of Attorney Mediators and the ADR and Litigation sections of National, State and Local Bar Associations *See* https://nolland.com/profile (last accessed August 15, 2022).

forty thousand dollars ($540,000.00). In addition, Defendants agree to implement and maintain non-monetary benefits undertaken as additional safeguards in response to the Security Incident as detailed below. If the Settlement is approved, the disputes and claims between the Parties will be fully and finally resolved, and the claims of the Plaintiffs and the Settlement Class relating to this Security Incident will be released. Cash payments to the Settlement Class, the costs of Identity Fraud Monitoring, notice and Claims Administration expenses, service award payments, and attorneys' fees and litigation costs and expenses will be deducted from the Settlement Fund. Class Counsel intend to seek and will separately apply for up to one-third (33 1/3 percent) of the Settlement Fund in attorneys' fees, plus reimbursement of litigation costs and expenses incurred, as well as a $2,500.00 service award for each of the Settlement Class representatives. Notice and administration expenses are expected not to exceed $60,000.00.

Based on the facts and circumstances of this Security Incident, Plaintiffs believe the $540,000.00 Settlement is a very favorable result for the Settlement Class. The inherent risks in continuing to litigate this matter could severely reduce the benefits Plaintiffs and the Settlement Class could expect to receive from the settlement as proposed.

The claims process detailed in the Settlement Agreement is straightforward. Settlement Class Members seeking an Award must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted electronically in accordance with the requirements for electronic submission of a Claim Form, on or before the Claims Deadline. *See* Claim Form, Appendix Exhibit A to Attachment 1. All Settlement Class Members may submit a Settlement Claim electing one or more of the following benefits: Settlement Class Members may elect either a Basic Award of $185.00 *or* 36 months of identity-theft protection services; a claim for a Reimbursement Award of up to $5,000 for documented losses; and where applicable, compensation for Time Spent at $20.00 per hour for up to 5 hours upon attestation. California Subclass Members may make a claim for an

additional cash award of $175.00 in recognition of their CCPA claim, as set forth below.

      **1.**      **Basic Award or Identity Theft Protection Services:** Each Settlement Class Member is eligible to elect and receive a Basic Award or identity theft protection services, regardless of whether they experienced any fraudulent or unauthorized activity or identifiable losses. SA ¶ 2.2.1.

      *Basic Award*: The Basic Award will initially be set at $185.00 per Settlement Class Member, and the actual amount to be paid is subject to upward or downward proration as described in paragraph 7.3 of the SA, depending upon the number and value of valid claims. *Id.*

      *Identity Theft Protection*: In lieu of a Basic Award, Settlement Class Members may elect to receive 36 months of free identity-theft protection services, called "Financial Shield" by Aura. For Settlement Class Members who opted to receive the one or two years of credit monitoring initially offered by Defendants, "Financial Shield" shall be in addition to that time. "Financial Shield" includes, at least, the following, or similar, services: up to $1,000,000 reimbursement insurance covering losses due to identity theft and stolen funds, financial transaction monitoring, continuous monitoring for high risk transactions, notification of attempts to use the Settlement Class Member's Social Security number, fictitious identity monitoring, online tax fraud monitoring and alerts, home title monitoring, dark web and public record monitoring, credit security freeze assistance and lost wallet protection. SA ¶ 2.2.1(b).

      **2.**      **Reimbursement Award:** A Settlement Class Member who incurred Out-of-Pocket Expenses fairly traceable to the Security Incident and submits an Approved Claim for a Reimbursement Award shall be eligible to receive a Reimbursement Award consisting of reimbursement of up to $5,000.00. SA ¶ 2.2.2. In assessing what qualifies as "fairly traceable," the Claims Administrator shall consider (i) whether the expenses were incurred during the Unauthorized Activity Period; and (ii) any other information provided by the Settlement Class

Member supporting that reimbursement is appropriate in accordance with the terms of the

Agreement. SA ¶ 2.2.2. To receive a Reimbursement Award, a Settlement Class Member must

provide: (i) documentation sufficient to show unauthorized charges or other losses experienced

during the Unauthorized Activity Period that were not reimbursed or denied and all claimed

losses from such charges; (ii) documentation that enables the Claims Administrator to determine

that the Out of Pocket Expenses were fairly traceable to the Security Incident; and (iii) an

attestation that the Settlement Class Member made reasonable efforts to avoid or seek

reimbursement for the loss, including from the applicable bank or payment card servicer and

through exhaustion of any available credit monitoring insurance and identity theft insurance, but

has been unsuccessful. SA ¶ 2.3.1.

3.    **Time Spent Award:** Settlement Class Members may also claim up to five

(5) hours of time spent remedying issues related to the Security Incident, at a rate of $20.00 per

hour. Settlement Class Members making such a claim must attest on the Claim Form how much

time was spent (up to five hours), in half-hour increments, and that the time was actually spent

remedying issues related to the Security Incident. SA ¶ 2.2.3.

4.    **California Subclass Awards:** Every California Subclass Member who

submits an Approved Claim is eligible to receive a CCPA statutory damage payment initially set at

$175.00, regardless of whether they experienced any fraudulent or unauthorized activity or losses

or any identity theft as a result of the Security Incident. California Subclass Members must attest

on their Approved Claim forms that they were a California resident on June 11, 2021. This award

is in addition to all other awards and is subject to upward or downward proration based on the

number of valid claims received. SA ¶¶ 2.2.4, 7.3.1, 7.3.2.

5.    **Award Adjustments:** *Pro rata* Award determinations shall be performed

by the Claims Administrator, as follows: If, after the Effective Date, the total dollar value of all

6

Approved Claims is *less* than the amount remaining in the Settlement Fund necessary to cover valid Basic Awards, the cost of the "Financial Shield" identity-theft protection services, Reimbursement Awards, Time Spent Awards, California Subclass Awards, Attorneys' Fees and Expenses Award, Service Awards, and notice and Claims Administration costs, the award amounts for all Approved Claims for Basic Awards and California Subclass Awards shall be increased *pro rata* until the amounts remaining in the Settlement Fund are exhausted (or as nearly as possible). SA, ¶ 7.3.1.

Similarly, if, after the Effective Date, the total dollar value of all Approved Claims *exceeds* the amount remaining in the Settlement Fund necessary to cover valid Basic Awards, the cost of the "Financial Shield" identity-theft protection services, Reimbursement Awards, Time Spent Awards, California Subclass Awards, Attorneys' Fees and Expenses Award, Service Awards, and notice and Claims Administration costs, the payment amount for all Approved Claims for Basic Awards and California Subclass Awards shall be reduced *pro rata*.

## C.    Security Measures Undertaken by Defendants

In addition to the creation of the Settlement Fund, the Settlement provides that Defendants have and will undertake the following to enhance security measures and safeguards in response to the Security Incident for a period of no less than 30 months:

a)    Utilization of Microsoft Azure cloud infrastructure, including for email and support of Defendants' applications;

b)    Implementation of anti-phishing software;

c)    Enhancement of employee cybersecurity awareness, including through communications that highlight the threat of phishing;

d)    Utilization of multi-factor authentication;

e)    Enhanced endpoint protection through deployment of a monitoring solution; and

f)    Utilization of a security information and event management solution to evaluate log data and other information.

### D.     Notice to the Settlement Class and Costs of Claims Administration

The Settlement Fund shall be the only source of payment for all costs of the settlement, including: (a) payments to Settlement Class Members submitting valid Settlement Claims; (b) payment for identity-theft protection services; (c) costs of notice and Claims Administration; (d) any Attorneys' Fees and Expenses Award to Class Counsel; and (e) any Service Awards to Representative Plaintiffs. SA ¶ 2.1. Notice and administration expenses are expected not to exceed $60,000.00. See SA ¶ 7.4.

### E.     Attorneys' Fees, Costs, and Expenses and Service Awards

Class Counsel intend to apply to the Court for an award of reasonable attorneys' fees, in an amount not to exceed one-third (33 1/3 percent) of the Settlement Fund (*i.e.*, $180,000), along with reimbursement of their reasonable litigation costs and expenses incurred, and will request service awards for the Plaintiffs in the amount of $2,500.00 each, to be paid from the Settlement Fund. SA ¶¶ 9.1, 9.2.

### F.     Cost of Serving Notices Under the Class Action Fairness Act

Defendants will pay, separate from the Settlement Fund, the cost of serving notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, which shall be the only payment Defendants are obligated to pay separate from the Settlement Fund. SA ¶¶ 1.35, 7.4. Defendants shall not have any other financial obligation under the Settlement Agreement. In addition, under no circumstances will Defendants have any liability for taxes or tax expenses under the Settlement Agreement. SA ¶ 7.4.

## IV.    PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT IS APPROPRIATE

### A.     Legal Standard and Reed Factors

"Rule 23(e) provides that a court should approve a settlement if it is fair, reasonable, and adequate, and consistent with public interest." *Vaughn v. Am. Honda Motor Co.,* 627 F. Supp. 2d 738,

746 (E.D. Tex. 2007). In determining whether to approve a settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See, e.g., Maher v. Zapata,* 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 843 (E.D. La. 2007). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 138 (2nd Cir. 1998); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 207 (5th Cir. 1981). The judicial policy favoring settlement of class actions, is in part, due to the complexity and size of these actions:

> Particularly in class action suits, there is an overriding public interest in favor of settlement…. It is common knowledge that class action suits have a well deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action…. In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.

*Cotton,* 559 F.2d at 1331 (citing *United States v. Allegheny-Ludlum Indus., Inc.,* 517 F.2d 826 (5th Cir. 1975)); *see also Bennet v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984) (recognizing courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement").

The Federal Rules of Civil Procedure, rule 23 ("Rule 23") factors must be met for a class to be certified for settlement purposes. *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Under the recent amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition to Rule 23 factors, the Fifth Circuit provides six factors for determining whether the proposed class settlement is fair, reasonable, and adequate. These factors substantially overlap with the Rule 23 factors, and include: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the probability of plaintiffs' success on the merits; (4) the range of possible recovery compared to the probability of plaintiffs' success on the merits; (5) the stage of the proceedings and the amount of discovery completed; and (6) the opinions of class counsel, class representatives, and absent class members. *Stott v. Cap. Fin. Servs. Inc.,* 277 F.R.D. 316, 343 (N.D. Tex. Nov. 8, 2005) (citing *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982)); *see also Union Asset Mgmt. Holding A.G. v. Dell,* 669 F.3d 632, 639 (5th Cir. 2012); *In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 194 (5th Cir. 2010); *Newby v. Enron Corp.,* 394 F.3d 296, 301 (5th Cir. 2004).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty.,* 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) (citing *Hays v. Eaton Grp. Att'ys, LLC,* 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019)); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA,* 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019). In short, a settlement process is fair when "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial approval." *In re Shell Oil Refinery,* 155 F.R.D. 552, 555 (E.D. La. 1993) (quoting *Manual for Complex Litigation, Second* § 30.44 (1985)).

## B.      The Proposed Settlement Merits Preliminary Approval

### 1.   The Class is Adequately Represented

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is rooted in due-process concerns- absent class

members must be afforded adequate representation before entry of a judgment which binds them." *Radcliffe v. Experian Info. Sols., Inc.,* 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks omitted). Adequacy is satisfied when (1) there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing and able to protect the interests of the absent class members." *Feder v. Elec. Data, Sys. Corp.,* 429 F.3d 125, 130 (5th Cir. 2005).

The adequacy requirement is satisfied. Neither the Plaintiffs nor proposed Class Counsel have any interest in this action that is adverse or antagonistic to the interests of the Settlement Class. Each of the proposed Representative Plaintiffs is a member of the Settlement Class and shares the same overriding interests as absent Settlement Class Members.

The second adequacy factor is also satisfied. Proposed Class Counsel are highly qualified and experienced in complex class action litigation, including data breaches and consumer protection. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F.Supp.2d 1040, 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data breach cases"). *See generally,* Blatt, Berry, Swigart., and Byrd Declarations. Plaintiffs have adequately represented the Settlement Class by actively pursuing their shared claims against Defendants, including regularly communicating with Counsel on case developments, discussing significant filings and conferring with Counsel throughout the Settlement negotiations, among other participation. Plaintiffs will continue to fulfill their duties vigorously through the completion of the claims administration process.

## 2. The Proposed Settlement is the Result of Arm's Length Negotiations and Free from Fraud or Collusion

Rule 23 instructs the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In addition, the first *Reed* factor requires the settlement also be

free from fraud or collusion. *See Reed*, 703 F.2d at 172. "The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union,* 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). In conducting this analysis, courts recognize that the "presence of a neutral mediator" is a factor "weighing in favor of a finding of non-collusiveness." *Erica P. John Fund, Inc. v. Halliburton Co.,* 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018). Pursuant to Rule 23(e)(2)(B) and the first *Reed* factor, the Court should preliminarily approve the proposed Settlement.

Here, Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims, including investigation of the incident, engaging in an informal exchange of information to determine Defendants' exposure and impact to the Settlement Class resulting from the Security Incident, fully briefed the issues and participated in mediation in order to meaningfully engage in arm's length negotiations. *Chambers v. Whirlpool Corp.,* 980 F.3d 645, 669 (9th Cir. 2020) (where the lower court determined there was no collusion because, among other things, the parties settled via arm's length negotiations before an experienced mediator). Settlements negotiated by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate, and reasonable. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); s*ee also, Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("The involvement of an experienced and well-known mediator is also a strong indicator of procedural fairness."); See also Blatt Decl., ¶¶ 7-9, 12.

Further, attorneys' fees were not discussed until after the parties reached an agreement on all material terms related to Settlement Class benefits and after substantial negotiations, including the all-day mediation and three follow up sessions with mediator Nolland presiding. Blatt Decl., ¶ 16. *See In re Heartland Payment Sys., Inc.,* 851 F. Supp. 2d at 1064 (citing *In re Combustion, Inc.,* 968 F. Supp. 1116, 1127 (W.D. La. 1997) ("Further, testimony was presented that the matter of attorneys' fees

was not negotiated in conjunction with the settlement agreements but left for separate determination by the Court.")).

Based on the foregoing, the proposed Settlement is the result of arm's-length negotiations, is fair, reasonable, and adequate and free from fraud or collusion. Thus, the requirements of Rule 23(e)(2)(B) and first *Reed* factor are met. *See* Fed. R. Civ. P. Rule 23(e)(2)(B); *Reed*, 703 F.2d at 172.

### 3. The Proposed Settlement Offers Settlement Class Benefits and Compensation that are Fair, Adequate, and Reasonable Alternatives to the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C) instructs the Court to consider whether the "relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other factors. Fed. R. Civ. P. 23(e)(2)(C). The three *Reed* factors are in essence incorporated into Rule 23(e)(2)(C)(i), which includes the complexity, expense, and likely duration of the litigation; the probability of plaintiffs' success on the merits; and the range of possible recovery compared to plaintiffs' success on the merits. *Reed,* 703 F.2d at 172. Further, there exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 727 (E.D. La. 2008) (a settlement must take "into account the uncertainty and risks involved in litigation" as well as "the strength of the claims and possible defenses.").

Data breach cases can be factually complex, requiring protracted and costly litigation to resolve and face significant legal uncertainties, such as pretrial risks of obtaining class certification and defeating summary judgment. Although Plaintiffs and their counsel believe that the claims asserted are meritorious, success was not a foregone conclusion given the likelihood of inherent problems of proof and possible defenses to the claims, establishing liability on a class-wide basis, achieving a more favorable result, and Defendant's ability to satisfy a judgement. Indeed, plaintiffs in

data breach cases often allege injuries, such as the risk of future identity theft, and loss of control of their personally identifiable information that are the subject of intense controversy. *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (one of the most important factors in assessing a class settlement is the probability of the plaintiffs' success on the merits).

In contrast, under the terms of the proposed Settlement, Settlement Class Members will receive guaranteed and tangible benefits and avoid the risks, expenses, and delay of continued litigation. *See Hays,* 2019 WL 427331, at *10 ("By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff is avoiding expense and delay and ensuring recovery for the Class."); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 291-92 (W.D. Tex. 2007) (guaranteed recovery obviates the risk and delay of continued litigation, trial, and appeal, which are significant factors considered in evaluating a settlement). As detailed above and consistent with Rule 23 and the factors set forth by the Fifth Circuit, Settlement Class Members may make a Settlement Claim for the benefits set forth herein. Settlement Class Members who submit a valid claim are eligible for (i) a Basic Award of $185.00, subject to upward or downward proration, or identity-theft protection services; and all Settlement Class Members are also able to claim (ii) a Reimbursement Award; and (iii) a Time Spent Award. Further, as explained previously, California Subclass Members are also eligible to receive an additional California Subclass Award payment of $175.00 in recognition of their CCPA claim, in addition to their other award(s) and subject to upward or downward proration.

The foregoing factors strongly support a finding that the proposed Settlement is fair and adequate in weighing the very real risks that continued litigation could have resulted in smaller or even non-existent monetary recovery for the Settlement Class. "Taking into account the risks inherent in this litigation, as well as the costs of litigation, the settlement is fair and reasonable." *Quintanilla v. A & R Demolition Inc.,* 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2007).

14

### 4.   Other Factors Required under Rule 23(e)(2)(C) Support Preliminary Approval

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided to the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims . . . the terms of any proposed award of attorneys' fees, including timing of payment . . . [and] any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Additionally, the Advisory Committee's notes indicate: "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. Rule 23(e) advisory committee's note to 2018 amendment.

First, here, Settlement Class Members may make a Settlement Claim for either a Basic Award of $185.00, subject to upward or downward proration, or identity- theft protection services. SA ¶ 2.2. This allows the Settlement Class Members to elect the option that most benefits them. Settlement Class Members who incurred Out-of-Pocket Expenses fairly traceable to the Security Incident are also eligible to elect a Reimbursement Award, for reimbursement of out-of-pocket losses not previously reimbursed, of up to $5,000.00. SA ¶ 2.2.2. Further, a Settlement Class Member may also claim up to five (5) hours of time spent remedying issues related to the Security Incident at $20.00 per hour. SA ¶ 2.2.3. And, California Subclass Members are also eligible to receive a CCPA statutory damage payment of $175.00, subject to upward or downward proration. SA ¶ 2.2.4.

For convenience, Claim Forms may be completed online or in hard copy, along with supporting documentation where required. Claims will then be processed by Angeion Group, an experienced class action administration firm. Settlement Class Members will have 120 days from entry of the Preliminary Approval Order to file a Claim Form for settlement benefits. SA ¶ 1.8. If a

Claim Form submitted is either incomplete or otherwise deficient, the Settlement Class Member will be given 30 days to cure the defect. SA ¶ 7.2.1. The Claims Administrator will follow up with claimants who submitted claims without the required documentation. If a Settlement Class Member disputes the Claims Administrator's determination, the Claims Administrator shall have 15 days to reconsider its initial adjustment amount and make a final determination. SA ¶ 7.2.3.

This process provides Settlement Class Members with important opportunities to advance their claims for the Settlement benefits, and provides protection against fraudulent claim filing. Also, Settlement Class Members will be able to receive their settlement funds by check or electronic payment (in an electronic payment format recommended by the Claims Administrator, such as PayPal or Venmo and agreed-on by the Settling Parties). SA ¶ 7.5. Thus, the methods of distributing relief to Settlement Class Members further support preliminary approval of the Settlement.

Second, the relief provided for the Settlement Class is also adequate, taking into account, the terms of the proposed award of attorneys' fees and the timing of payment. Based on awards in similar cases, risks faced by Class Counsel in this litigation, and the results achieved, Class Counsel will seek a fee of up to one-third (33 1/3 percent) of the settlement, and reasonable litigation costs and expenses to be paid upon court approval. Further, the only agreement related to this litigation is the proposed Settlement Agreement, included as Blatt Declaration Attachment 1, and the number of opt-outs that can trigger termination addressed in Plaintiffs' motion to file under seal. There are no side agreements regarding attorneys' fees or costs related to this proposed Settlement.

### 5. The Settlement Treats All Settlement Class Members Equitably Relative to One Another

Rule 23(e)(2)(D) instructs the court to consider whether the settlement agreement "treats class members equitably relative to each other." The proposed Settlement treats Settlement Class Members equally by distributing awards from the net settlement fund on a *pro rata* basis. SA ¶ 7.3.

All Settlement Class Members have the option to elect to make a Claim for a: (i) Basic

Award of $185.00 or 36 months of identity-theft protection services. All Settlement Class Members are also eligible to make a Claim for a (ii) Reimbursement Award; and a (iii) Time Spent Award. SA ¶ 2.2. Additionally, California Subclass Members may make a claim for an additional cash award of $175.00 for their CCPA claim. *Id.* The only difference in cash payment options among California Subclass Members and the rest of the Settlement Class Members is that California Subclass Members have a statutory claim under the CCPA, which provides them an opportunity to make a Claim for this additional benefit. *See Zamora Jordan v. Nationstar Mortg., LLC*, 2019 WL 1966112, at *5 (E.D. Wash. May 2, 2019); *see also In re Extreme Networks*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) ("Consistent with [the] instruction [to consider whether the proposal treats class members equitably], the Court considers whether the proposal improperly grants preferential treatment to class representatives or segments of the class." (internal quotation omitted)). Here, Settlement Class Members are treated equitably because the Settlement apportions relief based upon the subclass' additional claim under the CCPA. Thus, Settlement Class Members are treated equitably as to one another; some simply have an additional claim not available to non-California residents who are ineligible for statutory payment under the specific CCPA statutory scheme.

### 6.  The Stage of the Proceedings and the Amount of Discovery Completed

When evaluating a settlement, courts consider "the stage of the proceedings and the amount of discovery completed." *Reed,* 703 F.2d at 172. The purpose of this factor is to ensure there is not an imbalance of information between the parties and to prevent uneducated guesswork. *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211.

Here, the Parties reached a settlement eleven months after the initial case was filed arising out of this incident, and seven months after Plaintiffs filed their Consolidated Class Action Complaint in this Court. The Parties engaged in an informal, pre-mediation exchange of information and documents to verify the underlying facts, a fact which supports the adequacy of the Settlement.

Blatt Decl., ¶¶ 7-8. Even where "very little formal discovery was conducted," the Fifth Circuit has declared that "the lack of such does not compel the conclusion that insufficient discovery was conducted." *See Cotton,* 559 F.2d at 1332. In fact, "[a] settlement may be approved even where plaintiffs have not conducted formal discovery where plaintiffs did have access to the desired quantum of information necessary to achieve a settlement." *In re Lease Oil Antitrust Litig. (No. II),* 186 F.R.D. 403, 432 (S.D. Tex. 1999). Plaintiffs and their counsel gained sufficient information to make an informed settlement decision. Accordingly, this factor supports preliminary approval of the Settlement.

### 7.   The Opinions of Class Counsel, Plaintiffs, and Absent Settlement Class Members

In determining whether to grant preliminarily approval of a settlement, courts also consider "the opinions of the class counsel, class representatives, and absent class members." *Reed,* 703 F.2d at 172. "Significant weight is given to the opinion of class counsel" in deciding whether a settlement is in the best interest of the class. *Marcus v. J.C. Penney Co., Inc.,* 2017 WL 6590976, *3 (E.D. Tex. 2017). Indeed, "[c]ounsel are the Court's main source of information about the settlement . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 852 (E.D. La. 2007).

As detailed in supporting documents, Plaintiffs' counsel possess considerable knowledge and experience litigating complex class actions and believe the proposed Settlement merits approval. *See* Blatt Decl., ¶¶ 20-23; Berry Decl., ¶¶ 9-12; Swigart Decl., ¶¶ 9-15; Byrd Decl., ¶¶ 9-11. Also, Plaintiffs, whom have been actively involved in the litigation, support the proposed Settlement as evidenced by their execution of the Settlement Agreement.

The reaction of absent Settlement Class Members, including the number of requests for exclusion and objections to the settlement, are factored into the court's analysis. Here, after appropriate direct notice is provided to the Settlement Class Members, by U.S. Mail and/or by email

where such addresses are available, Settlement Class Members will have 75 days to object or request exclusion from the settlement. The Court will be able to gauge the reaction of the absent Settlement Class Members at the Final Approval Hearing, by which time the Court will have all of the necessary information to do so. For the foregoing reasons, the proposed settlement is fair, reasonable, and adequate, and merits approval under Rule 23(e) and the *Reed* factors.

## V.      THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Pursuant to Rule 23(e)(1)(B), before a court directs notice to the class, the court must be satisfied that it will likely be able to certify the class for settlement purposes. Fed. R. Civ. P. Rule 23 (e)(1)(B). To achieve certification, it must be demonstrated that the requirements of Rule 23(a) are met, which include that: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties protect the interests of the class and 4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. Rule 23(a).

After satisfying all requirements Under Rule 23(a), the settlement class must then satisfy Rule 23(b)(3). Under Rule 23(b)(3), the court must determine whether:

1.   Questions of law or fact common to class members predominate over questions affecting only individual members, and
2.   A class action is superior to the other methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. Rule 23(b)(3).

## A.      The Settlement Class meets the Requirements of Rule 23(a)

Here, the Rule 23 (a) requirements are met.

### 1.   The Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all the class members would be impracticable yet ascertainable. *Id.* The Fifth Circuit has found that 100 to 150 class members is within the range that satisfies the numerosity requirement. *Mullen v. Treasure*

*Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, there are approximately 14,193

Settlement Class Members, making joinder impractical. SA ¶ 1.34. Moreover, the Settlement Class

Members are ascertainable based on Defendants' records. Thus, the numerosity requirement of

Rule 23 is satisfied.

### 2.  The Commonality Requirement is Met

Rule 23(a)(2) requires that the representative plaintiffs' claims contain "questions of law or

fact common to the class." Fed. R. Civ. P. 23(a)(2). Generally, a few factual variations among the

class grievances will not defeat commonality so long as class members' claims arise from "shared

legal issues" or "a common core of salient facts." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir.

2003). "[E]ven a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2551 (2011). The tests for commonality and typicality are not demanding. *Mullen v. Treasure Chest*

*Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999).

Here, there are multiple questions of law and fact common to Plaintiffs and Settlement Class

Members which all stem from the same Security Incident. The common issues presented include

whether Defendants had and breached their duty to Plaintiffs and the Settlement Class by failing to

implement and maintain reasonable and adequate data security practices to safeguard their Personal

Information, the nature and cause of the Security Incident, whether the Defendants are liable to the

California Subclass Members for any alleged violation of the CCPA, and the damages caused by the

alleged lack of adequate security. Accordingly, the commonality requirement is satisfied.

### 3.  The Typicality Requirement is Met

Rule 23(a)(3) requires that the representative plaintiffs' claims and defenses are typical of

those of the proposed class. Fed. R. Civ. P. 23(a)(3). "Like commonality, the test for typicality is not

demanding." *Mullen,* 186 F.3d at 625. The typicality inquiry rests "less on the relative strengths of the

named and unnamed plaintiffs' cases than on the similarity of legal and remedial theories behind

their claims." *Ibe v. Jones,* 836 F.3d 516, 528-529 (5th Cir. 2016).

Consistent with Rule 23(a)(3), Plaintiffs' claims are typical of the claims of other Settlement Class Members in that Plaintiffs, like all Settlement Class Members, had their Personal Information subject to alleged compromise, viewing, and theft in the Security Incident. Plaintiffs' claims for loss of control of their Personal Information and ongoing risk of identity fraud, among others, are typical of the claims of the other Settlement Class Members. Plaintiffs' damages and injuries are akin to those of other Settlement Class Members, and Plaintiffs assert the same claims and forms of relief as the Settlement Class, other than the CCPA claims asserted by the California Subclass, but which are the same for those subclass members.[4] And all Plaintiffs and Settlement Class Members have the same interest in the Defendants' security enhancements implemented to protect the information in the Defendants' possession. Thus, the typicality requirement is met.

### 4. The Adequacy Requirement is Met

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. Rule 23(a)(4). The adequacy requirement rests on two questions: whether the class representatives and their counsel (1) have any conflicts of interest with the proposed class members and (2) will prosecute the action vigorously on behalf of the class. *See Staton,* 327 F.3d at 957. Adequacy is satisfied where (i) counsel for the class is qualified and competent to prosecute the action, and (ii) the interests of the proposed class representatives do not conflict with the interests of the class. *See Morrow v. Washington,* 277 F.R.D. 172, 195 (E.D. Tex. 2011). "While the burden in a class certification motion is on the Plaintiffs, the adequacy of the putative representatives and of Plaintiffs' counsel is presumed in the absence of specific proof to the contrary." *Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 129-130 (5th Cir. 2005).

Here, the adequacy requirement is satisfied. Neither the proposed Plaintiffs nor proposed

---

[4] Plaintiffs Stefanie Sheehan and Kimberly Gamboa are members of the California Subclass.

Class Counsel have any conflicts with absent Settlement Class Members. Blatt Decl., ¶ 15; Berry Decl., ¶ 5; Swigart Decl., ¶ 5; and Byrd Decl., ¶ 5. Proposed Class Counsel are highly qualified and experienced class action attorneys in the areas of data breaches and consumer protection. Blatt Decl., ¶¶ 21-23; Berry Decl., ¶¶ 10-12; Swigart Decl., ¶¶ 10-15; Byrd Decl., ¶¶ 10-11.

### B.   The Settlement Class Satisfies the Predominance Test Under Rule 23(b)(3)

Rule 23(b)(3)'s predominance element requires that "questions of law or fact common to class members predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Here, both of these requirements are met.

### 1.   Common Questions Predominate Over Any Individual Questions

"An issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Butler v. Sears Roebuck & Co.,* 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Dukes,* 131 S. Ct. at 2551). "Where 'defendants' liability predominates over any individual issues involving plaintiffs, and the Settlement Agreement will ensure that funds are available' to compensate plaintiffs, predominance is satisfied." *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 921 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014).

Courts analyze predominance by reviewing the common issues underlying the plaintiffs' individual claims. Here, the legal issues faced by Settlement Class Members arise from the same set of facts related to the Security Incident, and the same claims alleged by Plaintiffs, including claims for negligence, invasion of privacy, breach of implied contract, unjust enrichment, breach of fiduciary duty, breach of confidence, declaratory and injunctive relief, violation of the California

Consumer Privacy Act, and violation of the California Unfair Competition Law. The commonalities include issues relating to Defendants' duty to and whether they failed to implement reasonable security procedures and practices; whether Defendants adequately fixed the vulnerabilities which permitted the Security Incident to occur; whether the Settlement Class has been damaged, and whether the California Subclass Members are entitled to statutory damages, among others. Resolution of Plaintiffs' claims will result in resolution of the Settlement Class's issues. Although alleged damages may sometimes vary between Plaintiffs and the Settlement Class, all damages stem from Defendants' actions that allegedly created the legal liability. Thus, the predominance requirement is satisfied.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and considers the following factors:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596, 603 (C.D. Cal. 2011). In determining whether a class action is superior to other forms of litigation, a court must compare and "assess the relative advantages of alternative procedures for handling the total controversy." *In re TWL*, 712 F.3d 886, 896 (5th Cir. 2013); *see Amgen*, 568, U.S. at 460 ("[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'") (quoting Fed. R. Civ. P. Rule 23(b)(3)). "Class actions are superior when individual suits would be wasteful, duplicative, present managerial difficulty, and would be adverse to judicial economy." *Vaughn*, 627 F. Supp. 2d at 746 (citing *Mullen*, 186 F.3d at 627). Because the Parties are seeking certification of a

settlement class, the future manageability of the proposed class action is not an issue, and "the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement." *Welsh v. Navy Fed. Credit Union,* 2018 WL 7283639, at *19.

Plaintiffs are unaware of any other pending litigation related to this Security Incident and therefore, are unaware of any evidence that Settlement Class Members have an interest in individually controlling the prosecution or defense of their claims. In light of the size of Settlement Class Members' potential individual recoveries and costs of litigation, a class action is not just the superior method of adjudication, but quite possibly the only feasible means for adjudication of their claims due to the size of each individual claim. Further, this forum is appropriate and convenient for Plaintiffs' claims to be litigated, including that Defendants are headquartered in this jurisdiction.

Therefore, the requirements of Rule 23(b)(3) are satisfied.

## V.    THE PROPOSED NOTICE IS THE BEST PRACTICABLE

Pursuant to the Rule 23(e) the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal" prior to approving a settlement. Fed. R. Civ. P. 23(e)(1). Further, Rule 23(c)(2) requires the Court to direct the best notice practicable, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2). To satisfy due process, "[a] class settlement need only properly identify the plaintiff class and generally describe the terms of the settlement so as to alert members 'with adverse viewpoints to investigate and to come forward and be heard.'" *DeHoyos v. Allstate Corp.,* 240 F.R.D. at 298.

The notice requirements are met here. Notice given to absent Settlement Class Members comports with the Federal Rules of Civil Procedure and due process as described below.

No later than 10 business days after entry of the Preliminary Approval Order, Defendants will provide the Claims Administrator with a Settlement Class Member list in electronic spreadsheet format. SA ¶ 4.1. Within 14 days of receiving the data from Defendants, the Claims Administrator

will email the Summary Notice to Settlement Class Members. Within 11 days of emailing the Summary Notice to Settlement Class Members, the Claims Administrator will send Postcard Notice via First Class U.S. Mail, postage pre-paid, to Settlement Class Members whose email notice could not be delivered. For any Settlement Class Members for which the Claims Administrator receives returned mail from the U.S. Postal Service indicating that the initial mailing was not delivered, the Claims Administrator shall undertake reasonable efforts to confirm the address and to resend notice within 11 days after receiving such returned mail. SA ¶ 4.2.1.

Within 7 days of receiving the Settlement Class Member data from Defendant, a dedicated settlement website that includes the Settlement Agreement, the Long Notice, the Summary Notice, and the Claim Form approved by the Court will be established. The website will be updated throughout the Claims Period, including the posting of the motions for final approval of the Settlement, and for Attorneys' Fees and Expenses and Service Awards when filed. A toll-free number with interactive voice response, FAQs, and an option to speak to a live operator shall also be made available to address Settlement Class Members' inquiries. SA ¶ 4.2.2.

This notice program provides the best practicable way of reaching the greatest number of Settlement Class Members and meets due process requirements.

## VI.    CONCLUSION

Plaintiffs respectfully request this Motion be granted and the Court enter an order: (1) certifying the proposed class for settlement purposes; (2) preliminarily approving the Settlement; (3) appointing Rachele R. Byrd, M. Anderson Berry, Gayle M. Blatt, and Joshua B. Swigart as Class Counsel; (4) appointing Plaintiffs as Representative Plaintiffs; (5) appointing Angeion Group as the Claims Administrator; 6) approving the proposed Notice Plan; and 7) setting a Final Fairness Hearing at least 35 days after the Opt-Out Date for final approval of the Settlement and to consider any application for attorneys' fees, and reimbursement of costs and expenses and service awards.

Date: August 26, 2022                    Respectfully Submitted,

                                         /s/ Gayle M. Blatt
                                         Gayle M. Blatt (*Pro Hac Vice*)
                                          *gmb@cglaw.com*
                                         **CASEY GERRY SCHENK FRANCAVILLA
                                          BLATT & PENFIELD, LLP**
                                         110 Laurel Street
                                         San Diego, CA 92101
                                         Tel: 619.238.1811; Fax: 619.544.9232

                                         Rachele R. Byrd (*Pro Hac Vice*)
                                          *byrd@whafh.com*
                                         **WOLF HALDENSTEIN ADLER
                                          FREEMAN & HERZ LLP**
                                         750 B Street, Suite 1820
                                         San Diego, CA 92101
                                         Tele: 619.239.4599; Fax: 619.234.4599

                                         M. Anderson Berry (*Pro Hac Vice*)
                                          *aberry@justice4you.com*
                                         **CLAYEO C. ARNOLD,
                                          A PROFESSIONAL LAW CORP.**
                                         865 Howe Avenue
                                         Sacramento, CA 95825
                                         Tel: 916.239.4778; Fax: 916.924.1829

                                         Joshua B. Swigart (*Pro Hac Vice*)
                                          *josh@swigartlawgroup.com*
                                         **SWIGART LAW GROUP, APC**
                                         2221 Camino Del Rio S., Suite 308
                                         San Diego, CA 92108
                                         Tel: 866.219.3343; Fax: 866.219.8344

                                         Balon B. Bradley (Bar No. 02821700)
                                          *balon@bbradleylaw.com*
                                         **BALON B. BRADLEY LAW FIRM**
                                         11910 Greenville Ave., Suite 220
                                         Dallas, TX 75243
                                         Tel: 972.991.1582; Fax: 972.755.0424

                                         *Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF CONFERENCE

On August 26, 2022, I conferred with Adam A. Cooke, attorney for Defendants, and he

confirmed that the Motion is not opposed.

/s/ *Gayle M. Blatt*
Gayle M. Blatt[5]
*Attorney for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record on August

26, 2022 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

/s/ *Gayle M. Blatt*
Gayle M. Blatt
*Attorney for Plaintiffs*

---

[5] Pursuant to L.R. 11.1, filer certifies that Gayle M. Blatt signed this document on August 26, 2022, and counsel will maintain the signed copy and provide upon request for inspection.