**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TRAVIS JAMES, STEFANIE SHEEHAN, KIMBERLY GAMBOA, and KOREY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVACO, INC., and DAVACO LP,<br><br>Defendants. | Case No. 3:21-cv-02318-M |

**PURSUANT TO LOCAL RULE 7.1(I),**
**APPENDIX TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## APPENDIX TABLE OF CONTENTS


**EXHIBIT 1** DECLARATION OF GAYLE M. BLATT ........ 3

ATTACHMENT 1—SETTLEMENT AGREEMENT ........ 10

Exhibit A Claim Form ........ 47

Exhibit B Class Notice—Long Form ........ 53

Exhibit C Final Approval Order ........ 63

Exhibit D Preliminary Approval Order ........ 72

Exhibit E Summary Notice ........ 80

Exhibit F Class Notice—Postcard ........ 82

ATTACHMENT 2—FIRM RÉSUMÉ ........ 84

**EXHIBIT 2** DECLARATION OF M. ANDERSON BERRY ........ 101

Exhibit A Firm Résumé ........ 106

**EXHIBIT 3** DECLARATION OF JOSHUA B. SWIGART ........ 112

**EXHIBIT 4** DECLARATION OF RACHELE R. BYRD ........ 122

Exhibit A Firm Résumé ........ 127

**EXHIBIT 5** DECLARATION OF STEVEN WEISBROT ........ 172

Exhibit A Claims Administrator's Résumé ........ 180

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TRAVIS JAMES, STEFANIE SHEEHAN, KIMBERLY GAMBOA, and KOREY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVACO, INC., and DAVACO LP,<br><br>Defendants. | Case No. 3:21-cv-02318- M<br><br>Judge: Hon. Barbara M. G. Lynn |

**DECLARATION OF GAYLE M. BLATT**

**IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Gayle M. Blatt, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of California and appear pro hac vice in this matter. I am a partner in the law firm of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP and I am one of the proposed Class Counsel. I have personal knowledge of the matters stated herein and, if called upon, I could and would testify competently to those matters. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

**FACTUAL AND PROCEDURAL BACKGROUND**

2. This is a class action brought by current and former employees of Davaco, Inc. or Davaco, LLP ("Davaco" or "Defendants") who were informed by Davaco on or about July 2, 2021, via a letter entitled, "Notice of Data Breach," that their personally identifiable information was accessed by an unauthorized third party.

3. On January 10, 2022, Plaintiffs Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams (collectively "Plaintiffs") filed a Consolidated Complaint, asserting claims against Davaco for (1) Negligence, (2) Invasion of Privacy, (3) Breach of Implied Contract,

(4) Unjust Enrichment, (5) Breach of Fiduciary Duty, (6) Breach of Confidence, (7) California Consumer Privacy Act § 1798.150, (8) Violation of the California Unfair Competition Law Cal. Bus. & Prof. Code § 17200 *et seq.*, and (9) Declaratory and Injunctive Relief (the "Action").

4. The Consolidated Complaint advanced claims on behalf of Plaintiffs and a Nationwide Class as well as a California Subclass defined as follows:

> Nationwide Class: All individuals residing in the United States whose Sensitive Information was compromised in the data breach first announced by Defendants on or about July 2, 2021.
>
> California Subclass: All individuals residing in the state of California whose Sensitive Information was compromised in the data breach first announced by Defendants on or about July 2, 2021.

5. The Settlement Class and subclass are defined as:

> Nationwide Settlement Class: All individuals identified by Defendants and to whom Defendants sent notice on or about July 2, 2021 that their information may have been impacted in the Security Incident.
>
> California Subclass: All individuals in the Settlement Class who resided in California on June 11, 2021.

6. Defendants have denied all liability.

## SETTLEMENT AGREEMENT

7. After the Consolidated Complaint was filed, the Parties had numerous discussions regarding the facts and circumstances in this case, the circumstance of Defendants, and what information and documentation was and what was not available to be exchanged. The Parties then engaged in informal discovery in anticipation of mediation and settlement negotiations.

8. Prior to mediation, Plaintiffs' counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims, including investigation of the incident, engaging in an informal, pre-mediation exchange of information and documents to determine Defendants' exposure and impact to the Settlement Class resulting from the Security Incident, and fully briefed the issues. Then, Plaintiffs, by and through their counsel, participated in arm's-length negotiations—mediation.

9. Following numerous mediation sessions with Mediator Christopher Nolland, Esq. over a two-week period of time, these efforts eventually culminated in the Class Action Settlement Agreement and Release ("Settlement Agreement") attached to my declaration as **Attachment 1**.

10. In my opinion, based upon my experience in this field, the resulting proposed settlement is fair, reasonable, and adequate and represents an excellent resolution for the Settlement Class Members. The benefits of the Settlement include: (i) a Basic Award of $185.00 or identity-theft protection services; (ii) a Reimbursement Award; and (iii) a Time Spent Award. Attachment 1, ¶ 2.2. In addition, as explained in ¶ 2.2.4, California Subclass Members are also eligible to receive a California Subclass Award payment of $175.00 in recognition of their CCPA claim. The awards are subject to proration upward or downward depending on the number of valid claims submitted by Settlement Class Members. *Id.* at ¶ 7.3. In addition to these benefits, the Settlement Agreement includes business practice changes designed to benefit the security of all Settlement Class Members PII and other information. *Id.* at ¶ 2.5.

11. The notice program is designed to provide direct notice to each class member and has built into it processes for following up on undelivered email and mail. Decl. Weisbrot, ¶¶ 14-23. It also includes a reminder postcard to be sent to class members before the expiration of the claims period. *Id.* at ¶ 24.

**PROSECUTION OF THIS ACTION**

12. The Settlement Agreement is the result of competent representation and vigorous arms' length negotiations with Defendants (by and through their counsel of record), the assistance of a neutral mediator (Mr. Christopher Nolland, Esq.) to reach the best possible outcome for the Settlement Class. Based on my experience, and after taking into account the disputed factual and legal issues involved, I believe the proposed Settlement is fair, reasonable, and adequate for the Settlement Class and free of collusion.

13. Casey Gerry has vigorously pursued this litigation on behalf of Plaintiffs and the putative class since its inception and dedicated time and resources to this litigation—and will continue to do so through final approval. The prosecution of this action was done solely on a

contingent fee basis, and Casey Gerry has been completely at risk that it would not receive any compensation for prosecuting claims against the Defendants.

14. I have extensively investigated Plaintiffs' claims and facts surrounding the Security Incident; reviewed and analyzed public information and information provided by Defendants; and thoroughly examined the legal principles applicable to the claims asserted. We worked with co-counsel to develop sufficient information and documentation to attend mediation. We participated fully in negotiations, in editing and approving settlement documents, including the notice, claim form, and settlement agreement and drafting the motion for preliminary approval.

15. I am unaware of any conflicts of interest between Plaintiffs and the putative Class Members. I have not previously represented Defendants in any matter and am not related to the representative Plaintiffs. I do not represent opposing factions within the Class in that all claims are predicated on the same facts and theories of liability, and benefit Class Members equally. To the extent the California Subclass is entitled to an additional benefit payment, it is due to the strength of the California Subclass' statutory claim for alleged violation of the California Consumer Privacy Act Civ. Code § 1798.150. On these grounds, I believe I am appropriate and qualified Class Counsel, and I will vigorously and fairly represent the interests of the putative class.

16. All settlement negotiations were conducted at arms-length. The settlement is the product of strong advocacy on behalf of the Plaintiffs and the Settlement Class. Each material term was subject to extensive negotiation, and no discussion of attorneys' fees, service awards or litigation expense reimbursement took place before all material terms of the settlement were agreed upon.

17. I, and my co-counsel, have vigorously litigated and successfully negotiated settlement of this action in the best interests of the Settlement Class. I have been confirmed as class counsel in multiple class actions. I am competent to serve as class counsel in this action.

18. I am not aware of any other lawsuits commenced by any other persons against Defendants regarding these claims.

19. Based on my experience, I believe this settlement is a positive resolution for the Settlement Class and falls comfortably within the range of reasonableness. It is also my considered opinion the Claim Form, Postcard Notice, and Long-Form Notice accurately and plainly explain the

settlement benefits and how to obtain them, offer clear opportunity for member of the Settlement Class to exclude themselves if they so choose, and provides a mechanism for the Settlement Class to share their opinions about the Settlement with the Court.

20. Data breach cases have limited precedential class certification decisions, and some of Plaintiffs' class-wide damage models remain untested. The path to recovery for all Settlement Class Members is not otherwise assured, as experts will disagree on fundamental issues relating to security as well as damages, whether class certification is appropriate and whether trial is manageable. Daubert motions generally are filed to address expert issues, and favorable results for either side are frequently the subject of appeal. This settlement provides substantive benefits the Settlement Class Members can receive in the shorter term. Ongoing litigation, without the same certainty of recovery is the alternative. And based on the tangible benefits this Settlement provides the Settlement Class Members, and weighing those against the risks, time, and expense of litigating this case, based on my experience, I fully support the Settlement as proposed and respectfully request this Court grant Plaintiffs' motion.

## QUALIFICATIONS OF CLASS COUNSEL

21. Plaintiffs' counsel are well experienced in plaintiff class actions and data breach litigation, and believe this settlement represents a fair resolution of this matter, and is in the best interests of the Plaintiffs and the Settlement Class. Attached as **Attachment 2** is a true and correct copy of my firm's résumé, which includes my curriculum vitae.

22. I graduated from California Western School of Law and have been a member of the California bar since 1985. I joined CaseyGerry over 30 years ago and have represented injured clients and consumers in a wide range of complex and class action cases. I am the head of Casey Gerry's complex litigation practice group.

23. Relative to data breach litigation, I served on the five-member Plaintiffs' Executive Committee appointed to oversee the litigation related to the massive *Yahoo!* data breaches, collectively at the time, the largest data breach in the world. (*In re: Yahoo! Inc. Customer Data Security Breach Litigation*, Case No. 16-MD-02752). I served as Class Counsel in the *In re: Citrix Data Breach Litigation*, Case No. 19-cv-61350-RKA, on the law and briefing committee in the consolidated data

breach class action *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA (NDCA); I was appointed to serve on the leadership team in *In re: Sony Gaming Networks and Customer Data Security Breach Litigation*, MDL No. 2258, class counsel in *Sung et al., v. Schurman Fine Papers d/b/a Schurman Retail Group*, Case No. 17-cv-02760-LB, including *Pfeiffer et al. v. RadNet, Inc.* (C.D. Cal.) Case No. 2:20-cv-09553-RGK-SK; *In re: Warner Music Group Data Breach* (S.D.N.Y.) Case No. 1:20-cv-07473-PGG; *DeSue v. 20/20 EyeCare* (SD. Fla) 0:21-cv-61275-RAR; *In re: NetGain Technology, LLC* (D. Minn.) 0:21-cv-01210-SRN and have been involved in numerous other privacy and consumer class actions, including those with similar legal and factual issues to the case at bar.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of August 2022 at San Diego, California.

Gayle M. Blatt
*gmb@cglaw.com*
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Tel: 619.238-1811; Fax: 619.544.9232
*Counsel for Plaintiffs and the Putative Class*

# ATTACHMENT 1

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement ("Settlement Agreement" or "Agreement"), dated as of August 25, 2022, is made and entered into by and among Plaintiffs Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams, individually and on behalf of the Settlement Class, and Defendants DAVACO, Inc., and DAVACO LP, by and through their respective counsel.

## RECITALS

WHEREAS, on September 29, 2021, Plaintiff Travis James filed a class action complaint in the United States District Court for the Northern District of Texas (the "Court") entitled *James v. DAVACO, Inc.*, Case No. 3:21-cv-02318 (ECF No. 1) (the "Action" or "Litigation");

WHEREAS, on December 7, 2021, the Court consolidated the related case, *Chacon v. DAVACO, Inc.*, Case No. 3:21-cv-02786, with and into the *James* Action (ECF No. 15);

WHEREAS, on January 10, 2022, Plaintiffs Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams filed a consolidated class action complaint ("CAC") with this Court (ECF No. 23);

WHEREAS, the CAC asserts claims against Defendants for: (1) Negligence; (2) Invasion of Privacy; (3) Breach of Implied Contract; (4) Unjust Enrichment; (5) Breach of Fiduciary Duty; (6) Breach of Confidence; (7) violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, *et seq.*; (8) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and (9) for Declaratory and Injunctive Relief, arising from the Security Incident, as such term is defined below;

WHEREAS, Defendants have denied and continue to deny (a) each and every allegation and all charges of wrongdoing or liability of any kind whatsoever asserted or which could have been asserted in this Litigation, (b) that the Representative Plaintiffs in the Action and the class they purport to represent have suffered any damage, and (c) that the Action satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23. Without acknowledging any fault or liability on the part of the Defendants, the Settling Parties have agreed to enter into this Agreement as an appropriate compromise of Representative Plaintiffs and Settlement Class Members' claims to

put to rest all controversy and to avoid the uncertainty, risk, and/or expense of burdensome, protracted, and costly litigation that would be involved in prosecuting and defending this Action. This agreement is for settlement purposes only, and nothing in this agreement shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact alleged by Representative Plaintiffs in this Action or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of Defendants or admission by any of the parties of the validity or lack thereof of any claim, allegation, or defense asserted in this Litigation or in any other action;

WHEREAS, the Settling Parties exchanged informal discovery regarding the Security Incident, the Representative Plaintiffs' claims and Defendants' defenses; and participated in good faith, arms-length settlement discussions during a day-long mediation with Christopher Nolland, Esq. via videoconference on April 7, 2022, and during several hours of follow up mediation sessions with Mr. Nolland on April 12, 2022, April 13, 2022, and April 18, 2022, through which basic terms of a settlement were negotiated and agreed upon;

WHEREAS, Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in this Agreement and how best to serve the interests of the putative class in the Litigation. Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this Litigation, and the benefits to be received by the Settlement Class pursuant to this Agreement, that a settlement with Defendants on the terms set forth in this Agreement is fair, reasonable, adequate and in the best interests of the putative class;

WHEREAS, this Settlement Agreement is intended to fully, finally and forever resolve all claims and causes of action asserted, or that could have been asserted based upon the facts alleged in the CAC, against Defendants and the Released Persons, by and on behalf of the Representative Plaintiffs and Settlement Class Members, and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States, relating to the Security Incident.

NOW, THEREFORE, IT IS HEREBY AGREED, by and between the Representative Plaintiffs, Class Counsel, and Defendants, that, subject to the approval of the Court as provided for in this Settlement Agreement, the Litigation and Released Claims (including Unknown Claims) shall be fully and finally settled, compromised and released, and the Litigation shall be dismissed with prejudice, on the following terms and conditions:

## I. DEFINITIONS

As used in this Agreement, the following terms have the meanings specified below:

1.1 "Agreement" or "Settlement Agreement" means this agreement.

1.2 "Approved Claims" means valid Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution Process, as set forth in this Agreement.

1.3 "Attorneys' Fees and Expenses Award" means the amount awarded by the Court to be paid to Class Counsel from the Settlement Fund, such amount to be in full and complete satisfaction of Class Counsel's claim or request (and any request made by any other attorneys) for payment of attorneys' fees, costs, and litigation expenses in connection with this Litigation.

1.4 "Award" means the amount remitted by the Claims Administrator out of the Settlement Fund to Settlement Class Members who submit Approved Claims, as provided in Sections II and VII of this Agreement.

1.5 "Claim Form" means the claim form attached hereto as Exhibit A, or a claim form approved by the Court that is substantially similar to Exhibit A.

1.6 "Claims Administration" means the processing of Settlement Claims received from Settlement Class Members and the processing of payments of Approved Claims by the Claims Administrator.

1.7 "Claims Administrator" means Angeion Group or such other company experienced in administering class action claims generally and specifically those of the type provided for in this Action, as may be jointly agreed upon by the Settling Parties and approved by the Court.

1.8 "Claims Deadline" means the deadline by which Settlement Class Members must submit any valid Settlement Claims. The Claims Deadline shall be set by the Court in the Preliminary

Approval Order. The Settling Parties propose a Claims Deadline that is the 120th day after the entry of the Preliminary Approval Order.

1.9 "Claims Period" means the time for Settlement Class Members to submit Settlement Claims, running from the date of entry of the Preliminary Approval Order through the Claims Deadline.

1.10- "Class Counsel" means Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"); M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp. ("The Arnold Law Firm"); Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP ("Casey Gerry"); and Joshua B. Swigart of Swigart Law Group, A Professional Corp. ("Swigart").

1.11 "Class Notice" means the notice of this settlement that is contemplated by this Agreement, and which shall include the Long Notice, Summary Notice and Postcard Notice, substantially in the forms attached hereto as Exhibits B, E and F, respectively.

1.13 "Defendants" means DAVACO, Inc. and DAVACO LP.

1.14 "Dispute Resolution Process" means the process for resolving disputed Settlement Claims as set forth in ¶ 7.2 of this Agreement.

1.15 "Effective Date" means the date on which the Final Approval Order in the Action becomes "Final." "Final" means: one (1) business day after all of the following conditions have been satisfied: (a) Class Counsel and Defendants execute this Agreement; (b) the Court enters the Preliminary Approval Order; (c) the Final Approval Order has been entered; and (d)(i) if reconsideration and/or appellate review is not sought from the Final Approval Order, the expiration of the time for the filing or noticing of any motion for reconsideration, appeal, petition, and/or writ; or (d)(ii) if reconsideration and/or appellate review is sought from the Final Approval Order: (A) the date on which the Final Approval Order is affirmed without material change and is no longer subject to judicial review, or (B) the date on which the motion for reconsideration, appeal, petition, or writ is dismissed or denied and the Final Approval Order is no longer subject to judicial review.

1.16 "Final Approval Hearing" means the final hearing to be conducted by the Court in connection with the determination of the fairness, adequacy, and reasonableness of this Agreement and the proposed settlement of the Litigation.

1.17 "Final Approval Order" means the Court's Final Approval Order and Judgment, substantially in the form attached hereto as Exhibit C, which, among other things, approves this Agreement and the settlement as fair, adequate, and reasonable and confirms the final certification of the Settlement Class.

1.18 "Objection Deadline" means 75 days after the date of entry of the Preliminary Approval Order.

1.19 "Opt Out" means a Settlement Class Member (i) who timely submits a properly completed and executed Request for Exclusion, and (ii) who does not rescind that Request for Exclusion before the end of the Opt Out Period, and (iii) as to which there is not a successful challenge to the Request for Exclusion.

1.20 "Opt Out Date" means the date by which Settlement Class Members must mail or submit online through the settlement website their Request for Exclusion in order for it to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt Out Date shall be 75 days after the date of entry of the Preliminary Approval Order.

1.21 "Opt Out Period" means the period commencing on the date of entry of the Preliminary Approval Order and ending on the Opt Out Date, during which Settlement Class Members may submit a timely Request for Exclusion.

1.22 "Out of Pocket Expenses" means the following types of expenses actually incurred that are fairly traceable to the Security Incident: (a) unreimbursed payment card fees or unreimbursed bank fees, including unreimbursed card reissuance fees, unreimbursed overdraft fees, unreimbursed charges related to unavailability of funds, unreimbursed late fees, unreimbursed over-limit fees and unreimbursed fees relating to an account being frozen or otherwise unavailable due to the Security Incident; (b) cell, internet or text charges; (c) unreimbursed costs or charges for obtaining credit reports, credit freezes, or credit monitoring or identity theft protection services (up to two years of coverage) incurred on or after June 11, 2021 through the date of the Settlement Class Member's claim submission during the Claims Period; (d) other unreimbursed costs associated with fraud or identity theft, including attorneys' fees and accountant fees; and (e) postage costs.

1.23 "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.24 "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, and further includes names, Social Security numbers, driver's license numbers, and government issued identification numbers. The term "Personal Information" is not intended here, nor should be viewed as, having any bearing on the meaning of this term or similar terms in any statute or other source of law beyond this Agreement.

1.25 "Preliminary Approval Order" means the Court's order granting, among other things, conditional certification of the Settlement Class, preliminary approval of this Agreement and the settlement, and approval of the form and method of Class Notice, substantially in the form attached hereto as Exhibit D.

1.26 "Released Claims" means any and all claims, including but not limited to any claim, liability, right, demand, suit, matter, obligation, damage, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action of every kind and description, whether in law, in equity, for administrative or declaratory relief, or otherwise, whether known or unknown (including Unknown Claims), suspected or unsuspected, asserted or unasserted, disclosed or undisclosed, liquidated or unliquidated, that the Settlement Class Members had, have, or may have against Defendants and/or the Released Persons that result from, arise out of, are based upon, or relate to the Security Incident and/or the facts or circumstances described in the Litigation and/or CAC, including, but not limited to, any claims, actions, causes of action (including under state consumer protection and privacy statutes, including without limitation those in California), demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) the theft, exposure or disclosure of Settlement Class Members' Personal Information; (2) the maintenance and storage of Settlement Class Members'

Personal Information; (3) the Defendants' information security policies and practices; and/or (4) Defendants' notice of the Security Incident to Settlement Class members. "Released Claims" does not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Agreement and shall not include any claims of Settlement Class Members who have timely excluded themselves from the Settlement Class. "Released Claims" also does not include claims for physical bodily injuries attributable to the Security Incident.

1.27 "Released Persons" means Defendants and their past or present owners, parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as each of Defendants' and these entities' respective predecessors, successors, directors, officers, shareholders, managers, employees, servants, representatives, principals, agents, advisors, consultants, vendors, partners, contractors, attorneys, insurers, reinsurers, subrogees, and includes, but is not limited to, any Person related to any such entity who is, was or could have been named as a defendant in the Litigation, other than any third-party Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads nolo contendere to any such charge.

1.28 "Representative Plaintiffs" means Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams.

1.29 "Request for Exclusion" means a fully completed and properly executed written request that is timely delivered to the Claims Administrator by a Settlement Class Member under Section V of this Agreement and is postmarked on or before the end of the Opt Out Period. For a Request for Exclusion to be properly completed and executed, it must: (a) state the Settlement Class Member's full name, address and telephone number; (b) contain the Settlement Class Member's personal and original signature or the original signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Litigation, such as a trustee, guardian or person acting under a power of attorney; and (c) state unequivocally the Settlement Class Member's intent to be excluded from the settlement. All Requests

for Exclusion must be submitted individually in connection with a Settlement Class Member, *i.e.*, one request is required for every Settlement Class Member seeking exclusion.

1.30 "Security Incident" means the data security incident whereby a third party or parties gained unauthorized access to Defendants' computer systems on or about June 11, 2021, which may have affected Defendants' past and current employees' Personal Information.

1.31 "Service Award" means such funds as may be awarded by the Court to the Representative Plaintiffs in recognition of their time, effort, and service to the Settlement Class, expended in pursuing the Action and in fulfilling their obligations and responsibilities as the Representative Plaintiffs.

1.32 "Settlement Claim" means a claim for settlement benefits made under the terms of this Agreement.

1.33 "Settlement Class" means all individuals identified by Defendants and to whom Defendants sent notice on or about July 2, 2021 that their information may have been impacted in the Security Incident. "California Subclass" means all individuals in the Settlement Class who resided in California on June 11, 2021.

1.34 "Settlement Class Member(s)" means a member(s) of the Settlement Class. "California Subclass Member(s)" means a member(s) of the California Subclass. The approximate number of Settlement Class Members is 14,193.

1.35 "Settlement Fund" means Five Hundred Forty Thousand Dollars ($540,000.00), which is the limit and extent of Defendants' monetary obligations with respect to the settlement and shall be the sole and exclusive source of all costs of the settlement, including payment to Settlement Class Members, costs of notice and Claims Administration (not including the cost of serving notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715), any Attorneys' Fees and Expenses Award, and any Service Awards.

1.36 "Settling Parties" means, collectively, Defendants and Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.37 "Unauthorized Activity Period" means the time from and including June 11, 2021 through and including the Claims Deadline.

1.38 "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Representative Plaintiffs, does not know or suspect to exist in their favor or in favor of any member of the putative class they represent at the time of the release of the Released Persons that, if known, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Representative Plaintiffs and Settlement Class Members expressly shall have and by operation of the Final Approval Order shall have, released any and all Released Claims, including Unknown Claims, and waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Representative Plaintiffs and Settlement Class Members may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Representative Plaintiffs and Settlement Class Members expressly shall have, and by operation of the Final Approval Order shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims, including Unknown Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Agreement to have acknowledged, that the foregoing waiver is a material element of the Agreement of which this release is a part.

1.39 All time periods herein stated in terms of "days" shall be in calendar days unless otherwise expressly stated.

## II. SETTLEMENT CONSIDERATION

2.1 In consideration for the settlement and releases provided herein, Defendants will fund a Settlement Fund in the amount of Five Hundred Forty Thousand Dollars ($540,000.00) and provide the injunctive relief described in ¶ 2.5. The Settlement Fund shall be the only source of payment for all costs of the settlement, including: (a) payments to Settlement Class Members submitting valid Settlement Claims; (b) payment for identity-theft protection services; (c) costs of notice, Claims Administration; (d) the Attorneys' Fees and Expenses Award, if any, to Class Counsel; and (e) the Service Awards, if any, to Representative Plaintiffs.

2.2 Settlement Class Members may make a Settlement Claim for: (i) a Basic Award of $185.00, subject to upward or downward proration as described in ¶ 7.3, or identity-theft protection services, as described further in ¶ 2.2.1; (ii) a Reimbursement Award; and (iii) a Time Spent Award. In addition, as explained in ¶ 2.2.4, California Subclass Members are also eligible to receive a California Subclass Award payment of $175.00 in recognition of their CCPA claim, subject to proration up or down as described in ¶ 7.3, regardless of whether they also receive a Basic Award, identity theft protection services, and/or a Reimbursement Award. Only one Settlement Claim may be submitted per Settlement Class Member. If more than one valid claim is submitted, the largest valid claim filed will be processed and the remaining claims will be denied as duplicative.

2.2.1 Every Settlement Class Member who submits an Approved Claim is eligible to receive either: (1) a Basic Award or (2) identity theft protection services.

(a) *Basic Award*. A Basic Award will initially be set at $185.00 per Settlement Class Member, as identified by Defendants' records, is subject to upward or downward proration, and will be paid regardless of whether the claimant experienced any fraudulent or unauthorized activity, any identifiable losses, or any identity theft as a result of the Security Incident. The actual amount to be paid for Basic Awards will be calculated further as described in ¶ 7.3 below, including with respect to proration based upon the number of valid claims submitted.

(b) *Identity-Theft Protection*. In lieu of a Basic Award, Settlement Class Members may elect 36 months of free identity-theft protection services, called "Financial Shield"

by Aura. Settlement Class Members can elect to enroll in these services on the Claim Form. For members of the Settlement Class who opted to receive the one or two years of credit monitoring initially offered by Defendants, "Financial Shield" shall be in addition to that time. "Financial Shield" includes, at least, the following, or similar, services:

i. Up to $1,000,000 reimbursement insurance through AIG covering losses due to identity theft and stolen funds;

ii. Financial transaction monitoring, including monitoring of all financial accounts registered by the Settlement Class Member, such as credit card accounts, bank accounts (checking and savings) and investment accounts, for transactions exceeding selected thresholds;

iii. Continuous monitoring for high-risk transactions, including payday loans, wire transfers, and account openings, that involve the Settlement Class Member's personal information;

iv. Notification of attempts to use the Settlement Class Member's Social Security number as part of an identity verification event, such as requesting a replacement credit or debit card; filing an insurance claim; updating personal information on an existing account; and/or opening a new account;

v. Fictitious identity monitoring, which notifies the Settlement Class Member when his or her Social Security number is being used in association with someone else's name and/or address;

vi. Online tax fraud monitoring and alerts, which monitors online income tax filings through TurboTax and alerts the Settlement Class Member if a tax return is filed using his or her Social Security number;

vii. Home title monitoring, including monitoring properties identified by a Settlement Class Member and notifying the Settlement Class Member when

an existing property title is changed, removed, or new titles are added to his or her name;

viii. Dark web monitoring, which monitors the dark web for the Settlement Class Member's personal information;

ix. Public record monitoring, which monitors public records for address changes, automotive tickets, and arrests associated with the Settlement Class Member's name and Social Security number;

x. Credit security freeze assistance, which provides the Settlement Class Member a central location to link to one of ten different consumer reporting agencies to freeze and unfreeze his or her credit files; and

xi. Lost wallet protection, which provides a customer support line where the Settlement Class Member can receive help in canceling and replacing lost credit cards.

2.2.2 *Reimbursement Award.* A Settlement Class Member who incurred Out of Pocket Expenses fairly traceable to the Security Incident and submits an Approved Claim for a Reimbursement Award shall be eligible to receive a Reimbursement Award consisting of reimbursement of up to $5,000.00. In assessing what qualifies as "fairly traceable," the Claims Administrator shall consider (i) whether the timing of the expenses occurred during the Unauthorized Activity Period; and (ii) any other information provided by the Settlement Class Member supporting that reimbursement is appropriate in accordance with the terms of this Agreement.

2.2.3 *Time Spent Award*. A Settlement Class Member may also claim up to five (5) hours of time spent remedying issues related to the Security Incident at $20.00 per hour. Settlement Class Members making such a claim must attest on the Claim Form how much was spent (up to 5 hours), in half hour increments, that the time was actually spent remedying issues related to the Security Incident.

2.2.4 *California Subclass Award.* Every California Subclass Member is eligible to receive a CCPA payment in the amount of $175.00, regardless of whether he or she experienced

any fraudulent or unauthorized activity or losses, or any identity theft as a result of the Security Incident. This amount is in addition to all other awards for which California Subclass Members may be eligible. California Subclass Members must attest on their Approved Claim forms that they were a California resident on June 11, 2021. While the awards will initially be set at $175.00 for California Subclass Members, the actual amount to be paid for California Subclass Awards will be calculated further as described in ¶ 7.3 below, including with respect to proration based on the number of valid claims submitted.

2.3 Settlement Class Members seeking an Award under this Agreement must complete and submit a written Claim Form to the Claims Administrator, postmarked or submitted electronically in accordance with the requirements for electronic submission of a Claim Form, on or before the Claims Deadline. The Claim Form must: (a) be signed by the Settlement Class Member with a statement that his or her claim is true and correct to the best of his or her belief; and (b) provide appropriate documentation where required by the Claim Form. Failure to provide supporting documentation as set forth in ¶ 2.3.1 or as requested on the Claim Form or by the Claims Administrator shall result in denial of a Settlement Claim.

2.3.1 *Additional Information Required for a Reimbursement Award of Out of Pocket Expenses*. A Settlement Class Member seeking a Reimbursement Award for Out of Pocket Expenses must provide: (i) documentation sufficient to show unauthorized charges or other losses experienced during the Unauthorized Activity Period that were not reimbursed or denied and all claimed losses from such charges; (ii) documentation that enables the Claims Administrator to determine that the Out of Pocket Expenses were fairly traceable to the Security Incident; and (iii) an attestation that the Settlement Class Member made reasonable efforts to avoid or seek reimbursement for the loss, including from the applicable bank or payment card servicer and through exhaustion of any available credit monitoring insurance and identity theft insurance, but has been unsuccessful.

2.3.2 *Confidentiality of Information Submitted by Settlement Class Members*. Information submitted by Settlement Class Members pursuant to this Agreement and in connection with a Settlement Claim shall be deemed confidential and protected as such by the Settling Parties,

and the Claims Administrator. This provision does not prohibit Class Counsel from reporting to the Court or filing in the public record, upon a request from the Court, the names and cities and states of residence of those Settlement Class Members who have submitted timely and valid Requests for Exclusion. Defendants will not be provided information as to the identity of the Settlement Class Members who make claims under this Agreement.

2.4 Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source. No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement. Settlement Class Members must exhaust all available credit monitoring insurance and identity theft insurance before any Reimbursement Award for Out of Pocket Expenses will be authorized or paid. This provision does not prohibit a Settlement Class Member who accepted Defendants' offer, in response to the Security Incident, for a free year or two of identity protection services from also submitting a Settlement Claim under this Settlement Agreement, nor shall it be interpreted to deny a Basic Award, Identity-–Theft Protection, or a Time Spent Award to Settlement Class Members who submit valid claims, or a California Subclass Award to any California Subclass Member who submits a valid claim.

2.5 As part of efforts to protect its computer networks, Defendants agree to do the following for a period of no less than 30 months from the time the applicable security control or practice is initiated:

a) Utilize Microsoft Azure cloud infrastructure, including for email and support of Defendants' applications.

b) Implement anti-phishing software.

c) Enhance employee cybersecurity awareness, including through communications that highlight the threat of phishing.

d) Utilize multi-factor authentication.

e) Enhance endpoint protection through deployment of a monitoring solution.

f) Utilize a security information and event management solution to evaluate log data and other information.

## III. PRELIMINARY SETTLEMENT APPROVAL AND FINAL APPROVAL

3.1 As soon as practicable after the execution of this Settlement Agreement, Class Counsel shall submit it to the Court and file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit D, or an order substantially similar to such form, which shall, *inter alia:*

a) Stay all proceedings in the Litigation other than those related to approval of the Settlement;

b) Preliminarily certify the Settlement Class for settlement purposes only and preliminarily approve this Agreement for purposes of issuing Class Notice;

c) Appoint Representative Plaintiffs as the class representatives for settlement purposes only;

d) Appoint Class Counsel as counsel for the Settlement Class, for settlement purposes only;

e) Approve the notice program, as set forth in Section IV herein (the "Notice Program");

f) Approve the form and contents of a long form notice ("Long Notice") to be posted on the settlement website substantially similar to the one attached hereto as Exhibit B, a Summary Notice to be emailed to Settlement Class Members ("Summary Notice") substantially similar to the one attached hereto as Exhibit E, and a postcard notice ("Postcard Notice") substantially similar to the one attached hereto as Exhibit F to be sent via U.S. mail to Settlement Class Members who are deemed to have not received the Summary Notice via email, which together shall include a fair summary of the Settling Parties' respective litigation positions, the general terms of the settlement set forth in this Settlement Agreement, instructions for how to object to or submit a Request for Exclusion from the settlement, the process and instructions for making Settlement Claims to the extent contemplated herein, and the date, time and place of the Final Approval Hearing;

g) Approve a Claim Form substantially similar to that attached hereto as Exhibit A;

h) Appoint Angeion Group as the Claims Administrator;

i) Schedule an appropriate Opt Out Date, Objection Deadline, and other settlement-related dates and deadlines to be included in the Class Notice; and

j) Schedule the Final Approval Hearing.

3.2 Defendants will not oppose entry of the Preliminary Approval Order so long as it is substantially in the form attached to this Agreement as Exhibit D, and is otherwise consistent with this Agreement. Defendants reserve the right to contest any motion to certify a class for any purpose other than this settlement.

3.3 Class Counsel and Defendants' counsel shall request that the Court hold a Final Approval Hearing after Class Notice is completed and at least 35 days after the Opt Out Date, and grant Final Approval of the settlement set forth herein.

3.4 The proposed Final Approval Order that shall be filed with the motion for final approval and shall be in the form set forth in Exhibit C as agreed upon by Defendants and Class Counsel and shall, among other things:

a) Determine that the Settlement Agreement is fair, adequate, and reasonable;

b) Finally certify the Settlement Class for settlement purposes only;

c) Determine that the Notice Program satisfies due process requirements;

d) Dismiss all claims in the CAC with prejudice;

e) Bar and enjoin any Settlement Class Members who did not timely Opt Out in accordance with the requirements of the Agreement from asserting any of the Released Claims;

f) Award attorneys' fees and reasonable expenses to Class Counsel and Service Awards to the Class Representatives, if any; and

g) Release and forever discharge Defendants and the Released Persons from the Released Claims, as provided for in this Agreement.

## IV. NOTICE PROGRAM

4.1 No later than 10 business days after entry of the Preliminary Approval Order, Defendants will provide the Claims Administrator with a Settlement Class Member list in Excel

format that includes, to the extent reasonably available, the name, email addresses, telephone numbers, and mailing address of each Settlement Class Member as reflected in Defendants' business records. The Claims Administrator shall cause Class Notice to be disseminated to the Settlement Class pursuant to the Preliminary Approval Order and the Notice Program as described below, and in compliance with all applicable laws, including, but not limited to, the Due Process clause of the United States Constitution and Federal Rule of Civil Procedure 23, and be effectuated pursuant to the provisions set forth below, the costs of which shall be costs of Claims Administration.

4.2 Class Notice shall be provided to the Settlement Class by the Claims Administrator as follows:

4.2.1. Within 14 days of receiving the Settlement Class Member data from Defendants, the Claims Administrator shall email the Summary Notice to Settlement Class Members for whom it has a valid email address. Within 11 days of emailing the Summary Notice to Settlement Class Members, the Claims Administrator shall send Postcard Notice via First Class U.S. Mail, postage pre-paid, to Settlement Class Members whose email Summary Notice could not be delivered. For any Settlement Class Members for which the Claims Administrator receives returned mail from the U.S. Postal Service indicating that the initial mailing was not delivered, the Claims Administrator shall undertake reasonable efforts to confirm the address, and to resend notice within 11 days after receiving such returned mail. No later than 30 days prior to the end of the Claims Period, the Claims Administrator shall send a reminder postcard to Settlement Class Members who have not yet filed a claim via email and First Class U.S. Mail.

4.2.2. Within 7 days of receiving the Settlement Class Member data from Defendant, the Claims Administrator shall establish a dedicated settlement website that includes this Settlement Agreement, the Long Notice, the Summary Notice, and the Claim Form approved by the Court. The Claims Administrator shall maintain and update the website throughout the Claims Period. The Claims Administrator will also post on the settlement website copies of the motion for final approval of the settlement and the motion for Attorneys' Fees and Expenses Award and Service Awards. A

toll-free number with interactive voice response, FAQs, and an option to speak to a live operator shall also be made available to address Settlement Class Members' inquiries.

4.3 The Notice Program shall be subject to approval by the Court as meeting the requirements of Rule 23(c) of the Federal Rules of Civil Procedure.

4.4 The Long Notice, Summary Notice, Postcard Notice, and Claim Form approved by the Court may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and necessary and not inconsistent with such approval.

4.5 Prior to the Final Approval Hearing, counsel for the Settling Parties shall cause to be filed with the Court an appropriate declaration from the Claims Administrator demonstrating compliance with the Court-approved Notice Program.

## V. OPT OUT PROCEDURES

5.1 Each Settlement Class Member wishing to exclude themselves from the Settlement Class must individually sign and timely mail to the address designated by the Claims Administrator or submit through the settlement website a written Request for Exclusion.

5.2 To be effective, a Request for Exclusion must be submitted online or postmarked no later than 75 days after the date of entry of the Preliminary Approval Order.

5.3 Within 7 days after the Opt Out Date, the Claims Administrator shall provide the Settling Parties with a complete and final list of all Opt Outs who have timely and validly excluded themselves from the Settlement Class and, upon request, copies of all completed Requests for Exclusion. Class Counsel may present to the Court the number of Opt-Outs (if any), no later than 14 days prior to the Final Approval Hearing, but may not provide their Personal Information (though should alert the Court that such information is maintained by the Claims Administrator), except that upon the Court's request, Class Counsel may provide the Court a list of Opt Outs with all Personal Information other than names and cities and states of residence redacted.

5.4 All persons who Opt Out from the Settlement Class shall not receive any benefits of or be bound by the terms of this Settlement Agreement. All persons falling within the definition of the Settlement Class who do not Opt Out shall be bound by the terms of this Settlement Agreement and the Final Approval Order entered thereon.

## VI. OBJECTION PROCEDURES

6.1 Any Settlement Class Member who does not file a timely Request for Exclusion may file a notice of intent to object to the Settlement. The Class Notice shall instruct Settlement Class Members who wish to object to the Settlement Agreement to send their written objection to the Claims Administrator. The Class Notice shall make clear that the Court can only approve or deny the Settlement Agreement and cannot change the terms. The Class Notice shall advise Settlement Class Members of the deadline for submission of any objections.

6.2 All objections to the Settlement Agreement must be written and must include all of the following: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) a statement as to whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (iv) a clear and detailed written statement of the specific legal and factual bases for each and every objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any counsel representing the objector, if any; (vi) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel; (vii) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections; and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative, if any.

6.2 To be timely, written notice of an objection in the appropriate form must be postmarked no later than the Objection Deadline.

6.3 Except upon a showing of good cause, any Settlement Class Member who fails to substantially comply with the requirements in Section VI for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Section VI.

## VII. CLAIMS ADMINISTRATION

7.1 The Claims Administrator shall administer and calculate the Settlement Claims submitted by Settlement Class Members. Class Counsel and Defendants' counsel shall periodically be given reports as to both Settlement Claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The determination by the Claims Administrator of the validity or invalidity of all Settlement Claims shall be binding, subject to the Dispute Resolution Process set forth in this Section VII.

7.2 For each Settlement Claim submitted, the Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information required to complete the Claim Form by the Claims Deadline, including documentation and information required under ¶ 2.3.1; and (3) the information submitted for a Settlement Claim for a Reimbursement Award would lead a reasonable person to conclude that the alleged expenses are fairly traceable to and plausibly arose from the Security Incident. The Claims Administrator may, at any time, request from the claimant, in writing, additional information as the Claims Administrator may reasonably require in order to evaluate the Settlement Claim.

7.2.1 Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the Settlement Claim is valid, the Claims Administrator shall request additional information and give the claimant 30 days to cure the defect before rejecting the Settlement Claim. Such requests shall be made within 30 days after the Claims Deadline. In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown shall be given, a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than 60 days from the Effective Date. If the defect is not cured, then the Settlement Claim will be deemed invalid and there shall be no obligation to pay the Settlement Claim.

7.2.2 Following receipt of additional information requested by the Claims Administrator pursuant to ¶ 7.2.1, the Claims Administrator shall have 30 days to accept, in whole or

lesser amount, or reject each Settlement Claim. If after review of the Settlement Claim and all documentation submitted by the claimant, the Claims Administrator determines that such a Settlement Claim is valid, then the Settlement Claim shall be paid within the time period provided by ¶ 7.5 to the extent that the Claims Administrator finds the Settlement Claim to be valid. If the Settlement Claim remains invalid because the claimant does not provide the requested information needed to complete the Claim Form and evaluate the Settlement Claim, then the Claims Administrator may reject the Settlement Claim without any further action apart from providing a notice of rejection of the Settlement Claim.

7.2.3 Settlement Class Members shall have 30 days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have 15 days to reconsider its initial adjustment amount and make a final determination. The approved amount shall be the total and final amount to be paid.

7.3 The Claims Administrator shall adjust the payment amount of all Awards as follows:

7.3.1 If, after the Effective Date, the total dollar value of all Approved Claims is less than the amount remaining in the Settlement Fund necessary to cover valid Basic Awards, the cost of the "Financial Shield" identity-theft protection services, Reimbursement Awards, Time Spent Awards, valid California Subclass Awards, the Attorneys' Fees and Expenses Award, Service Awards, and notice and Claims Administration costs, the payment amount for all Approved Claims under this Agreement shall be increased *pro rata* among all Settlement Class Members who submitted Approved Claims for Basic Awards and California Subclass Awards until the amounts remaining in the Settlement Fund are exhausted (or as nearly as possible). These *pro rata* determinations shall be performed by the Settlement Administrator.

7.3.2 If, after the Effective Date, the total dollar value of all Approved Claims exceeds the amount remaining in the Settlement Fund necessary to cover valid Basic Awards, the cost of the "Financial Shield" identity-theft protection services, Reimbursement Awards, Time Spent Awards, valid California Subclass Awards, the Attorneys' Fees and Expenses Award, Service Awards, and notice and Claims Administration costs, the payment amount for all Approved Claims

shall be reduced *pro rata* among all Settlement Class Members who submitted Approved Claims for Basic Awards and California Subclass Awards. These *pro rata* determinations shall be performed by the Settlement Administrator.

7.4 The $540,000 Settlement Fund will be paid by Defendants to the Claims Administrator in two installments: (a) Defendants shall pay $60,000 within ten (10) business days following entry of the Preliminary Approval Order; and (b) Defendants shall pay the balance of the Settlement Fund within ten (10) business days following the Effective Date. The Claims Administrator shall agree to hold the Settlement Fund in a non-interest-bearing account, and administer the Settlement Fund, subject to the continuing jurisdiction of the Court and from the earliest possible date, as a qualified settlement fund as defined in Treasury Regulation § 1.468B-1, *et seq*. Any taxes owed by the Settlement Fund shall be paid by the Claims Administrator out of the Settlement Fund. Defendants will pay, separate from the Settlement Fund, the cost of serving notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, within the timelines specified by 28 U.S.C. § 1715(b), which shall be the only payment that Defendants are obligated to pay separate from the Settlement Fund. Defendants shall not have any other financial obligation under the Settlement Agreement. In addition, under no circumstances will Defendants have any liability for taxes or tax expenses under the Settlement Agreement.

7.5 The Claims Administrator will mail Award checks or send funds electronically (in an electronic payment format recommended by the Claims Administrator, such as PayPal, and agreed-upon by the Settling Parties) for Approved Claims within the later of 90 days after the Effective Date or 30 days after all disputed claims have been resolved. No distributions will be made without authorization from the Settling Parties. The Claims Administrator will conduct skip tracing and re-send checks that were returned as undeliverable. Award checks shall be valid for a period of 180 days from issuance, and shall state, in words or substance, that the check must be cashed within 180 days, after which time it will become void. In the event a settlement check becomes void, the Settlement Class Member to whom that settlement check was made payable will forfeit the right to payment and will not be entitled to have the check reissued or to any further distribution from the Settlement Fund or to any further recourse against the Released Parties, and the Settlement Agreement

and Release will in all other respects be fully enforceable against the Settlement Class Member. No later than 190 days from the issuance of the Award checks, the Claims Administrator shall take all steps necessary to stop payment on any Award checks that remain uncashed.

7.6 If there is any balance remaining in the Settlement Fund account 90 days after the Claims Administrator completes the process for stopping payment on any Award checks that remain uncashed, the Settling Parties will return to the Court seeking direction as to the disposition of these funds, including the selection of a *cy pres* recipient, which shall be a 501(c)(3) selected by the Settling Parties (subject to Court approval). The funds distributed pursuant to the *cy pres* provision set forth in this Paragraph shall not be considered unclaimed property under the laws of California or any other state.

7.7 No Person shall have any claim against the Claims Administrator, Defendants, Defendants' counsel, Class Counsel, and/or the Representative Plaintiffs based on distributions of benefits to Settlement Class Members or to the *cy pres* recipient, if applicable.

7.8 All Settlement Class Members who fail to timely submit a valid Settlement Claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the Settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Final Approval Order.

7.9 All costs incurred by the Claims Administrator shall be paid out of the Settlement Fund.

## VIII. RELEASES

8.1 Upon the Effective Date, and in consideration of the settlement benefits described herein, each Settlement Class Member, including Representative Plaintiffs, whether or not they received an Award, will be deemed by this Agreement and by operation of the Final Approval Order to have completely and unconditionally released, forever discharged and acquitted the Released Persons from any and all of the Released Claims, including Unknown Claims.

8.2 The Settlement Agreement shall be the sole and exclusive remedy for any and all Released Claims of Settlement Class Members. Upon entry of the Final Approval Order, each member of the Settlement Class shall be barred from initiating, asserting, or prosecuting against any Released Person any Released Claims, including Unknown Claims.

8.3 Upon entry of the Final Approval Order, Defendants shall have fully, finally and forever released, relinquished and discharged as against Representative Plaintiffs and Class Counsel, all claims arising out of, relating to or in connection with the institution, prosecution, assertion, defense, settlement or resolution of the Litigation.

## IX. CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS; AND REPRESENTATIVE PLAINTIFFS' SERVICE AWARDS

9.1 Class Counsel intend to apply to the Court for an award of reasonable attorneys' fees, payable solely from the Settlement Fund, in an amount not to exceed thirty-three (33 1/3) percent of the Settlement Fund (*i.e.*, $180,000). Class Counsel also intend to apply to the Court for reimbursement of their reasonable costs and litigation expenses incurred, also payable solely from the Settlement Fund. Class Counsel will apply to the Court for such approval and will serve Defendants' counsel with such application no later than 21 days prior to the Objection Deadline. Class Counsel will also cause their fees and expenses application to be posted to the settlement website immediately after its filing.

9.2 Class Counsel will request from the Court service awards for the Representative Plaintiffs in the amount of $2,500 each, to be paid solely from the Settlement Fund. This request will be included in Class Counsel's application for an award of attorneys' fees and expenses.

9.3 Within ten (10) business days after the Effective Date the Claims Administrator shall pay the Attorneys' Fees and Expenses Award and Service Awards from the Settlement Fund to Clayeo C. Arnold, A Professional Law Corp. The Attorneys' Fees and Expenses Award will be allocated among Class Counsel by Class Counsel.

9.4 The finality or effectiveness of the Settlement Agreement shall not depend upon the Court awarding any particular Attorneys' Fees and Expenses Award or Service Awards. No order of

the Court, or modification or reversal or appeal of any order of the Court concerning the amount(s) of any attorneys' fees, costs and expenses, and/or Service Awards ordered by the Court to Class Counsel or Representative Plaintiffs shall affect whether the Judgment is final or constitute grounds for cancellation or termination of this Settlement Agreement.

9.5 Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to any payment or allocation of Attorneys' Fees, Expenses Award, or Service Awards under this Agreement.

**X. CONDITIONS OF SETTLEMENT, CANCELLATION, OR TERMINATION**

10.1 This Agreement is subject to and conditioned upon the occurrence of all of the following events:

a) The Court has entered a Preliminary Approval Order as provided by ¶ 3.1;

b) The Court has entered a Final Approval Order as provided by ¶ 3.4; and

c) The Effective Date has occurred, as defined in ¶ 1.16.

10.2 If the Court does not enter a Preliminary Approval Order as provided by ¶ 3.1, the Court does not enter a Final Approval Order as provided by ¶ 3.4, or the Effective Date as defined in ¶ 1.16 does not occur, the Settlement Agreement shall, without notice, be automatically terminated unless Class Counsel and Defendants' counsel mutually agree in writing to proceed with the Settlement Agreement.

10.3 This Agreement shall survive any Court order issued prior to a ruling on Plaintiffs' motion for final approval of the settlement, including any order which has the effect of: (1) dismissing this action; (2) denying class certification; or (3) compelling arbitration of Plaintiffs' claims, and in any such case the Parties shall endeavor in good faith to pursue consummation of the Settlement Agreement on the terms herein to the extent practicable. Nothing herein is intended to waive any conditions to the effectiveness of the settlement, including as described in ¶ 10.1 of this Agreement.

10.4 If more than a specified number of Settlement Class Members Opt Out, as agreed to by the Settling Parties, Defendants may in their sole discretion terminate this Agreement.

10.5 In the event of termination, this Agreement shall have no further force or effect regarding the Settling Parties' rights and the Settling Parties shall jointly request the Court to hold a scheduling conference for the purpose of establishing a new case schedule. In addition, the Settling Parties agree that any Court orders preliminarily or finally approving certification of the Settlement Class and any other orders entered pursuant to the Agreement shall be deemed null and void and vacated.

10.6 Defendants conditionally agree and consent to certification of the Settlement Class for settlement purposes only, and within the context of the Settlement Agreement only. If the Settlement Agreement, for any reason, is not finally approved or is otherwise terminated, Defendants reserve the right to assert any and all objections and defenses to certification of a class, and neither the Settlement Agreement nor any Order or other action relating to the Settlement Agreement shall be offered by any Person as evidence or cited in support of a motion to certify a class for a purpose other than this settlement.

## XI. NO ADMISSION OF WRONGDOING

11.1 This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Settling Parties prior to execution of this Agreement or in connection with this Agreement or any communications or negotiations related to this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses that has or could be asserted or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

11.2 This Agreement, whether or not executed, any communications and negotiations related to this Agreement or the settlement, and any proceedings or actions taken pursuant to this settlement may not (i) be deemed to be or be used as an admission or evidence of the validity of any claim made by Representatives Plaintiffs or the Settlement Class; or (2) be deemed to be or be used as an admission or evidence of any fault or omission by Released Persons in the Litigation or in any other proceeding.

## XII. MISCELLANEOUS PROVISIONS

12.1 The Settling Parties and their counsel agree to undertake commercially reasonable efforts and mutually cooperate to effectuate this Agreement and the terms of the proposed settlement set forth herein, including taking all steps and efforts contemplated by this Agreement. The Settling Parties further agree to defend this Agreement against objections made to the settlement or the Final Approval Order at the Final Approval Hearing or in any appeal of the Final Approval Order or in any collateral attack on this Agreement or Final Approval Order.

12.2 The Settling Parties intend this Agreement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settling Parties each agree that the settlement and this Agreement were negotiated in good faith and at arm's-length by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.

12.3 The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest. Amendments and modifications may be made without additional notice to the Settlement Class Members unless such notice is required by the Court.

12.4 Except as otherwise provided, this Agreement contains the entire agreement between the Settling Parties, and supersedes any prior agreements or understandings between them. All terms of this Agreement are contractual and not mere recitals, and shall be construed as if drafted by all Settling Parties to this Agreement. The terms of this Agreement are and shall be binding upon each of the Settling Parties to this Agreement, their agents, attorneys, employees, successors and assigns, and upon all other Persons or entities claiming any interest in the subject matter hereof, including any Settlement Class Member.

12.5. Defendants shall not be liable for any additional Attorneys' Fees and expenses of any Settlement Class Members' counsel, including any potential objectors or counsel representing a Settlement Class Member individually, other than what is expressly provided for in this Agreement. Class Counsel agree to hold Defendants harmless from any claim regarding the division of any award of attorneys' fees and expenses to Class Counsel, and any claim that the term "Class Counsel" (as

defined in ¶ 1.11 of this Agreement) fails to include any counsel, Person, or firm who claims that they are entitled to a share of any Attorneys' Fees awarded to Class Counsel in this Lawsuit.

12.6 This Agreement shall be subject to, governed by, construed, and enforced pursuant to the laws of California.

12.7 Any individual signing this Agreement on behalf of any Person represents and warrants that he or she has full authority to execute and enter into the terms and conditions of this Agreement on behalf of such Person.

12.8 The Settling Parties and each Settlement Class Member irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of the Agreement and its exhibits, but for no other purpose.

12.9 All agreements made and orders entered during the course of Litigation relating to the confidentiality of information shall survive this Agreement.

12.10 Any notice, instruction, application for Court approval or application for Court orders sought in connection with this Agreement or other document to be given by any Party to any other Party shall be in writing and delivered by email, if to Defendants to the attention of the Defendants' counsel, or if to the Settlement Class to Class Counsel, or to other recipients as the Court may specify.

12.11 This Agreement may be executed by the Settling Parties or their authorized representatives in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Scanned signatures or signatures sent by email or facsimile shall be as effective as original signatures.

IT IS SO AGREED.

**Proposed Class Representatives**

Dated: August __, 2022 8/26/2022 By: DocuSigned by: [signature] 25833998F9654BF...
Travis James

Dated: August __, 2022 By: ______________________________
Stefanie Sheehan

Dated: August __, 2022 By: ______________________________
Kimberly Gamboa

Dated: August __, 2022 By: ______________________________
Korey Williams

**Proposed Class Counsel**

Dated: August __, 2022 By: ______________________________

M. Anderson Berry
**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORP.**

Dated: August __, 2022 By: ______________________________

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

**Proposed Class Representatives**

Dated: August __, 2022 By: ______________________________
Travis James

Dated: August __, 2022 By: Stefanie Sheehan
Stefanie Sheehan

Dated: August __, 2022 By: ______________________________
Kimberly Gamboa

Dated: August __, 2022 By: ______________________________
Korey Williams

**Proposed Class Counsel**

Dated: August __, 2022 By: ______________________________

M. Anderson Berry
**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORP.**

Dated: August __, 2022 By: ______________________________

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

**Proposed Class Representatives**

Dated: August __, 2022 By: ______________________________
Travis James

Dated: August __, 2022 By: ______________________________
Stefanie Sheehan

Dated: August __, 2022 By: ______________________________
Kimberly Gamboa

Dated: August __, 2022 By: ______________________________
Korey Williams

**Proposed Class Counsel**

Dated: August __, 2022 By: ______________________________

M. Anderson Berry
**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORP.**

Dated: August __, 2022 By: ______________________________

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

**Proposed Class Representatives**

Dated: August __, 2022 By: ______________________________
Travis James

Dated: August __, 2022 By: ______________________________
Stefanie Sheehan

Dated: August __, 2022 By: ______________________________
Kimberly Gamboa

8/25/2022
Dated: August __, 2022 By: DocuSigned by: [signature] F4FEA5EA9FA64F5...
Korey Williams

**Proposed Class Counsel**

Dated: August __, 2022 By: ______________________________

M. Anderson Berry
**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORP.**

Dated: August 25, 2022 By: [signature]

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

**Proposed Class Representatives**

Dated: August __, 2022 By: ______________________________
Travis James

Dated: August __, 2022 By: ______________________________
Stefanie Sheehan

Dated: August __, 2022 By: ______________________________
Kimberly Gamboa

Dated: August __, 2022 By: ______________________________
Korey Williams

**Proposed Class Counsel**

Dated: August 26, 2022 By: ______________________________

M. Anderson Berry
**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORP.**

Dated: August __, 2022 By: ______________________________

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

Dated: August 26, 2022

By: Gayle M Blatt

Gayle M Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**

Dated: August __, 2022

By: ______________________________

Joshua B. Swigart
**SWIGART LAW GROUP, APC**

**Defense Counsel**

Dated: August __, 2022

By: ______________________________

Adam Cooke
**HOGAN LOVELLS US LLP**

Dated: August __, 2022 By: ______________________________

Gayle M Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**

Dated: August 25, 2022 By: Joshua Swigart

Joshua B. Swigart
**SWIGART LAW GROUP, APC**

**Defense Counsel**

Dated: August __, 2022 By: ______________________________

Adam Cooke
**HOGAN LOVELLS US LLP**

Dated: August __, 2022 By: ______________________________

Gayle M Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**

Dated: August __, 2022 By: ______________________________

Joshua B. Swigart
**SWIGART LAW GROUP, APC**

**Defense Counsel**

Dated: August 26, 2022 By: ______________________________

Adam Cooke
**HOGAN LOVELLS US LLP**

# EXHIBIT A

# SETTLEMENT CLAIM FORM

This Claim Form should be filled out online or submitted by mail if you were employed by DAVACO, Inc. or DAVACO LP prior to June 11, 2021 and/or received a Notice of Data Security Incident from DAVACO, Inc. or DAVACO LP.

You may receive a payment if you properly and timely complete this Claim Form, the Settlement is approved, and you are found to be eligible for a payment.

The Notice describes your legal rights and options. You can obtain the Notice and further information about the Litigation, the Settlement Agreement, and your legal rights and options on the official Settlement website, www.________________.com, or by calling 1-800-xxx-xxxx.

Your claim must be submitted online or postmarked by ________, 202_ to be considered for payment. You can submit your claim for a settlement award in two ways:

1. Online at www._____________.com by following instructions on the "Submit a Claim" page; or

2. By mail to the Claims Administrator at this address: [INSERT CLAIMS ADMINISTRATOR ADDRESS].

Only one Settlement Claim may be submitted per Settlement Class Member.

## 1. CLASS MEMBER INFORMATION (REQUIRED)

Name (First, MI, Last): ______________________________________________________________

Address: ________________________________________________________________________

City: ____________________________ State: _______ Zip Code: ___________________

Phone: __________________________ Email (if any): ________________________________

## 2. PAYMENT ELIGIBILITY INFORMATION AND IDENTITY-THEFT PROTECTION (REQUIRED)

For more information about this Section of the Claim Form and the types of awards available and rules for receiving an award, please review the Notice and Sections 2.1 through 2.4 of the Settlement Agreement (available at www.________________.com) .

A. Settlement Class Members may receive **either** a: (1) **$185.00** Basic Award (subject to proration); **or** (2) 36 months of Identity-Theft Protection services. Which award are you claiming? (Check only one):

❑ **$185** Basic Award (complete sections 5 and 6)

**OR**

Settlement Class Members may receive 36 months of free identity-theft protection, called "Financial Shield" by Aura (a.k.a. Pango), instead of the Basic Award. If you opted to receive the one year of credit monitoring initially offered by Defendants, "Financial Shield" shall be in addition to that year. If you are claiming the identity-theft protection, check this box:

❑ Identity-Theft Protection (complete section 7)

B. Additionally, all Settlement Class Members who incurred Out-of-Pocket expenses fairly traceable to the Security Incident may claim a Reimbursement Award:

❑ Reimbursement Award (complete Sections 3, 4, 6 and 7)

C. All Settlement Class Members who spent time remedying issues related to the Security Incident may also claim a Time Spent Award up to five (5) hours of time at $20.00 per hour. Settlement Class Members making such a claim must attest on the Claim Form how much time they spent (up to 5 hours), in half hour increments, and that the time was actually spent remedying issues relating to the Security Incident:

❑ Time Spent Award (complete Sections 5, 6, and 7)

D. California Subclass Members may <u>**also**</u> receive a **$175.00** California Subclass Award. If you are a Settlement Class Member, you resided in California on June 11, 2021, and are claiming this award, check this box:

❑ **$175** California Subclass Award (complete section 5 and 6)

## 3. ADDITIONAL INFORMATION REQUIRED ONLY FROM SETTLEMENT CLASS MEMBERS SEEKING A REIMBURSEMENT AWARD.

You must complete this Section 3 <u>if you are seeking a Reimbursement Award</u>. Please provide as much information as possible.

❑ ***Required:*** I attest under penalty of perjury that I experienced one or more fraudulent charges and/or identified losses from June 11, 2021 through [INSERT CLAIMS DEADLINE].

❑ ***Required:*** Such charges or losses have not been reimbursed.

❑ ***Required:*** I believe in good faith such charges were more likely than not the result of the Security Incident that affected the DAVACO computer network described in the Class Notice.

The total amount of unreimbursed fraudulent charges that I am claiming is $________________

***Examples***: Fraudulent charges that were made on your credit or debit card account and that were not reversed or repaid even though you reported them to your bank or credit card company.

***Required***: Attach a copy of statements that show the fraudulent charges and any correspondence showing that you reported them as unauthorized. (Please redact all unrelated transactions). If you do not have any written correspondence reporting the charges, describe

when and how you reported them and to whom you reported them (attached pages as necessary):

______________________________________________________________________________

______________________________________________________________________________

❑ (***Required***). I have made good faith efforts to have these unauthorized charges reversed or repaid, including through my bank or credit card company, and have exhausted all available credit monitoring, identity theft insurance, or other applicable insurance policies, but have not been successful at having the charges reversed, have not received payment, and have no insurance coverage for these unauthorized charges.

*If you are seeking reimbursement for Out-of-Pocket Expenses as part of your claim for a Reimbursement Award, complete Section 4. Otherwise, go to Section 6.*

**4. ADDITIONAL INFORMATION REQUIRED ONLY FROM SETTLEMENT CLASS MEMBERS SEEKING REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES IN CONNECTION WITH A REIMBURSEMENT AWARD.**

❑ I attest under penalty of perjury that I am making a claim for a Reimbursement Award, and that I incurred between June 11, 2021 and [INSERT CLAIMS DEADLINE the following Out-of-Pocket Expenses fairly traceable to the Security Incident that affected the DAVACO computer network described in the Notice.

*Check all that apply, stating the total amount you are claiming for each category and attaching documentation of the charges as described below. Round total amounts to the nearest dollar.*

❑ Unreimbursed payment card fees or bank fees:

Total amount claimed for this category: $________________

***Examples***: Unreimbursed card reissuance fees, unreimbursed overdraft fees, unreimbursed charges related to unavailability of funds, unreimbursed late fees, unreimbursed over-limit fees and unreimbursed fees relating to an account being frozen or otherwise unavailable due to the Security Incident.

***Required***: A copy of a bank or credit card statement or other proof of claimed fees or charges (please redact unrelated transactions).

❑ Cell, internet or text charges:

Total amount claimed for this category: $________________

***Examples***: Long distance or cell phone charges (if charged by the minute), or data charges (if charged based on the amount of data used).

***Required***: A copy of the bill from your telephone company, cell phone company, or internet service provider showing the claimed charges.

❑ Unreimbursed costs or charges for obtaining credit reports, credit freezes, or credit monitoring or identity theft protection services (up to two years of coverage):

Total amount claimed for this category: $________________

***Examples***: The cost of purchasing a credit report or placing a credit freeze.

***Required***: A copy of a receipt of other proof of purchase for each credit report, credit freeze, or credit monitoring or identity theft protection services (up to two years of coverage) purchased or placed.

❑ Postage costs:

Total amount claimed for this category: $________________

***Examples***: Postage for correspondence with your bank or credit card company about unauthorized charges. The cost of submitting this form is not included.

***Required***: A copy of any receipt or proof of purchase for all postage costs claimed showing date, amount and vendor.

**5. ADDITIONAL INFORMATION REQUIRED FROM SETTLEMENT CLASS MEMBERS SEEKING A TIME SPENT AWARD**

You must complete this Section 5 if you are seeking a Time Spent Award.

❑ ***Required:*** I attest that I spent ______ hours (up to five (5) in half-hour increments) remedying issues related to the Security Incident.

**6. PAYMENT METHOD**

**Please select the manner in which payment will be issued for your valid Claims.**

- PayPal*: ❑ ________________________ (PayPal Email Address)
- Venmo*: ❑ ________________________ (Venmo Email Address)
- Zelle*: ❑ ________________________ (Zelle Email Address)
- Paper Check via Mail: ❑

*If you select payment via PayPal, Venmo or Zelle, the email address entered on this form will be used to process the payment to your account linked to that email address. If you do not have a PayPal, Venmo or Zelle account, you will be prompted to open one using the email address entered on this form.

**7. CERTIFICATION**

The information I have supplied in this Claim Form is true and correct to the best of my recollection and this form was executed on the date set forth below.

I understand that all information provided on this Claim Form is subject to verification and that I may be asked to provide supplemental information by the Claims Administrator before my claim will be considered complete and valid.

Signature: ____________________________________

Print Name: __________________________________

Date: ________________________________________

Once you've completed all applicable sections, please mail this Claim Form and all required supporting documentation to the address provided below, postmarked by ____, 202_.

[INSERT CLAIMS ADMINISTRATOR ADDRESS]

# EXHIBIT B

**<u>To:</u> All individuals identified by DAVACO and to whom DAVACO sent notice on or about July 2, 2021 that their information may have been impacted in the Security Incident, defined below (the "Settlement Class Members").**

A proposed settlement has been reached in a class action lawsuit titled, *James, et al. v. DAVACO, Inc.*, *et al.*, No. 3:21-CV-02318-M (N.D. Tex.). The lawsuit asserted claims against Defendants DAVACO, Inc. and DAVACO LP (collectively "DAVACO" or "Defendants") related to a security incident that occurred on or about June 11, 2021 and about which DAVACO notified potentially impacted individuals in July 2021 (the "Security Incident"). Defendants deny all of the claims and deny that they did anything wrong.

The settlement offers payments to Settlement Class Members who were sent notice that they were potentially affected by the Security Incident. Certain of the amounts paid will depend upon how many people submit valid claims but initially are set at the following amounts:

(1) If you are a Settlement Class Member you may claim a Basic Award of **$185.00 <u>or</u> 36 months** of free identity-theft protection, called "Financial Shield" by Aura (a.k.a. Pango). The Basic Award is subject to upward or downward adjustment based on the number of valid claims made;

(2) If you are a Settlement Class Members and you were a resident of California on June 11, 2021, you may **also** claim a California Subclass Award of **$175.00**, subject to upward or downward adjustment based on the number of claims made;

(3) If you are a Settlement Class Member and you experienced unauthorized charges or other identifiable losses that were not denied, reversed or otherwise credited or reimbursed to you and which you believe in good faith were more likely than not caused by the Security Incident, you may **also** file a claim for a Reimbursement Award as explained below; and

(4) If you are a Settlement Class Member and you spent time addressing or remedying issues related to the Security Incident, you may **also** claim a Time Spent Award up to five (5) hours of time at $20.00 per hour.

If you are a Settlement Class Member, your options are:

| | |
|---|---|
| **SUBMIT A CLAIM FORM DEADLINE:** ____________ | You must submit a valid claim form to receive a payment from this Settlement. |
| **DO NOTHING** | You will receive no payment and will no longer be able to sue Defendants over the claims resolved in the settlement. |
| **EXCLUDE YOURSELF DEADLINE:** ____________ | You may exclude yourself from this settlement and keep your right to sue separately. If you exclude yourself, you receive no payment. Exclusion instructions are provided in this notice. |
| **OBJECT DEADLINE:** ____________ | If you do not exclude yourself, you may write to the Court to comment on or detail why you do not like the settlement by following the instructions in this notice. The Court may reject your objection. You must still file a claim if you desire any monetary relief under the settlement. |

The court must give final approval to the settlement before it takes effect, but has not yet done so. No payments will be made until after the court gives final approval and any appeals are resolved.

**Please review this notice carefully.** You can learn more about the settlement by visiting **www.______________.com** or by calling 1-800-XXX-XXXX.

**Further Information about this Notice and the Lawsuit**

*1. Why was this Notice issued?*

Settlement Class Members are eligible to receive payment from a proposed settlement of the class action lawsuit entitled *James, et al. v. DAVACO, Inc., et al.*, United States District Court, Northern District of Texas, Case No. 3:21-cv-02318-M (the "Lawsuit"). The court overseeing the Lawsuit authorized this Notice to advise Settlement Class Members about the proposed settlement that will affect their legal rights. This Notice explains certain legal rights and options Settlement Class Members have in connection with the settlement.

*2. What is the Lawsuit about?*

The Lawsuit is a proposed class action lawsuit brought on behalf of current and former DAVACO employees whose Personal Information may have been accessed and/or taken by unauthorized individuals as part of the Security Incident. The affected information may include names, Social Security numbers, and driver's license or government issued identification numbers.

The Lawsuit claims Defendants are legally responsible for the Security Incident and asserts various legal claims, including negligence, declaratory relief, and violations of the California Consumer Privacy Act. Defendants deny these claims and deny that they did anything wrong.

*3. Why is the Lawsuit a class action?*

In a class action, one or more representative plaintiffs bring a lawsuit on behalf of others who have similar claims. Together, all of these people are the "class" and each individually is a "class member." There are four Representative Plaintiffs in this case: Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams. The class in this case is referred to in this Notice as the "Settlement Class."

*4. Why is there a settlement?*

The Representative Plaintiffs in the Lawsuit, through their attorneys, investigated the facts and law relating to the issues in the Lawsuit. The Representative Plaintiffs and Class Counsel believe that the settlement is fair, reasonable, and adequate and will provide substantial benefits to the Settlement Class. The Court has not decided whether the Representative Plaintiffs' claims or Defendants' defenses have any merit, and it will not do so if the proposed settlement is approved. By agreeing to settle, both sides avoid the cost and risk of a trial, and people who submit valid claims will receive compensation. The settlement does not mean that Defendants did anything wrong, or that the Representative Plaintiffs and the Class would or would not win their case if it were to go to trial.

## Terms of the Proposed Settlement

*5. Who is in the Settlement Class?*

The Settlement Class is defined by the Court as all individuals identified by DAVACO and to whom DAVACO sent notice that their information may have been impacted in the Security Incident.

*6. What are the terms of the settlement?*

The proposed settlement would create a Settlement Fund of $540,000.00 that would be used to pay all costs of the settlement, including: (i) payments to Settlement Class Members who submit valid claims; (ii) costs of Claims Administration and notice (approximately $60,000); (iii) any attorneys' fees and costs awarded by the Court to Class Counsel (up to $180,000 plus litigation costs and expenses of approximately $15,000); (iv) the cost of providing members of the Settlement Class 36 months of identity theft protection services; and (v) any service awards to the Representative Plaintiffs awarded by the Court (up to $10,000 total). The settlement also releases all claims or potential claims of Settlement Class Members against Defendants arising from or related to the Security Incident, as detailed in the Settlement Agreement.

*7. What claims are Settlement Class Members giving up under the settlement?*

Settlement Class Members who do not validly exclude themselves from the settlement will be bound by the Settlement Agreement and any final judgment entered by the Court, and will give up their right to sue Defendants for the claims being resolved by the settlement, including all claims or potential claims of Settlement Class Members against Defendants arising from or related to the ]Security Incident. The claims that Settlement Class Members are releasing are described in Section 1.27 of the Settlement Agreement and the persons and entities being released from those claims are described in Section 1.28 of the Settlement Agreement. Section VIII of the Settlement Agreement explains when such releases will occur.

## Payments to Settlement Class Members

*8. What kind of payments can Settlement Class Members receive?*

Settlement Class Members who submit valid claims and any required documentation may receive one or more of three types of payments to be paid from the Settlement Fund: (1) a Basic Award of **$185** or Identity-Theft Protection Services; (2) a California Subclass Award of **$175**; (2) a Reimbursement Award; and (3) a Time Spent Award. Settlement Class Members who were residents of California on June 11, 2022 ("California Settlement Subclass Members") who submit valid claims will receive the $175 California Subclass Award in addition to the Reimbursement Award, the Time Spent Award, and either the $185 Basic Award or Identity-Theft Protection Services. Other Settlement Class Members may receive only a Reimbursement Award, a Time Spent Award, and either a $185 Basic Award or Identity-Theft Protection Services, but not both. Depending on how many valid claims are submitted, the amounts of the Basic Award and California Subclass Award will be adjusted upward or downward proportionally among Settlement Class Members submitting valid claims for those awards, as explained further below in Question 11.

*9. What are the Basic Award and the California Subclass Award?*

Every Settlement Class Member is eligible to receive a **$185** Basic Award, and every California Settlement Subclass Member is eligible to receive an additional **$175** California Subclass Award regardless of whether he or she experienced any unauthorized charges or identifiable losses related to the Security Incident. Settlement Class Members seeking a Basic Award and/or a California Subclass Award must provide the information required on the Claim Form. The $185 Basic Award and the $175 California Subclass Award are subject to upward or downward adjustment as described below in Question 11.

Eligibility for any award, including the Basic Award and California Subclass Award, is within the discretion of the Settlement Administrator as outlined in Paragraph 16.

*10. What is a Reimbursement Award?*

Settlement Class Members who, at any time from June 11, 2021 to ENTER CLAIMS DEADLINE, experienced unauthorized charges or identifiable losses that were not denied, reversed or otherwise credited or reimbursed, which charges are fairly traceable to the Security Incident, and certain out-of-pocket expenses related to the Security Incident, are eligible to receive a Reimbursement Award of up to $5,000 as reimbursement for those charges and expenses. The following types of out of pocket expenses may be claimed:

- payment card fees or bank fees, including card reissuance fees, overdraft fees, charges related to unavailability of funds, late fees, over-limit fees and fees relating to an account being frozen or otherwise unavailable due to the Security Incident;
- cell, internet or text charges;
- costs or charges for obtaining credit reports, credit freezes, or credit monitoring or identity theft protection services (up to two years of coverage); and
- postage costs.

You cannot recover for emotional distress. Claimants must exhaust all available credit monitoring insurance and identity theft insurance before seeking a Reimbursement Award. Settlement Class Members seeking a Reimbursement Award must provide the information and documents required on the Claim Form.

*11. When and how will the amount of settlement payments be adjusted?*

The amounts paid for all Basic Awards and California Subclass Awards will be adjusted upward or downward from the amounts listed in Question 9 depending on how many Settlement Class Members submit valid claims.

If the total dollar value of all valid claims is less than the amount of money available in the Settlement Fund for payment of those claims, the amounts for Basic Awards and California Subclass Awards will be adjusted upward proportionally among all valid claims for those awards, until the amounts remaining in the Settlement Fund are exhausted (or as nearly as possible).

If the total dollar value of all valid claims is more than the amount of money available in the Settlement Fund for payment of those claims, the amount of the payments for Basic Awards and California Subclass Awards will be adjusted downward proportionally among all Settlement Class Members who submitted valid claims for Basic Awards and California Subclass Awards.

12. *What happens after all claims are processed and there are funds remaining?*

If there are any funds remaining after all valid claims are processed and the time to cash any payment checks has passed, those funds shall be distributed as directed by the Court, including potential distribution to a charitable organization. No remaining funds will be returned to Defendants.

## Your Options as a Settlement Class Member

*13. If I am a Settlement Class Member, what options do I have?*

If you are a Settlement Class Member, you do not have to do anything to remain in the settlement. **However, if you wish to seek an award under the settlement, you must complete and submit a Claim Form postmarked or submitted online** at **www._____________.com by [INSERT DATE]**.

If you do not want to give up your right to sue Defendants about the Security Incident or the issues raised in this case, you must exclude yourself (or "opt out") from the Settlement Class. See Question 17 below for instructions on how to exclude yourself.

If you wish to object to the settlement, you must remain a Settlement Class Member (*i.e.*, you may not also exclude yourself from the Settlement Class by opting out) and submit a written objection. See Question 20 below for instructions on how to submit an objection.

*14. What happens if I do nothing?*

If you do nothing, you will get no award from this settlement. Unless you exclude yourself, after the settlement is granted final approval and the judgment becomes final, you will be bound by the judgment and you will never be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants related to the claims released by the settlement.

*15. How do I submit a claim?*

You may complete the Claim Form online at **www.____________.com.** You may also obtain a paper Claim Form by downloading it at **www.______________.com** or by calling the claims administrator at **[INSERT TOLL-FREE NUMBER]**. If you choose to complete a paper Claim Form, you may either submit the completed and signed Claim Form and any supporting materials electronically at **www._____________.com** or mail them to: **[INSERT CLAIMS MAILING ADDRESS].**

*16. Who decides my settlement claim and how do they do it?*

The Claims Administrator will decide whether a Claim Form is complete and valid and includes all required documentation. The Claims Administrator may require additional information from

any claimant. Failure to timely provide all required information will invalidate a claim and it will not be paid.

*17. How do I exclude myself from the settlement?*

To opt out of the settlement you must make a signed, written request that (i) says you wish to exclude yourself from the Settlement Class in this Lawsuit, and (ii) includes your name, address and phone number. You must submit your request through the settlement website (www.___________.com) or mail your request to this address:

**[INSERT REQUEST FOR EXCLUSION MAILING ADDRESS]**

Your request must submitted online or postmarked by **[INSERT DATE].**

*18. If I exclude myself, can I receive any payment from this settlement?*

No. If you exclude yourself, you will not be entitled to any award. However, you will also not be bound by any judgment in this Lawsuit.

*19. If I do not exclude myself, can I sue Defendants for the Security Incident later?*

No. Unless you exclude yourself, you give up any right to sue Defendants for the claims that this settlement resolves. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you exclude yourself, do not submit a Claim Form requesting a payment.

*20. How do I object to the settlement?*

All Settlement Class Members who do not request exclusion from the Settlement Class have the right to object to the settlement or any part of it. You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing and it and any supporting papers must be mailed to the Claims Administrator at the following address:

[**INSERT CLAIMS ADMINISTRATOR ADDRESS**].

Objections must be postmarked no later than **[INSERT DATE]**.

To be considered by the Court, your objection must list the name of this Lawsuit, *James v. Davaco, Inc*, and the case number, Case No. 3:21-cv-02318-M, and include all of the following information: (i) your name, address, phone number, and an email address (if you have one); (ii) a statement that you are a member of the Settlement Class and any proof of your membership (*e.g.*, a copy of Defendants' notice of the Security Incident sent to your physical or email address or a copy of the notice of this settlement sent to your physical or email address); (iii) whether your objection applies only to yourself, to a specific subset of the Settlement Class, or to the entire class; (iv) a detailed statement of the specific legal and factual bases for all of your objections, along with any applicable legal support; (v) the identity of any lawyer representing you; (vi) whether you intend to appear at the Final Approval Hearing and the identity of any lawyer(s) who will attend that hearing with you or on your behalf; (vii) a list of anyone you plan to have testify at the Final

Approval Hearing in support of your objections; and (viii) your signature and the signature of your attorney or other authorized representative, if any.

If you submit a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

## Court Approval of the Settlement

*21. How, when and where will the Court decide whether to approve the settlement?*

The Court will hold a Final Approval Hearing to decide whether to approve the settlement. That hearing is scheduled for **__________, 2022 at _____ p.m.** at the United States District Court, Northern District of Texas, 1100 Commerce Street, Dallas, TX 75242, Courtroom 1570. Please visit the Court's website at https://www.txnd.uscourts.gov for current information regarding courthouse access and court hearings. At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are timely objections, the Court will consider them and will listen to people who have properly requested to speak at the hearing. The Court may also consider Class Counsel's request for attorneys' fees and costs, and the request for service awards for the Representative Plaintiffs. After the hearing, the Court will decide whether to approve the settlement.

It is possible the Court could reschedule the hearing to a different date or time without notice, so it is a good idea before the hearing to check www._____________.com or access the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.txnd.uscourts.gov/cgi-bin/ShowIndex.pl to confirm the schedule if you wish to attend.

*22. Do I have to attend the hearing?*

No. You do not need to attend the hearing unless you object to the settlement and wish to appear in person. It is not necessary to appear in person in order to make an objection; the Court will consider any written objections properly submitted according to the instructions in Question 20. You or your own lawyer are welcome to attend the hearing at your expense, but are not required to do so.

*23. What happens if the Court approves the settlement?*

If the Court approves the settlement and no appeal is taken, the Settlement Fund will be fully funded. The Claims Administrator will pay any attorney fees' and costs award and any Representative Plaintiffs' service awards from the Settlement Fund. Then, within the later of 90 days after the Effective Date or 30 days after all disputed claims have been resolved, the Claims Administrator will send Settlement Payments to Settlement Class Members who submitted timely and valid Settlement Claims.

If any appeal is taken, it is possible the settlement could be disapproved on appeal.

*24. What happens if the Court does not approve the settlement?*

If the Court does not approve the settlement, no Settlement Fund will be created, there will be no Settlement Payments to Settlement Class Members, Class Counsel or the Representative Plaintiffs, and the case will proceed as if no settlement had been attempted.

**Lawyers for the Settlement Class and Defendants**

*25. Who represents the Settlement Class?*

The Court has appointed the following Class Counsel to represent the Settlement Class in this Lawsuit:

| | |
|---|---|
| Rachele R. Byrd<br>Wolf Haldenstein Adler<br>Freeman & Herz LLP<br>750 B Street, Suite 1820<br>San Diego, CA 92101<br>619-239-4599 | M. Anderson Berry<br>Clayeo C. Arnold, A Professional Law Corporation<br>865 Howe Avenue<br>Sacramento, CA 95825<br>916-777-7777 |
| Gayle M. Blatt<br>Casey Gerry Schenk Francavilla Blatt & Penfield LLP<br>110 Laurel Street<br>San Diego, CA 92101<br>619-238-1811 | Joshua B. Swigart<br>Swigart Law Group, APC<br>2221 Camino del Rio South, Ste. 308<br>San Diego, CA 92108<br>866-219-3343 |

Settlement Class Members will not be charged for the services of Class Counsel; Class Counsel will be paid out of the Settlement Fund, subject to Court approval. However, you may hire your own attorney at your own cost to advise you in this matter or represent you in making an objection or appearing at the Final Approval Hearing.

*26. How will the lawyers for the Settlement Class be paid?*

Class Counsel will request the Court's approval of an award for attorneys' fees up to one-third (33.33%) of the Settlement Fund (or up to $180,000), plus reasonable costs and expenses (approximately $15,000), which shall be paid from the Settlement Fund. Class Counsel will also request approval of service awards of $2,500 to each of the Representative Plaintiffs (a total of $10,000), which shall also be paid from the Settlement Fund.

*27. Who represents Defendants in the Lawsuit?*

Defendants are represented by the following lawyers:

| | |
|---|---|
| Adam A. Cooke<br>Hogans Lovells US LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004<br>202-637-5600 | Russell A. Welch<br>Hogan Lovells US LLP<br>609 Main Street<br>Suite 4200<br>Houston, TX 77002<br>713-632-1400 |

**For Further Information**

*28. What if I want further information or have questions?*

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the Settlement Agreement available at **www._____________.com**, by contacting Class Counsel at the phone numbers provided in response to Question 25 above, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.txnd.uscourts.gov/cgi-bin/ShowIndex.pl, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Dallas, TX 75242 between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

Angeion Group, LLC will act as the Claims Administrator for the settlement. You can contact the Claims Administrator at:

**[INSERT CONTACT INFO FOR CLAIMS ADMINISTRATOR]**

**Please do not contact the Court.**

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TRAVIS JAMES, et al.<br><br>*Plaintiffs*<br><br>v.<br><br>DAVACO, INC., et al.,<br><br>*Defendants*. | Case No.: 3:21-cv-02318-M<br><br>**[PROPOSED] FINAL APPROVAL ORDER AND JUDGEMENT** |

On ___________ __, 2022, the Court entered an order granting preliminary approval (the "Preliminary Approval Order") to the August __, 2022 Settlement Agreement and Release ("Settlement Agreement") between Plaintiffs Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams, individually and on behalf of the Settlement Class (as defined below), and Defendants DAVACO, Inc. and DAVACO LP.[1]

Commencing on _________, pursuant to the notice requirements in the Settlement Agreement and the Preliminary Approval Order, _________ (the "Claims Administrator") provided Notice to Settlement Class Members in compliance with Section IV of the Settlement Agreement and the Notice Program, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice:

(a) fully and accurately informed Settlement Class Members about the Litigation and the existence and terms of the Settlement Agreement;

(b) advised Settlement Class Members of their right to request exclusion from the settlement and provided sufficient information so that Settlement Class Members were able to decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the proposed settlement;

(c) provided procedures for Settlement Class Members to file written objections to the proposed settlement, to appear at the Final Approval Hearing, and to state objections to the proposed settlement; and

(d) provided the time, date, and place of the Final Approval Hearing.

On ________, 202__, the Court held a Final Approval Hearing to determine whether the proposed settlement is fair, reasonable and adequate and whether judgment should be entered dismissing this Litigation with prejudice. The Court reviewed (a) Plaintiffs' Motion for Final

---

[1] Capitalized terms used in this Final Approval Order shall have the same meanings as defined in the Settlement Agreement, unless otherwise expressly stated.

Approval of Class Action Settlement and Plaintiffs' Motion for an Award off Attorneys' Fees, Reimbursement of Expenses and Service Awards (together, the "Motions") and all supporting materials, including but not limited to the Settlement Agreement and the exhibits thereto; (b) any objections filed with or presented to the Court; and (c) the Parties' responses to any objections. The Court also considered the oral argument of counsel and any objectors who appeared. Based on this review and the findings below, the Court finds good cause to grant the Motions.

**IT IS HEREBY ORDERED:**

1. The Court has jurisdiction over the subject matter of this Litigation, all claims raised therein, and all Parties thereto, including the Settlement Class.

2. The Settlement Agreement is fair, reasonable, adequate and in the best interests of Settlement Class Members. The Settlement Agreement was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the risks inherent in litigating the Litigation, and with the active involvement of the Parties. Moreover, the Settlement Agreement confers substantial benefits on the Settlement Class Members, is not contrary to the public interest, and will provide the Parties with repose from further litigation. The Parties faced significant risks, expense, and/or uncertainty from continued litigation of this matter, which further supports the Court's conclusion that the Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class Members.

3. The Court grants final approval of the Settlement Agreement in full, including but not limited to the releases therein and the procedures for distribution of the Settlement Fund. All Settlement Class Members who have not excluded themselves from the Settlement Class are bound by this Final Approval Order.

4. The Parties shall carry out their respective obligations under the Settlement Agreement in accordance with its terms. The benefits provided for in the Settlement Agreement shall be made available to the various Settlement Class Members submitting valid Claim Forms, pursuant to the terms and conditions in the Settlement Agreement. The Settlement Agreement is incorporated herein in its entirety as if fully set forth herein and shall have the same force and effect of an order of this Court.

**OBJECTIONS AND REQUESTS FOR EXCLUSION**

5. ____ objections to the Settlement were submitted by Settlement Class Members. The Court has considered all objections and finds that they do not warrant or support rejection or non-approval of the Settlement. All objections are hereby overruled in all respects. All persons who did not object to the Settlement in the manner set forth in the Settlement Agreement are deemed to have waived any objections, including but not limited to by appeal, collateral attack, or otherwise.

6. _____ persons made valid and timely requests to be excluded from the Settlement and the Settlement Class (the "Opt-Out Members"). The Opt-Out Members are not bound by the Settlement Agreement and this Final Approval Order and shall not be entitled to any of the benefits afforded to Settlement Class Members under the Settlement Agreement.

**CERTIFICATION OF THE SETTLEMENT CLASS**

7. Solely for purposes of the Settlement Agreement and this Final Approval Order, the Court hereby certifies the following Settlement Class:

> All individuals identified by Defendants and to whom Defendants sent notice on or about July 2, 2021 that their information may have been impacted in the Security Incident.

8. Solely for purposes of the Settlement Agreement and this Final Approval Order, the Court hereby certifies the following California Settlement Subclass:

> All individuals in the Settlement Class who resided in California on June 11, 2021.

9. The Court incorporates its preliminary conclusions in the Preliminary Approval Order regarding the satisfaction of Federal Rules of Civil Procedure 23(a) and 23(b). Because the Settlement Class and California Settlement Subclass are certified solely for purposes of settlement, the Court need not address any issues of manageability for litigation purposes.

10. The Court grants final approval to the appointment of Representative Plaintiffs Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams as the class representatives, and concludes that they have fairly and adequately represented the Settlement Class and shall continue to do so.

11. The Court grants final approval to the appointment of Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP; Gayle Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP; Joshua Swigart of The Swigart Law Group, APC and M. Anderson Barry of Clayeo C. Arnold, A Professional Law Corporation as Class Counsel. Class Counsel have fairly and adequately represented the Settlement Class and shall continue to do so.

**NOTICE TO THE CLASS**

12. The Court finds that the Notice Program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Litigation, certification of the Settlement Class and California Settlement Subclass for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class Members to exclude themselves from the Settlement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

**ATTORNEYS' FEES AND COSTS, SERVICE AWARDS**

13. The Court awards Class Counsel $____________ in fees and reimbursement of $_____________ in costs. The Court finds these amounts to be fair and reasonable. Payment shall be made from the Settlement Fund pursuant to the procedures in paragraph 9.3 of the Settlement Agreement.

14. The Court awards $______ each to Mr. James, Ms. Sheehan, Ms. Gamboa and Mr. Willaims as service awards. The Court finds these amounts are justified by their service to the Settlement Class. Payment shall be made from the Settlement Fund pursuant to the procedures in paragraph 9.3 of the Settlement Agreement.

**RELEASE**

15. Each Settlement Class Member, including Representative Plaintiffs, are: (1) deemed to have completely and unconditionally released, forever discharged and acquitted Defendants and the other Released Persons from any and all of the Released Claims (including

Unknown Claims) as defined in the Settlement Agreement; and (2) barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, these claims. The full terms of the release described in this paragraph are set forth in Paragraphs 1.26-1.27 and 8.1 of the Settlement Agreement and are specifically approved and incorporated herein by this reference (the "Release"). In addition, Representative Plaintiffs and Settlement Class Members are deemed to have waived (i) the provisions of California Civil Code § 1542, which provides that "[a] general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party, and (ii) any law of any state or territory of the United States that is similar, comparable, or equivalent to California Civil Code § 1542.

16. Every Settlement Class Member who did not timely and validly exclude himself or herself from the Settlement Class fully, finally, and forever releases any and all Released Claims in accordance with the terms of the Settlement Agreement. All Settlement Class Members shall be bound by the terms of the Settlement Agreement upon entry of this Final Approval Order. The Settlement Agreement and this Final Approval Order and Judgment shall have maximum res judicata, collateral estoppel, and all other preclusive effect in any and all causes of action, claims for relief, suits, demands, petitions, or any other challenges or allegations that arise out of or relate to the subject matter of the Litigation and/or the Complaint.

**OTHER PROVISIONS**

17. The Settlement Fund, consisting of five hundred forty thousand dollars and no cents ($540,000.00), shall be used to pay all costs of the settlement, including all Awards and payments to Settlement Class Members including the cost of identity-theft protection services, costs of notice and Claims Administration, the Attorneys' Fees and Expenses Award to Class Counsel, and the Representative Plaintiffs' Service Awards.

18. If any money remains in the Settlement Fund after the payment of all settlement payments to Settlement Class Members, cost of identity-theft protection services, costs of notice and Claims Administration, the Attorneys' Fees and Expenses Award to Class Counsel, and the

Representative Plaintiffs' Service Awards, the Parties shall return to the Court seeking direction as to the disposition of these funds, including the selection of a *cy pres* recipient, pursuant to Paragraph 7.6 of the Settlement Agreement.

19. The Settlement Agreement and this Final Approval Order, and all documents, supporting materials, representations, statements and proceedings relating to the settlement, are not, and shall not be construed as, used as, or deemed evidence of, any admission by or against Defendant of liability, fault, wrongdoing, or violation of any law, or of the validity or certifiability for litigation purposes of the Settlement Class or any claims that were or could have been asserted in the Litigation.

20. The Settlement Agreement and this Final Approval Order, and all documents, supporting materials, representations, statements and proceedings relating to the settlement shall not be offered or received into evidence, and are not admissible into evidence in any action or proceeding, except that the Settlement Agreement and this Final Approval Order may be filed in any action by any of the Defendants or the Settlement Class Members seeking to enforce the Settlement Agreement or the Final Approval Order.

21. Consistent with Paragraph 10.5 of the Settlement Agreement, if the Effective Date does not occur for any reason, the following will occur: (a) the Final Approval Order and all of its provisions, will be vacated, including, but not limited to the Attorneys' Fees and Expenses Award and the Representative Plaintiffs' Service Awards, and the Final Approval Order will not waive, release or otherwise impact the Parties' rights or arguments in any respect; and (b) the Litigation will revert to the status that existed before the Settlement Agreement's execution date, and the Parties shall be restored to their respective positions in the Litigation as if the Settlement Agreement had never been entered into. No term or draft of the Settlement Agreement, or any part of the Parties' settlement discussions, negotiations, or documentation, will have any effect or be admissible in evidence for any purpose in the Litigation or any other action or proceeding.

22. Without affecting the finality of this Final Approval Order, the Court will retain jurisdiction over this Litigation and the Parties with respect to the interpretation, implementation and enforcement of the Settlement Agreement for all purposes.

23. The Court hereby dismisses the Action in its entirety with prejudice, and without fees or costs except as otherwise provided for herein.

**NOW, THEREFORE,** the Court hereby enters judgment in this matter pursuant to rule 58 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**:

DATED: ______________________ ________________________________________

HON. BARBARA M. G. LYNN
UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TRAVIS JAMES, et al.<br><br>*Plaintiffs*<br><br>v.<br><br>DAVACO, INC., et al.,<br><br>*Defendants*. | Case No.: 3:21-cv-02318-M<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

This matter is before the Court on Plaintiffs' motion for preliminary approval of the proposed class action settlement. Plaintiffs, individually and on behalf of the proposed Settlement Class, and Defendants have entered into a Settlement Agreement and Release, dated August __, 2022 (the "Settlement Agreement") that, if approved, would settle the above-captioned litigation. Having considered the motion, the Settlement Agreement together with all exhibits thereto, the record in this matter, and the briefs and arguments of counsel, IT IS HEREBY ORDERED as follows:

1. Unless otherwise defined herein, all terms capitalized herein shall have the same meanings ascribed to those terms in the Settlement Agreement.

2. The Court has jurisdiction over this Litigation, Representative Plaintiffs, Defendants, Settlement Class Members, and any party to any agreement that is part of or related to the Settlement Agreement.

**PRELIMINARY APPROVAL**

3. The Court has reviewed the terms of the Settlement Agreement, the exhibits thereto, Plaintiffs' motion papers and briefs, and the declarations of counsel and the Claims Administrator. Based on its review of these papers, the Court finds that the Settlement Agreement appears to be the result of serious, informed, non-collusive negotiations conducted with the assistance of Christopher Nolland, Esq. during a day-long mediation session on April 7, 2022, and during several hours of follow-up mediation sessions on April 12, 2022, April 13, 2022, and April 18, 2022, through which the basic terms of the settlement were negotiated and finalized. The Court further observes that the Settlement Agreement is the product of an informal exchange of fact discovery. The terms of the Settlement Agreement fall within the range of possible approval as fair, reasonable, and adequate.

4. The Court therefore GRANTS preliminary approval of the Settlement Agreement and all of the terms and conditions contained therein.

**PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS**

5. Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for settlement purposes only, the Settlement Class defined in the Settlement Agreement as follows:

All individuals identified by Defendants and to whom Defendants sent notice on or about July 2, 2021 that their information may have been impacted in the Security Incident.

6. Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for settlement purposes only, the California Settlement Subclass defined in the Settlement Agreement as follows:

All individuals in the Settlement Class who resided in California on June 11, 2021.

7. The Court preliminarily finds that the Settlement Class and California Settlement Subclass (together, the "Settlement Class") satisfy the requirements of Federal Rule of Civil Procedure 23(a) for settlement purposes: (1) the Settlement Class Members are so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Settlement Class; (3) the Representative Plaintiffs' claims are typical of those of Settlement Class Members; and (4) the Representative Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

8. The Court preliminarily finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) for settlement purposes: (1) the questions of law or fact common to the Settlement Class predominate over individual questions; and (2) class action litigation is superior to other available methods for the fair and efficient adjudication of this controversy.

9. The Court hereby appoints Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams as the Representative Plaintiffs of the Settlement Class.

10. The Court hereby appoints as Class Counsel Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP; M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp; Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP; and Joshua B. Swigart of Swigart Law Group, APC.

**NOTICE AND ADMINISTRATION**

11. Pursuant to the Settlement Agreement, the Parties have designated Angeion Group, LLC ("Angeion") as the Claims Administrator. Angeion shall perform all the duties of the Claims Administrator set forth in the Settlement Agreement.

12. The Court finds that the Class Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances. The Class Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. The Court therefore approves the Class Notice and Notice Program and directs the parties and the Claims Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and this Order.

13. The Claims Administrator shall commence the Notice Program within the time required by the Settlement Agreement.

14. The Court also approves the Claim Form.

**EXCLUSION AND OBJECTIONS**

15. Settlement Class Members who wish to opt-out and exclude themselves from the Settlement Class may do so by notifying the Claims Administrator in writing, postmarked no later than ______________, 202_ (75 calendar days after entry of this Order). To be valid, each request for exclusion must be made in writing and: (a) state the Settlement Class Member's full name, address and telephone number; (b) contain the Settlement Class Member's personal and original signature or the original signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Litigation, such as a trustee, guardian or person acting under a power of attorney; and (c) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement. All Requests for Exclusion must be submitted individually in connection with a Settlement Class Member, *i.e.*, one request is required for every Settlement Class Member seeking exclusion.

16. All Settlement Class Members who do not opt out and exclude themselves shall be bound by the terms of the Settlement Agreement upon entry of the Final Approval Order.

17. Settlement Class Members who wish to object to the Settlement may do so by submitting a written objection to the Claims Administrator in accordance with the procedures outlined in the Class Notice, filed or postmarked no later than ____________, 202_ (75 calendar

days after entry of this Order). Any Settlement Class Member wishing to comment on or object to the Settlement Agreement shall mail the comment or objection to the Claims Administrator at: [insert address]. The written objection must contain: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire class; (iv) a clear and detailed written statement of the specific legal and factual bases for each and every objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any counsel representing the objector; (vi) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel; (vii) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections; and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative, if any.

18. Any Settlement Class Member who does not timely submit a written objection in accordance with these procedures and the procedures detailed in the Class Notice and Settlement Agreement shall be deemed to have waived any objection, shall not be permitted to object to the Settlement, and shall be precluded from seeking any review of the Settlement Agreement and/or the Final Approval Order by appeal or other means.

**FINAL APPROVAL HEARING**

19. The Court will hold a Final Approval Hearing on __________, 202_ in Courtroom 1570 of the United States District Court, Northern District of Texas, 1100 Commerce Street, Dallas, TX 75242.

20. At the Final Approval Hearing, the Court will consider whether: (a) the Settlement is fair, reasonable, and adequate; (b) the Settlement Class should be finally certified for settlement purposes; (c) a final judgment should be entered; (d) Class Counsel's motion for attorneys' fees and costs should be granted; and (e) the service awards sought for Representative Plaintiffs should be granted.

21. The Court reserves the right to continue the date of the Final Approval Hearing without further notice to Settlement Class Members.

**DEADLINES, INJUNCTION & TERMINATION**

| Event | Date |
|---|---|
| Defendants to provide Settlement Class Member data to Claims Administrator | 10 business days after entry of this Order |
| Notice Program per Settlement Agreement commences with the establishment of the settlement website | 7 days after Claims Administrator receives Settlement Class Member data |
| Class Counsel's Motion for Attorneys' Fees and Costs and Service Awards | 21 days prior to the Objection Deadline |
| Opt-Out and Objection Deadlines | 75 days after entry of this Order |
| Motion for Final Approval | 42 days prior to the Final Approval Hearing |
| Replies in Support of Motion for Final Approval and Motion for Attorneys' Fees and Costs | 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience at least __ 130 days after entry of this Order |

22. All proceedings and deadlines in this matter, except those necessary to implement this Order and the settlement, are hereby stayed and suspended until further order of the Court.

23. All Settlement Class Members who do not validly opt out and exclude themselves are hereby enjoined from pursuing or prosecuting any of the Released Claims as set forth in the Settlement Agreement until further order of the Court.

24. In the event that the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement: (a) the Settlement Agreement and this Order shall become void, shall have no further force or effect, and shall not be used in the Litigation or any other proceedings for any purpose other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination; (b) this matter will revert to the status that existed before execution of the Settlement Agreement; and (c) no term or draft of the Settlement Agreement or any part of the Settling Parties' settlement discussions, negotiations or documentation (including any briefs filed in support of preliminary or final approval of the settlement) shall (i) be admissible into evidence for any purpose in this Litigation or in any other action or proceeding other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination, (ii) be

deemed an admission or concession by any settling party regarding the validity of any of the Released Claims or the propriety of certifying any class, or (iii) be deemed an admission or concession by any settling party regarding the truth or falsity of any facts alleged in the Litigation or the availability or lack of availability of any defense to the Released Claims.

**IT IS SO ORDERED**.

DATED: ________________ ____________________________________

HON. BARBARA M. G. LYNN
UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT E

EXHIBIT E

To: <<class member email address>>

From: <<Claims Administrator>>

Re: Notice of Class Action Settlement

*(Email body:)*

**YOU MAY BE A CLASS MEMBER IN A PROPOSED CLASS ACTION SETTLEMENT IF YOU ARE OR WERE EMPLOYED BY DAVACO AND DAVACO PREVIOUSLY NOTIFIED YOU THAT YOUR INFORMATION MAY HAVE BEEN IMPACTED IN A SECURITY INCIDENT THAT AFFECTED ITS COMPUTER NETWORK**

A proposed settlement has been given preliminary approval in a class action lawsuit against DAVACO, Inc. and DAVACO LP ("Davaco") related to a security incident that involved unauthorized access to Davaco's computer network on or about June 11, 2021, and was previously disclosed to employees by Davaco in July of 2021. (*James, et al. v. Davaco, Inc., et al.,* United States District Court, Northern District of Texas, Case No. 3:21-cv-02318-M.) Davaco denies all of the claims and denies that it did anything wrong. **The sole purpose of this notice is to inform you of the lawsuit and the settlement so that you may decide what steps to take in relation to it.**

The settlement provides payments to Settlement Class Members of either a Basic Award of **$185** or 36 months of free identity theft services; a Reimbursement Award; and a Time Spent Award. Those Settlement Class Members who were California residents on June 11, 2021 are also eligible to receive an additional payment (the California Subclass Award) of **$175**. The Basic Award and the California Subclass Award are subject to a pro rata increase or decrease depending upon the number of valid claims submitted. The settlement provides, as an alternative to a Basic Award, 36 months of free identity theft services called "Financial Shield" from Aura (a.k.a. Pango) for Settlement Class Members who file a claim. If you experienced unauthorized charges or identifiable losses that were not denied, reversed or otherwise credited or reimbursed and which you believe in good faith were more likely than not caused by the Security Incident and/or you incurred out of pocket expenses related to the security incident, you may also file a claim for a Reimbursement Award.

For more information regarding the settlement, including information about the Basic Award, California Subclass Award, Reimbursement Award, Time Spent Award, and Aura Financial Shield, your rights under the settlement, instructions on how to be excluded from the settlement or object to the settlement, and a form to fill out to obtain settlement benefits, please visit **www.__________.com**, where you will find a more detailed notice.

**Please visit www.______________.com to obtain important information regarding the settlement and your rights.**

**There are deadlines associated with the choices you may make regarding the settlement. The last day to exclude yourself from the settlement or to object to the settlement is [INSERT DATE].**

# EXHIBIT F

EXHIBIT F

**Legal Notice of**
**Class Action Settlement**

***James, et al. v. DAVACO, Inc., et al.***
**Settlement**
**[Settlement Administrator address]**

**Why am I getting this Notice?** You may be a class member in a proposed class action settlement if you are or were employed by Davaco and Davaco previously notified you that your information may have possibly been exposed in a security incident that affected its computer network.

**[Class member]**

______________

______________

**For more information on the settlement, see the reverse of this card or go to [www.____________.com]**

**Class Action Settlement in *James, et al. v. DAVACO, Inc., et al.***

**YOU ARE A CLASS MEMBER IN A PROPOSED CLASS ACTION SETTLEMENT IF DAVACO PREVIOUSLY NOTIFIED YOU IN JULY 2021 THAT YOUR INFORMATION MAY HAVE BEEN IMPACTED IN A SECURITY INCIDENT THAT AFFECTED ITS COMPUTER NETWORK**

A proposed settlement has been given preliminary approval in a class action lawsuit against DAVACO, Inc. and DAVACO LP ("Davaco") related to a security incident that involved unauthorized access to Davaco's computer network on or about June 11, 2021, and was previously disclosed to potentially impacted persons by Davaco in July of 2021. (*James, et al. v. DAVACO, Inc., et al.,* United States District Court, Northern District of Texas, Case No. 3:21-cv-02318-M.) Davaco denies all of the claims and denies that it did anything wrong. **The sole purpose of this notice is to inform you of the lawsuit and the settlement so that you may decide what steps to take in relation to it. You must make a claim to obtain the Settlement benefits.**

The settlement provides payments to Settlement Class Members of either a Basic Award of **$185** or 36 months of identity theft services called "Financial Shield" from Aura (a.k.a. Pango); a Reimbursement Award; a Time Spent Award; and an additional payment (the California Subclass Award) of **$175** to those Settlement Class Members who were California residents on June 11, 2021. The Basic Award and the California Subclass Award are subject to a pro rata increase or decrease depending upon the number of valid claims submitted. The Settlement also provides for 36 months of identity theft services called "Financial Shield" from Aura (a.k.a. Pango), which you may claim instead of a Basic Award. If you experienced unauthorized charges or identifiable losses that were not denied, reversed or otherwise credited or reimbursed and which you believe in good faith were more likely than not caused by the Security Incident, or you incurred out of pocket expenses related to the security incident, you may file a claim for a Reimbursement Award.

For more information regarding the settlement, including information about the Basic Award, the California Subclass Award, the Reimbursement Award, the Time Spent Award, Aura Financial Shield, your rights under the settlement, instructions on how to be excluded from the settlement or object to the settlement, and a form to fill out to obtain settlement benefits, please visit **www.__________.com**, where you will find a more detailed notice.

**Please visit www.____________.com to obtain important information regarding the settlement and your rights.**

**There are deadlines associated with the choices you may make regarding the settlement. The last day to exclude yourself from the settlement or to object to the settlement is [INSERT DATE].**

# ATTACHMENT 2

CaseyGerry

CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP

# FIRM RESUME

**110 Laurel St.**
**San Diego, CA 92101**
**T: 619-238-1811**
**F: 619-544-9232**
**www.caseygerry.com**

# FIRM OVERVIEW

Founded in 1947, San Diego based firm of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP "CaseyGerry" is one of the oldest plaintiffs' law firms in California and is nationally recognized. Our firm focuses on complex civil litigation, with an emphasis on consumer protection, class actions, product defect, pharmaceutical and serious personal injury matters. Our attorneys have held numerous leadership roles in coordinated cases at both the state and federal level. We have prosecuted a variety of consumer fraud, unfair business practices, TCPA, product defect, and other complex mass torts and class action matters. We have litigated cases against companies such as Volkswagen, Exxon, Amazon, Sony, Toyota, General Motors, AT&T, Mitsubishi, Apple, Wells Fargo, Bank of America, American Express, Honda, Discover Financial Services, and Yahoo!, among others.

CaseyGerry represented then Lt. Gov. Gray Davis in his private attorney general action against the tobacco industry. We were successful in obtaining a settlement of over $25 billion for the citizens of California, and also took part in successfully resolving other similar tobacco cases in other states. Our firm also was part of the trial team and played a leadership role in the Exxon Valdez litigation, which resulted in a $5 billion verdict. And recently, the firm obtained a first of its kind appellate victory against Amazon involving strict liability of online marketplaces.

The firm has extensive experience in class action, mass tort and other complex litigation and firm members have recently served on court-appointed leadership committees, including cases against the NFL, Volkswagen, Audi, Yahoo!, Wells Fargo, Apple, Intel and Fiat-Chrysler.

The firm's experienced lawyers have earned numerous local, regional and national accolades and awards bestowed for professional success. Our lawyers have been president of, or currently hold, leadership positions and longtime affiliations with the California State Bar Association, American Association for Justice (AAJ, formerly known as American Trial Lawyers Association "ATLA"), Consumer Attorneys of California (CAOC), Consumer Attorneys of San Diego (CASD), San Diego County Bar Association, Lawyers Club of San Diego, California Women Lawyers, North County Bar Association, Korean American Bar Association San Diego, South Asian Bar Association of San Diego, Filipino American Lawyers of San Diego, and Tom Homann LGBT Law Association. Our partners have been elected to such prestigious organizations as the American Board of Trial Advocates, the International Academy of Trial Lawyers, and the International Society of Barristers. Four partners have served as president of the Consumer Attorneys of San Diego. Five of the firm's partners are members of the American Board of Trial Advocates (ABOTA), and partner Frederick Schenk is past president of the executive board of the San Diego chapter of ABOTA.

# CASEYGERRY ATTORNEYS

## **David S. Casey, Jr.**

David S. Casey, Jr. is the senior partner of CaseyGerry, the firm that his father founded in 1947. He began his career as a prosecutor and has handled over 70 jury trials during the course of his over forty-year legal career. He is a past president of the Association of Trial Lawyers of America (now the American Association for Justice), Consumer Attorneys of California, Western Trial Lawyers Association, and San Diego Trial Lawyers Association (now Consumer Attorneys of San Diego).

Mr. Casey is a proven leader nationwide. During his tenure as president of ATLA (now AAJ), which at the time was an organization of approximately 60,000 lawyers nationwide, he was one of a small group of people who proposed the Victims Compensation Fund for victims of the unprecedented terrorist attacks of September 11, 2001. Thereafter, AAJ formed Trial Lawyers Care (TLC) to coordinate what would become one of the largest pro bono programs in history. TLC helped 1,739 eligible claimants from 35 states and 11 countries, and the recovery to these claimants exceeded $2 billion dollars.

Mr. Casey is also a leader in the state of California. He undertook a lead role in California on behalf of then Lieutenant Governor Gray Davis in his private attorney general action against the Tobacco Industry, instigated when the state of California declined to participate in the litigation with other states' Attorneys General. This litigation involved multiple billion-dollar companies, who had been involved in litigation over the effects of tobacco use for decades. Mr. Casey was involved in extensive negotiations in Washington, DC, and proposed legislation. After Gov Davis' election as Governor of California, a global settlement resulted in the resolution of all claims.

During the course of his career, Mr. Casey has represented American POWs in litigation for having been treated as slave laborers during World War II and his firm was co-counsel in the Exxon Valdez Oil Spill litigation. He also represented Honda dealers in one of the most massive fraud schemes on Honda dealers in the history of the United States.

Mr. Casey was appointed to serve on the Plaintiffs' Steering Committee for *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Lit.*, in which he represented the interests of approximately 500,000 owners and lessees of Volkswagen diesel vehicles in the third largest car recall in history. Following his appointment in *Volkswagen,* he was appointed in *In re: Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Product*

*Liability Lit*. He was also appointed in *In re: Wells Fargo Collateral Protection Insurance Lit.,* in which he helped negotiate a favorable settlement, and to the PSC for *In re: National Football League Players' Concussion Injury Lit*., representing the interests of thousands of former NFL players.

Having opted out of the class action, he represented the family of Junior Seau against the NFL in the national head injury litigation, as well as represented the family of Tony Gwynn for the wrongful death resulting from his use of smokeless tobacco.

Mr. Casey has served as the Lawyer Representative for the United States District Court, Southern District of California and as a current board member for the Ninth Judicial Circuit Historical Society. He is honored to have been inducted into the San Diego Consumer Attorneys Hall of Fame. He is also a member of such prestigious, invitation-only, organizations, such as the International Academy of Trial Lawyers, International Society of Barristers and American Board of Trial Advocates.

David S. Casey, Jr., has received over 100 accolades including his recognition as one of the Top Plaintiff's Lawyers in the State of California by the Daily Journal in 2015, 2016, 2018, 2019, 2020 and 2021.

## Gayle M. Blatt

Heading the firm's complex litigation practice group, Ms. Blatt concentrates her practice on consumer class actions, data security cases, and pharmaceutical and medical device cases. She joined CaseyGerry more than 30 years ago and has become well known for representing injured clients and consumers in a wide range of high profile, multi-million-dollar cases.

Ms. Blatt has recently been appointed as interim co-lead counsel in *In re: Netgain Technology, LLC, Consumer Data Breach Lit*., 21-cv-1210-SRN-LIB (D. Minn.), interim co-lead counsel in *DeSue v. 20/20 Eye Care Network, Inc. et al.,* Case No. 21-cv-61275-RAR (S.D. Fla.), interim lead counsel in *Pfeiffer et al v. RadNet, Inc*., Case No. 20-cv-09553-RGK-SK (C.D. Cal.), lead counsel in *In re: Waste Management Data Breach Lit.,* Case No. 21-cv-06199-DLC (S.D. N.Y.), interim co-lead counsel in *In re: Warner Music Group Data Breach Lit*., Case No. 20-cv-07473-PGG (S.D.N.Y.), and interim class counsel in *In re: US Fertility LLC Data Security Lit*., Case No. 8:21-cv-00299 (D. Md.). Ms. Blatt also serves on CaseyGerry's behalf, as Interim Liaison Counsel, for *In re: Bank of America California Unemployment Benefits Litigation*, Case No. 21-md-02992-LAB (S.D. Cal.). Additionally, she has served as class counsel in *In re: Citrix Data Breach Lit.,* Case No. 19-cv-61350-RKA (S.D. Fla.). Recently, she was appointed to the Plaintiffs' Executive Committee in *In re: EyeMed Vision Care, LLC Data Security Breach Lit*., Case No. 21-cv-00036-DRC (S.D. Ohio). Ms. Blatt was also appointed to the five-member PEC overseeing the class action litigation

related to the massive Yahoo data breaches, Case No. 16-MD-02752 (N.D. Cal.). She served on a committee in the consolidated data breach class action *Adkins v. Facebook, Inc.*, Case No. 18-05982-WHA (N.D. Cal.). She previously served as settlement class counsel in *Sung et al v. Schurman Fine Papers d/b/a Schurman Retail Group*, Case No. 17-cv-02760-LB (N.D. Cal.), and liaison counsel in *In re: Sony Gaming Networks and Customer Data Security Breach Lit.*, Case No. 11-md-02258-AJB (S.D. Cal.). Ms. Blatt has been appointed to the Plaintiffs' Executive Committees in *In re: ZF- TRW Airbag Control Units Products Liability Lit.*, Case No. 19-ml-02905-JAK-FFM (C.D. Cal.); *In re: Intel Corp. CPU Marketing, Sales Practices and Products Liability Lit.*, Case No. 18-md-2828-SI (D. Or.), and *In re: Apple Inc. Device Performance Lit.*, Case No. 18-md-02827-EJD (N.D. Cal.). She also currently serves as Co-Liaison Counsel in *In re: Incretin Mimetics Product Liability Lit.*, Case No. 13-md-02452-AJB-MDD (S.D. Cal.), and served as liaison counsel in prominent cases such as *In re: Hydroxycut Marketing and Sales Practices Lit.*, Case No. 09-md-02097 (S.D. Cal.).

Ms. Blatt has received three Outstanding Trial Lawyer awards from the Consumer Attorneys of San Diego. She was recognized as one of the Top Plaintiff's Lawyers in California for 2021 and Top Women Lawyers 2021 by the Daily Journal. She has been named one of San Diego's Top 25 Female Attorneys 2007, 2009 and from 2013 to 2022 and the Top 10 San Diego Lawyers for 2019 to 2022 by *San Diego Super Lawyers*. Ms. Blatt was named one of San Diego's Best Attorneys of 2019 to 2021 by San Diego Daily Metro. She was named one of San Diego's most influential women 2018 to 2020 and one of the top 50 Influential Professionals by the San Diego Daily Transcript. Blatt was named one of the Top 500 Influential Business Leaders, San Diego Business Journal 2019. She was named one of the Lawdragon 500 Leading Plaintiff Consumer Lawyers 2019 to 2022 and is listed annually in Best Lawyers.

For ten years, Ms. Blatt served on the Board of Directors of the Consumer Attorneys of San Diego and served as President of the organization in 2007. As President, she was honored as Trial Lawyer Association Chapter President of the Year by Consumer Attorneys of California. She received a President's Award from Consumer Attorneys of San Diego. Ms. Blatt currently serves on the Board of Trustees for her alma mater, California Western School of Law. She also serves on the board of the Tom Homann Law Association Foundation and is a past president of the San Diego County Bar Foundation.

## **Frederick Schenk**

Frederick Schenk is a tenacious litigator and CaseyGerry partner for decades and concentrates his practice on products liability, serious personal injury, and asbestos law. In fact, Frederick, who has been with CaseyGerry for more than 30 years, achieved the largest verdict ever in San Diego against an asbestos

manufacturer – Owens Corning Fiberglass – obtaining a $2.4 million verdict in punitive damages as well as economic losses.

In addition, he is a specialist in auto collision litigation and co-author of the LexisNexis California Automobile Litigation Handbook. Over the years, Schenk has received numerous awards and honors for his work – including recognition as an Outstanding Trial Lawyer from the Consumer Attorneys of San Diego, and twice recognized by Best Lawyers as San Diego's Trial Lawyer of the Year in the area of mass torts and class actions. He has remained active in both community and professional groups and finds tremendous gratification in his work as an attorney, especially when he provided services to the families of the victims of 9/11 via Trial Lawyers Care, the largest pro bono program in the history of American jurisprudence.

Mr. Schenk received numerous awards, including the San Diego County Bar Association's Community Service Award and Consumer Attorneys of San Diego's Outstanding Trial Lawyer Award. He serves on the Board of Governors for the American Association for Justice. He is current president for the San Diego Chapter of American Board of Trial Advocates.

Schenk served as president of the San Diego County Fair board and was re-appointed by California Governor Jerry Brown to serve another four-year term on the board which oversees all activities at the Del Mar Fairgrounds.

## Jeremy K. Robinson

Jeremy Robinson is the Chair of Casey Gerry's Motion and Appellate Practice and is widely acknowledged as one of the premier legal writers and analysts in the state. As a result, he has been named the Consumer Advocate of the Year for 2020 by the Consumer Attorneys of San Diego.

Most recently, Robinson secured a precedent-setting decision against online retail titan Amazon. See, *Bolger v. Amazon.com* (2020) 53 Cal.App.5th 431. The decision marked the first time a state appellate court anywhere in the country has ruled against Amazon on this issue, and currently is the only published appellate decision in the nation holding Amazon strictly liable. The result was significant enough to be featured in stories by Bloomberg, The Washington Post, The New York Times, USA Today, CNBC, and many other national and international news and tech outlets.

In this same vein, Robinson also helped co-author, with National Advocacy Group, Public Justice amicus briefs in two other key appeals involving Amazon, *Oberdorf v. Amazon.com Inc.*, 930 F.3d 136, *rehearing en banc granted and opinion vacated*, 936 F.3d 182 (3rd Cir. 2019) and *McMillan v. Amazon.com, Inc.*, (Fifth

Cir. No. 20-20108). And Robinson worked tirelessly behind the scenes on AB 3262, a bill aimed at holding online marketplaces to the same standard as traditional retailers.

Mr. Robinson is admitted to practice in all state and federal courts in California and the Third, Fifth, and Ninth Circuit Courts of Appeals. In addition to the *Bolger* decision, he also secured a precedent-setting ruling in *M.F. v. Pacific Pearly Hotel Management, LLC* (2017) 16 Cal.App.5th 693, a case in which Robinson successfully urged the expansion of FEHA provisions to a rape committed by an intruder on the premises. Robinson has also worked extensively in the class action arena, playing key roles in nationwide Multi-District Litigation cases like *In re: Yahoo! Inc. Customer Data Security Breach Lit.*, 16-MD-02752-LHK (N.D. Cal.) and *In re: Wells Fargo Collateral Protection Insurance Lit.*, 8:17-ML-2797-AG-KES (C.D. Cal.)

Outside of his case work, Robinson is a prolific and in-demand writer and speaker on emerging legal issues. This includes regular articles for the *Daily Journal* and *Daily Transcript*, many CLE-approved presentations and webinars, and a book chapter. He is also a charter member and Barrister in the San Diego Appellate Inns of Court and is a member of the Consumer Attorneys of San Diego, Consumer Attorneys of California, San Diego County Bar Association, and Lawyers' Club. He was named Consumer Advocate of the year 2021 by the Consumer Attorneys of San Diego, a San Diego Super Lawyer, Best Lawyers 2020 and 2021 and Leaders in Law 2020 by the San Diego Business Journal.

## Robert J. Francavilla

Mr. Francavilla is a widely respected trial lawyer and was recently honored as Consumer Attorneys of San Diego's Trial Lawyer of the Year for 2017. He has made an important difference in the lives of many, as well as earned many accolades and high-profile verdicts and settlements over the years. Specializingin serious personal injury, premises liability and highway design cases, he has successfully handled the gamut of complex cases, including tragic losses involving wrongful death, paraplegia, quadriplegia, severe burns, loss of limbs and major orthopedic injuries.

Mr. Francavilla has received honors including LA Daily Journal's Top 25 Plaintiff's Lawyers 2015 and 2020, Trial Lawyer of the Year 2016 by the Consumer Attorneys of San Diego and a six-time awardee of the Consumer Attorneys of San Diego's Outstanding Trial Lawyers Award. He has been named Best Lawyers "Lawyer of the Year" 2022, he is a San Diego Super Lawyer 2007 to 2021, Lawdragon 500 Leading Plaintiff Lawyers, among other awards.

## Thomas D. Penfield

During his almost 30-year tenure with the firm, Mr. Penfield has handled numerous multi-million-dollar cases, concentrating his practice on personal injury, products liability and class actions, including serving as co-counsel in a jury trial representing H&H Cerritos against U.S. Mineral Products, Inc., obtaining a $14.1 million verdict. He has also been involved in numerous class action lawsuits, including a case against the City of San Diego – an effort that helped residents reclaim millions in damages that was mischarged for sewer services – which was settled for $40 million.

With a distinguished legal background, he was a supervising trial lawyer with the Defenders Program of San Diego and then a clinical Professor at the University of San Diego School of Law before joining CaseyGerry in 1988. Mr. Penfield continues to teach as an adjunct professor at the University of San Diego School of Law, and regularly lectures both nationally and internationally on trial techniques and persuasion.

Mr. Penfield served as President of the North County Bar Association. He is one of only nine attorneys in California to earn the recognition of Diplomate in the National College of Advocacy for American Association for Justice. He is also a member of the American Board of Trial Advocates and a Master in the American Inns of Court.

## Thomas D. Luneau

With a legal career spanning three decades, Mr. Luneau has had his share of formidable opponents in the courtroom over the years. He started his career as a state-licensed private investigator, joining CaseyGerry in 1982 as an investigator.

Now a talented litigator who has prosecuted many complex cases, he focuses his practice primarily on premises and products liability and serious personal injury cases, earning numerous multi-million verdicts and settlements — including cases involving defective industrial drilling machinery, motorcycle lane splitting injuries, concussion injuries, wrongful death and more. Other high profile matters he has handled include cases involving abuse by a CHP officer who intentionally broke the ankle of a handcuffed suspect (4th amendment violation excessive force), and the wrongful death of an inmate at Donovan State Prison (8th amendment violation cruel and unusual punishment).

In addition, he has successfully represented numerous military and law enforcement personnel and their family members from entities including the San Diego Police Department, the San Diego County Sheriff's Department, Riverside

County Sheriff's Department, California Highway Patrol, and the United States Border Patrol.

Luneau is a member of the American Board of Trial Advocates. He has received numerous awards, including the Consumer Attorneys of San Diego's Outstanding Trial Lawyer Award.

## Jason C. Evans

Jason C. Evans is an attorney specializing in complex litigation and personal injury. Throughout his career, he has handled hearings, pleadings, depositions, trial, mediations, and memoranda for a number of multi-million dollar civil and class actions.

He previously worked for the San Diego Volunteer Lawyer program, drafting requests for restraining orders for victims of domestic and elder abuse, and was a legal assistant for Spach, Capaldi and Waggaman, LLP, in Newport Beach.

He was selected as one of the San Diego Business Journal's Next Top Business Leaders under 40 for 2020, Top 40 Under 40, 2020 by the Daily Transcript, Super Lawyers Rising Star 2015-2021, San Diego Super Lawyers 2018, 2015 SD Metro 40 Under 40 Awards, and 2017 CASD Outstanding Trial Lawyer Award.

## P. Camille Guerra

P. Camille Guerra is a key member of the complex litigation team, working with partner Gayle M. Blatt to concentrate on data security cases like Yahoo Inc., consumer fraud litigation such as Volkswagen Diesel, Fiat/Chrysler Diesel, and Wells Fargo; as well as other high profile consumer class actions, including a national case involving anti-competitive behavior by the major tuna companies in the U.S.

With a Master of Advanced Studies in health policy and the law, Camille is keenly focused on addressing complex healthcare issues related to the law. Her research on counterfeit Avastin was the subject of an article she co-authored in the prestigious Nature Reviews Clinical Oncology. Her most recent publication is "USA Criminal and Civil Prosecutions Associated with Illicit On-line Pharmacies: Legal Analysis and Global Implications," which appeared in Med Access.

Guerra attended Eotvos Lorand University in Budapest, Hungary, and University of Prishtina in the former Yugoslav Republic of Kosova. Camille has been a member of the Alumni Association Board of Directors at Thomas Jefferson School of Law and an alumni mentor to the Middle Eastern, Armenian, and Muslim student associations. Camille is a past member of the Consumer Attorneys of San Diego Educational Committee and a member of Lawyers Club, San Diego County Bar

Association, South Asian Bar Association, and a prior member of San Diego State University President's Latino Advisory Council. She is fluent in Spanish and has studied Arabic, French, Italian, Russian, and Farsi.

## Adam B. Levine

Adam B. Levine is a key member of the serious personal injury team, focusing on product defect, premises, auto and aviation cases. He has worked on a variety of serious cases including: a federal product defect case involving a military parachute that deployed inside an airplane, killing a decorated Navy Seal; a federal case against the Border Patrol after one its agents crashed a truck into a client riding a motorcycle; a product defect and negligence case where his client suffered a serious arm injury while riding as a passenger in a UTV; a case against the City of San Diego that settled for $1 million after his client tripped over uneven concrete in a crosswalk and suffered permanent injuries; and high-profile litigation against Big Tobacco involving smokeless tobacco or "dip."

He is on the board of directors for the Consumer Attorneys of San Diego, is co-chair of the personal injury section of the North County Bar Association, is on the board of directors for the NLD section of the Consumer Attorneys of California and writes for the product defect column in the Trial Bar News.

Levine was named a San Diego Super Lawyers Rising Star in 2017- 2020. He was also awarded the North County Bar Association's Rising Star award in 2018 and was named in the top 40 Under 40 by The Daily Transcript and San Diego Metro Magazine. He was named in the Best Lawyers: Ones to Watch and has received 14 American Jurisprudence Awards, CWSL, Kennedy Scholar, Academic Excellence Award, Trustees' Award, CWSL, Academic Excellence Award, CWSL and Trustees' Award, CWSL.

## David S. Casey III

David Casey III is an attorney specializing in personal injury. He has worked extensively for both the complex litigation and personal injury teams at Casey Gerry. Recently, he participated in the TAP program as one of the first participants, during which time he tried multiple criminal cases as a volunteer deputy district attorney with the South Bay office of the San Diego County District Attorney.

Casey III attended the University of San Diego and focused his time at school on trial advocacy and complex litigation. He received a CALI award for his paper analyzing American and European attitudes toward online privacy and the "right to be forgotten." David externed for the Honorable Anthony Battaglia at the United States District Court for the Southern District of California. He also interned and graduated from Gerry Spence's acclaimed Trial Lawyers College in 2018.

Casey III has been accepted to the Wallace inn as an Associate Member and was names in Best Lawyers: Ones to Watch 2021 and 2022.

## Eric Ganci

Eric Ganci is a graduate of Thomas Jefferson School of Law. He is an associate attorney and member of the personal injury team. Before joining CaseyGerry, Eric ran his own firm focused on representing people arrested for driving under the influence. During that time, he tried 72 cases to verdict: 70 jury trials and 2 bench trials. In that work, after completing required coursework and passing a certification exam, Eric earned the designation as a Lawyer-Scientist by the American Chemical Society, Chemistry and the Law Division.

Ganci is a member of Consumer Attorneys of San Diego, Lawyers Club of San Diego (Board Member 2012-2016, Photography Co-Chair 2011-2013, and Champagne & Chocolates Affair Co-Chair 2012), San Diego County Bar Association (New Lawyers Division Board of Directors, Community Service Chair 2012, New Lawyers Division Board of Directors, Newsletter Chair 2011), and former President and Vice President of Thomas Jefferson SOL Alumni Association (2009-2014).

He was awarded Thomas Jefferson SOL Adjunct Professor of the Year, Thomas Jefferson SOL A. Thomas Golden Honorary Alumnus of the Year, San Diego's Top 40 Under 40 (2011) and Outstanding Service by a New Lawyer by San Diego County Bar Association (2011). He is a former graduate of the Trial Lawyers College, and has been teaching at the College since 2016, and assisting with civil and criminal trials across the country.

## Katie McBain

Katie McBain is a graduate of California Western School of Law. She is a member of the complex litigation team. Prior to joining CaseyGerry, Katie successfully litigated bench trials, counseled retirement and pension systems regarding compliance with local, state and federal laws, with particular focus on the County Employees Retirement Law of 1937, and consulted business owners regarding labor and employment issues. She is a member of Lawyers Club of San Diego, Contributor to the Conference of California Bar Associations, and a member and volunteer of Think Dignity, a non-profit focused on empowering our community to advance basic dignity for those living on the street. Katie is proficient in Spanish.

## Michael J. Morphew

Michael Morphew specializes in class and representative actions and has extensive experience with wage and hour complex litigation. Prior to joining CaseyGerry, Michael represented individuals as well as local, regional, and national entities in individual, class action, and Private Attorneys General Act ("PAGA") employment

claims. Michael has track record of successfully informally resolving pre-litigation and legal cases.

Michael graduated Cum Laude from the University of San Diego School of Law and earned his undergraduate degree from the University of Washington in Seattle. He also completed the Straus Institute for Dispute Resolution's STAR: A Systematic Approach to Mediation Strategies program. While in law school, he worked for two and half years as a judicial intern for the Honorable Judith F. Hayes (Ret.). Michael also interned for the Center for Public Interest Law and reported on the California Public Utilities Commission and Board of Accountancy activities and compliance with their legal requirements.

## Daniel Turek

Daniel Turek is an associate attorney at CaseyGerry where he works with the personal injury team. Daniel earned his Juris Doctor degree from the California Western School of Law and his Bachelor of Arts degree in Business and Economics from the University of California, Santa Barbara.

Before joining CaseyGerry, Daniel was an attorney with Arendsen Braddock LLP, where he worked on personal injury, wrongful death, premises liability, and employment discrimination cases. Prior to that, he was an attorney with Rodriguez & Associates in Bakersfield, California, where he worked on personal injury, wrongful death, industrial, trucking, premises liability and sex abuse cases.

Before law school, Daniel had the opportunity to intern during a graduate program at Gerry Spence's Trial Lawyer College in beautiful Wyoming. This experience was the genesis of his passion for trial law and advocacy for individuals. During law school at California Western, Mr. Turek received an Academic Achievement Award in Evidence Advocacy and participated on multiple mock trial teams.

## Samantha Kaplan

Samantha Kaplan is an associate attorney at CaseyGerry where she works with the personal injury team. She received her Juris Doctor from Georgetown University and a Bachelor of Arts degree in International Development and Africana Studies from Tulane University. Prior to joining CaseyGerry, Samantha worked as a law clerk with the U.S. State Department Office of the Assistant Legal Advisor where she wrote legal briefs as part of the U.S. submissions to the Iran-U.S. Claims Tribunal, conducted legal research, wrote memoranda on Investor State Dispute Settlements and Bilateral Investment issues, and more.

## Michael Benke

Michael is part of the CaseyGerry complex litigation team. He received his JD degree from Berkeley Law School (Boalt Hall) with a concurrent degree from Berkeley's Goldman School of Public Policy, where he focused on quantitative methods. During law school, he externed for Judge M. Margaret McKeown of the Ninth Circuit Court of Appeals.

Following law school Michael served as an attorney in the chambers of California Supreme Court Justice Joyce L. Kennard, and subsequently, received trial and appellate experience with the economic crimes and appellate divisions of the San Diego County District Attorney. Michael has served in the Fourth District Court of Appeal, Division One, as a research assistant to Associate Justice Joan Irion, and has argued cases before the California Court of Appeal, Division Two (San Bernardino).

Michael is also a medical doctor. Following his legal education and experience, he attended and received his MD degree at Saint George's University, where testing and academics earned him the highest merit scholarship at entry. Most recently, in his clinical years he rotated through Eisenhower Hospital and Desert Regional Medical Center in Palm Springs, Arrowhead Regional Medical Center in San Bernardino, and the Santa Clara County hospital system. He completed sub-internships in medicine, hospital-based family medicine, and psychiatry. While in medical school, Michael worked as a law clerk for CaseyGerry.

Michael is licensed to practice law in California and the state of New York, including the federal Southern District of New York. He is fluent in Spanish.

## Noah Moss

Noah Moss is a civil trial lawyer at CaseyGerry where he works with the personal injury team. He joined the firm after working with a prestigious Personal Injury law firm in Bakersfield, CA as a trial attorney. Prior to that, Noah worked for a big New York firm where he represented pharmaceutical companies in Patent litigation. During his time representing large corporations, Noah realized that he wanted to join a law practice that worked for the individual not against them. This led to his transition to personal injury law.

Noah received his Juris Doctorate from Loyola University, Chicago School of Law, with a certificate in Advocacy and International Law. In addition, he received a Master of Laws degree in IP & Information Technology Law from Fordham Law School, New York. For his undergraduate studies, he attended University of California San Diego, graduating with a Bachelor of Science in Biology and Molecular Biology.

# SELECT LEADERSHIP POSITIONS

- *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Lit.*,
  MDL No. 2672
- *In re: ZF-TRW Airbag Control Units Products Liability Lit.*,
  Case No. 19-ml-02905 JAK (C.D. Cal.)
- *In re: Waste Management Data Breach Lit.*,
  Case No. 21-cv-06199-DLC (S.D. N.Y.)
- *In re: Netgain Technology, LLC, Consumer Data Breach Lit.*,
  Case No. 21-cv-1210-SRN-LIB (D. Minn.)
- *DeSue v. 20/20 Eye Care Network, Inc. et al.*,
  Case No. 21-cv-61275-RAR (S.D. Fla.)
- *In re: Bank of America California Unemployment Benefits Lit.*,
  Case No. 3:21-md-02992-LAB-MSB (S.D. Cal.)
- *In re: Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Lit.*,
  MDL No. 2777
- *In re the Exxon Valdez*,
  Case No. CV-89-00095-HRH,
  *Exxon Shipping Co v. Baker*, 554 U.S. 471 (2008)
- *Vinsant v. US Fertility, LLC*,
  Case No. 8:21-cv-00225 (S.D. Md.)
- *In re: Warner Music Group Data Breach*,
  Case No. 1:20-cv-07473-PGG (S.D. N.Y.)
- *In re: RadNet, Inc. Data Breach*,
  Case No. 2:20-cv-09553 (C.D. Cal.)
- *In re: Citrix Data Breach Lit.*,
  Case No. No:19-cv-61350 (S.D. Fla.)
- *In re: EyeMed Vision Care, LLC Data Security Breach Lit.*,

Case No. 1:21-cv-00036-DRC (S.D. Oh.)

- *In re: Intel Corp. CPU Marketing, Sales Practices*,
  MDL No. 2828
- *In re: Apple Inc. Device Performance Lit.*,
  MDL No. 2827
- *In re: Wells Fargo Collateral Protection Insurance Lit.,*
  MDL No. 2797
- *In re: YAHOO! Inc. Customer Data Security Breach Lit.*,
  MDL No. 2752
- *In re: National Football League Players' Concussion Injury Lit.,*
  MDL No. 2323
- *In re: World War II Era Japanese Forced Labor,*
  MDL No. 1347
- *In re: Apple and AT&T iPad Unlimited Data Plan Lit.*,
  Case No. 10-cv-02553(N.D. Cal.)
- *In re: Hydroxycut Marketing and Sales Practice Lit.*,
  MDL No. 2087
- *In re: Sony Gaming Networks & Customer Data Security Breach Lit.*,
  MDL No. 2258
- *In re: Incretin Mimetics Products Liability Lit.*,
  MDL No. 2452
- *Ellis v. R.J. Reynolds Tobacco Co.*,
  San Diego Super. Ct., Case No. 706458
- *Scott v. American Tobacco,*
  No. 01-2498 (La. 9/25/01), 795 So.2d 1176, and No. 02-2449 (La. 11/15/02), 830 So.2d 294, and No. 2004-2095 (La. App. 4th Cir. 2/7/07)
- *In re: American Honda Motor Co., Inc. Dealerships Relations Lit.,*
  MDL No. 1069

- *Rose v. Bank of America*,
  Case No. 11-cv-02390
- *Steinfeld v. Discover Financial Services, et al.*,
  Case No. 12-cv-01118
- *Villa, et al. v. City of Chula Vista*,
  San Diego Super. Ct., Case No. 37-2011-00093296
- *Gehrich, et al. v. Chase Bank USA, N.A., et al.*,
  Case No. 12-cv-05510
- *Blue Shield of California Affordable Care Act Cases*,
  JCCP 4800
- *Galvez v. Waste Management*,
  JCCP 4534
- *Shames v. City of San Diego, et al.*,
  San Diego Super. Ct., Case No. GIC 831539
- *Cardiff v. General Motors Corporation*, coordinated with *Valve Automation and Controls, Inc., et al v. General Motors Corp., et al.*,
  San Diego Super. Ct., Case No. EC 016530

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TRAVIS JAMES, STEFANIE SHEEHAN, KIMBERLY GAMBOA, and KOREY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVACO, INC., and DAVACO LP,<br><br>Defendants. | Case No. 3:21-cv-02318- M<br><br>Judge: Hon. Barbara M. G. Lynn |

**DECLARATION OF M. ANDERSON BERRY**

**IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, M. Anderson Berry, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of California, and appear pro hac vice in this matter. I am a senior associate in the law firm of Clayeo C. Arnold, A Professional Law Corp. (" The Arnold Law Firm") and am the director of the Complex Litigation department. I am one of the proposed Class Counsel. I have personal knowledge of the matters stated herein and, if called upon, I could and would testify competently to those matters. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

**PROSECUTION OF THIS ACTION**

2. The Settlement Agreement is the result of competent representation and vigorous arms' length negotiations with Defendants (by and through their counsel of record), the assistance of a neutral mediator (Mr. Christopher Nolland, Esq.) to reach the best possible outcome for the Settlement Class. Based on my experience, and after taking into account the disputed factual and legal issues involved, I believe the proposed Settlement is fair, reasonable, and adequate for the Settlement Class and free of collusion.

3. The Arnold Law Firm has vigorously pursued this litigation on behalf of Plaintiffs Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams (collectively "Plaintiffs") and the putative class since its inception and dedicated time and resources to this litigation—and will continue to do so through final approval. The prosecution of this action was done solely on a contingent fee basis, and The Arnold Law Firm has been completely at risk that it would not receive any compensation for prosecuting claims against the Defendants.

4. I have extensively investigated Plaintiffs' claims and facts surrounding the Security Incident; reviewed and analyzed public information and information provided by Defendants; and thoroughly examined the legal principles applicable to the claims asserted. We worked with co-counsel to develop sufficient information and documentation to attend mediation. We participated fully in negotiations, in editing and approving settlement documents, including the notice, claim form, and settlement agreement and drafting the motion for preliminary approval.

5. I am unaware of any conflicts of interest between Plaintiffs and the putative Class Members. I have not previously represented Defendants in any matter and am not related to the representative Plaintiffs. I do not represent opposing factions within the Class in that all claims are predicated on the same facts and theories of liability, and benefit Class Members equally. On these grounds, I believe I am appropriate and qualified Class Counsel, and I will vigorously and fairly represent the interests of the putative class.

6. I, and my co-counsel, have vigorously litigated and successfully negotiated settlement of this action in the best interests of the Settlement Class. I have been confirmed as class counsel in multiple class actions. I am competent to serve as class counsel in this action.

7. I am not aware of any other lawsuits commenced by any other persons against Defendants regarding these claims.

8. Based on my experience, I believe this settlement is a positive resolution for the Settlement Class and falls comfortably within the range of reasonableness. It is also my considered opinion the Claim Form, Postcard Notice, and Long-Form Notice accurately and plainly explain the settlement benefits and how to obtain them, offer clear opportunity for member of the Settlement

Class to exclude themselves if they so choose, and provides a mechanism for the Settlement Class to share their opinions about the Settlement with the Court.

9. Data breach cases have limited precedential class certification decisions, and some of Plaintiffs' class-wide damage models remain untested. The path to recovery for all Settlement Class Members is not otherwise assured, as experts will disagree, and Daubert motions generally are filed to address those. This settlement provides substantive benefits the Settlement Class Members can receive in the shorter term. Ongoing litigation, without the same certainty of recovery is the alternative. And based on the tangible benefits this Settlement provides the Settlement Class Members, and weighing those against the risks, time, and expense of litigating this case, based on my experience, I fully support the Settlement as proposed and respectfully request this Court grant Plaintiffs' motion.

## QUALIFICATIONS OF CLASS COUNSEL

10. Plaintiffs' counsel are well experienced in plaintiff class actions and data breach litigation, and believe this settlement represents a fair resolution of this matter, and is in the best interests of the Plaintiffs and the Settlement Class. Attached as **Exhibit A** is a true and correct copy of my firm's résumé, which includes my curriculum vitae.

11. I graduated from the University of California, Berkeley, as an undergraduate and for law school.

12. I have an extensive background in privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States. I am presently litigating more than fifty class action cases across the country involving data breaches, including the following matters: *In Re: Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D.Ill.) (Co-Lead Counsel); *Irma Carrera Aguallo, et al. v. Kemper Corp., et al.*, No. 1:21-cv-01883-MMP (N.D. Ill. filed Apr. 19, 2021) (Executive Comm.) (settled); *Rossi v. Claire's Stores*, No. 1:20-cv-05090 (N.D. Ill. filed Aug. 28, 2020) (Co-Lead Counsel in this data breach class action); *In re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523 (W.D.TX filed June 2, 2021) (I am Co-Lead Counsel in this data breach class action) (settled); *Riggs v. Kroto, Inc.*, No. 1:20-cv-5822 (N.D. Ill. filed Sept. 30, 2020) (I am Co-Lead Counsel in this data breach class

action) (settled); *Desue v. 20/20 Eye Care Network, Inc.* et al., No. 0:21-cv-61275 (S.D. Fla.) (Executive Comm.); *In re Hanna Andersson & Salesforce.com Data Breach Litig*., No. 3:20-cv-00812-EMC (N.D. Cal. filed Feb. 3, 2020) (Class Counsel) (settled); *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534-RGK-E (C.D. Cal. filed Oct. 16, 2020) (Class Counsel) (settled); *Llamas v. Truefire, LLC*, No. 8:20-cv-00857-WFJ-CPT (M.D. Fla. Filed May 14, 2020) (Class Counsel) (settled); *Warshawsky v. cbdMD, Inc.*, No. 3:20-cv-00562 (W.D.N.C. filed Oct. 9, 2020) (Class Counsel) (settled); *Pfeiffer v. RadNet, Inc.*, No. 2:20-cv-09553-RGK-SK (C.D. Cal. filed Oct. 19, 2020) (Class Counsel) (settled); *Pygin v. Bombas, LLC*, No. 4:20-cv-04412 (N.D. Cal. filed July 1, 2020) (Class Counsel) (settled); and *A.A. ex rel. Altes v. AFTRA Ret. Fund*, No. 1:20-cv-11119 (S.D.N.Y. filed Dec. 31, 2020) (The Arnold Law Firm is Co-Lead Counsel in this data breach class action).

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of August 2022 at Sacramento, California.



M. Anderson Berry
*aberry@justice4you.com*
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Tel: 916.239.4778; Fax: 916.924.1829

*Counsel for Plaintiffs and the Putative Class*

# EXHIBIT A

**Arnold Law Firm Biography**

**Sacramento Office**
865 Howe Avenue
Sacramento, CA 95825
916-777-7777

**Long Beach Office**
111 W. Ocean Blvd.
Fourth Floor
Long Beach, CA 90802
562-216-8270

**justice4you.com**

ARNOLD LAW FIRM

Founded in 1975 by Clayeo C. Arnold, the Arnold Law Firm is a litigation-oriented practice in Sacramento, California. In keeping with its founding principles, our firm consciously works for the interests of individual people and small businesses — not for large corporations or insurance companies.

The Arnold Law Firm prosecutes class action, mass tort, *qui tam*, product defect, employment, and personal injury cases. We pride ourselves on being a practice of trial lawyers, typically trying a minimum of ten cases per year to verdict. In addition to our practice throughout the state of California in both state and federal courts, we pursue class action, *qui tam* and multi-district litigation claims on a nationwide basis.

Our team of nine attorneys collectively encompass a broad, diverse professional background, including plaintiff contingency work, public entity representation, criminal defense, and civil defense. We have current and past board members of Capital City Trial Lawyers Association, as well as members of numerous prestigious professional organizations, including the American Board of Trial Advocates, American Association for Justice, Association of Trial Lawyers of America, and Consumer Attorneys of California.

Our firm's operating structure is based on teams directed towards specific practice areas. These teams regularly and intentionally collaborate and exchange information between their practice areas to improve the quality of representation for all of our clients.

**Arnold Law Firm Biography**

(continued)

Over four decades the Arnold Law Firm has developed a respected and extensive network of co-counsel and experienced contract counsel to rapidly expand our capabilities as necessary on an *ad hoc* basis (e.g., document review). We employ a robust staff of highly qualified, experienced assistants and paralegals to ensure that attorney time is spent in the most efficient manner possible.

The Arnold Law Firm employs technology to increase productivity, resulting in lower hourly billing, even though adverse parties eventually pay those bills. The firm increases efficiencies by using template software, client management software, and secure internet-based client management for mass tort or multi-plaintiff litigation. We also invest in appropriate billing and tracking software for contemporaneous hourly record keeping.

The Arnold Law Firm places substantial value on representing clients in a manner that is both effective and courteous. Integrity with clients, the courts, and adverse counsel are all considered to be as indispensable as successful results.

Our highly accomplished counsel has a long history of successfully handling class actions across a range of industries, including data breach cases.

## M. Anderson Berry Biography



The Arnold Law Firm has a proven track record of success and the ability to work efficiently and cooperatively with others. In addition, our firm has the availability and resources necessary to litigate complex class actions.

**M. Anderson Berry**

M. Anderson Berry heads the data breach complex litigation and *qui tam* practices for the Arnold Law Firm. He brings substantial experience in complex litigation matters with a history of litigating in an efficient and practical manner, including Lead Class Counsel, Co-Lead Class Counsel, and Plaintiff's Executive Committee.

Mr. Berry has an extensive background in privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States, and the class action litigations filed in federal courts across the nation, set out below.

Mr. Berry was first selected as the Northern California Super Lawyers Rising Star in 2015 in the field of complex civil litigation.

Before joining the Arnold Law Firm in 2017, Mr. Berry worked as an Assistant United States Attorney for the Eastern District of California. As part of the Affirmative Civil Enforcement unit, Mr. Berry handled a wide variety of complex cases, recovering millions of dollars for the United States.

Before working for the Department of Justice, Mr. Berry practiced at one of the world's largest law firms, Jones Day, where he represented clients in international arbitration and complex commercial litigation, including defending class action allegations.

**M. Anderson Berry Biography**

(continued)

Mr. Berry attended the University of California, Berkeley, where he majored in English and graduated with highest honors. Anderson was inducted into the Phi Beta Kappa Honor Society and served as President of the English Undergraduate Associate.

After working as a private investigator for both criminal and civil investigations in the San Francisco Bay Area, Anderson graduated from U.C. Berkeley School of Law, where he was a Senior Editor for both the *Berkeley Journal of Criminal Law* and *Berkeley Journal of International Law*.

He was admitted to the California Bar in 2009 and is admitted to practice in the Northern, Eastern and Central Districts of California. Mr. Berry is also admitted to practice in the Eastern District of Michigan and the Northern District of Illinois.

Mr. Berry was raised in Moraga, California.

**Select Data Breach Cases**

*In Re: Arthur J. Gallagher Data Breach Litigation,* 1:21-cv-04056 (N.D.Ill.)(Co-Lead Counsel);

*In Re: CaptureRx Data Breach Litigation*, 5:21-cv-00523 (W.D.TX.)(Co-Lead Counsel);

*Rossi v. Claire's Stores, 1*:20-cv-05090 (N.D. Il.) (Co-Lead Counsel);

*Desue v. 20/20 Eye Care Network, Inc. et al.,* 0:21-cv-61275 (S.D. Fla.)(Executive Comm.);

*In re: Mednax Services, Inc. Customer Data Security Breach Litigation,* 21-MD-02994 (S.D. Fl.)(Executive Comm.);

*Hashemi et al. v. Bosley, Inc.* 2:21-cv-00946 (CD. Cal.) (Class Counsel)(settled);

*Heath et al. v. Insurance Technologies Corp et al.,* 3:21-cv-01444 (N.D. Tex.)(Class Counsel)(settled);

**M. Anderson Berry Biography**

(continued)

*Gilbert v. AFTRA Retirement Fund et al*, 1:20-cv-10834-ALC (S.D.N.Y.)(Co-Lead Counsel);

*Carrera Aguallo et al. v. Kemper Corporation et al.*, 1:21-cv-01883 (N.D. Ill.) (Class Counsel)(settled);

*Ahn et al. v. Herff Jones, LLC,* 1:21-cv-01381 (S.D. Ind.) (settled);

*Bitmouni v. Paysafe Limited*, 3:21-cv-00641-JCS (N.D. Cal.);

*Edke v. Belden, Inc.*, 2021CH00047 (E.D.Mo.);

*Johnson v. O.K. Foods, Inc.*, 5:21-cv-00561 (W.D. Ar.);

*Marcaurel et al. v. USA Waste-Management Resources, LLC et al., 4:21-cv-02027 (S.D. Tex.).*

*Gaston v. FabFitFun, Inc.*, 2:20-cv-09534 (C.D. Cal.) (Class Counsel)(settled);

*Hamid et al. v. Canon, U.S.A., Inc. et al.* 1:20-cv-06380-AMD-SJB (E.D.N.Y.);

*In Re: Ambry Genetics Data Breach Litigation*, 8:20-cv-00791 (C.D. Cal.);

*In Re: Hanna Andersson and Salesforce.com Data Breach Litigation*, 3:20-cv-00812-EMC (N.D. Cal.)(Co-Lead Class Counsel) (settled);

*In Re: Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.)(settled);

*Pfeiffer et al. v. RadNet, Inc.*, 2:20-cv-09553-RGK-SK (C.D. Cal.)(Class Counsel)(settled);

*Thomsen v. Morley Companies, Inc.*, 1:22-cv-10271-TLL (E.D. Mi.) (settled);

*IN RE: VOLKSWAGEN GROUP OF AMERICA, INC. DATA INCIDENT LITIGATION*, 4:21-cv-09203-DMR (N.D. Ca.) (Class Counsel);

*In re Lakeview Loan Servicing Data Breach Litigation*, 1:22-cv-20955-DPG (S.D. Fl.);

*Myron Schellhorn et al v. Timios, Inc.*, 2:21-cv-08661-VAP -JC (C.D. Ca.).

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TRAVIS JAMES, STEFANIE SHEEHAN, KIMBERLY GAMBOA, and KOREY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVACO, INC., and DAVACO LP,<br><br>Defendants. | Case No. 3:21-cv-02318- M<br><br>Judge: Hon. Barbara M. G. Lynn |

**DECLARATION OF JOSHUA B. SWIGART**

**IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Joshua B. Swigart, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of California, and appear pro hac vice in this matter. I am the principal at SWIGART LAW GROUP, APC ("Swigart APC") and I am one of the proposed Class Counsel. I have personal knowledge of the matters stated herein and, if called upon, I could and would testify competently to those matters. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

**PROSECUTION OF THIS ACTION**

2. The Settlement Agreement is the result of competent representation and vigorous arms' length negotiations with Defendants (by and through their counsel of record), the assistance of a neutral mediator (Mr. Christopher Nolland, Esq.) to reach the best possible outcome for the Settlement Class. Based on my experience, and after taking into account the disputed factual and legal issues involved, I believe the proposed Settlement is fair, reasonable, and adequate for the Settlement Class and free of collusion.

3. Swigart APC has vigorously pursued this litigation on behalf of Plaintiffs Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams (collectively "Plaintiffs") and the putative class since its inception and dedicated time and resources to this litigation—and will continue to do so through final approval. The prosecution of this action was done solely on a contingent fee basis, and Swigart APC has been completely at risk that it would not receive any compensation for prosecuting claims against the Defendants.

4. I have extensively investigated Plaintiffs' claims and facts surrounding the Security Incident; reviewed and analyzed public information and information provided by Defendants; and thoroughly examined the legal principles applicable to the claims asserted. We worked with co-counsel to develop sufficient information and documentation to attend mediation. We participated fully in negotiations, in editing and approving settlement documents, including the notice, claim form, and settlement agreement and drafting the motion for preliminary approval.

5. I am unaware of any conflicts of interest between Plaintiffs and the putative Class Members. I have not previously represented Defendants in any matter and am not related to the representative Plaintiffs. I do not represent opposing factions within the Class in that all claims are predicated on the same facts and theories of liability, and benefit Class Members equally. On these grounds, I believe I am appropriate and qualified Class Counsel, and I will vigorously and fairly represent the interests of the putative class.

6. I, and my co-counsel, have vigorously litigated and successfully negotiated settlement of this action in the best interests of the Settlement Class. I have been confirmed as class counsel in multiple class actions. I am competent to serve as class counsel in this action.

7. I am not aware of any other lawsuits commenced by any other persons against Defendants regarding these claims.

8. Based on my experience, I believe this settlement is a positive resolution for the Settlement Class and falls comfortably within the range of reasonableness. It is also my considered opinion the Claim Form, Postcard Notice, and Long-Form Notice accurately and plainly explain the settlement benefits and how to obtain them, offer clear opportunity for member of the Settlement

Class to exclude themselves if they so choose, and provides a mechanism for the Settlement Class to share their opinions about the Settlement with the Court.

9. Data breach cases have limited precedential class certification decisions, and some of Plaintiffs' class-wide damage models remain untested. The path to recovery for all Settlement Class Members is not otherwise assured, as experts will disagree, and Daubert motions generally are filed to address those. This settlement provides substantive benefits the Settlement Class Members can receive in the shorter term. Ongoing litigation, without the same certainty of recovery is the alternative. And based on the tangible benefits this Settlement provides the Settlement Class Members, and weighing those against the risks, time, and expense of litigating this case, based on my experience, I fully support the Settlement as proposed and respectfully request this Court grant Plaintiffs' motion.

**QUALIFICATIONS OF CLASS COUNSEL**

10. Plaintiffs' counsel are well experienced in plaintiff class actions and data breach litigation, and believe this settlement represents a fair resolution of this matter, and is in the best interests of the Plaintiffs and the Settlement Class.

11. I am the principal attorney at the Swigart Law Group, APC.

12. I was admitted to the State Bar of California in 2003 and have been a member in good standing ever since that time.

13. I am admitted in every federal district in California and have handled federal litigation in the federal districts of California, including being admitted to the 9th Circuit Court of Appeals.

14. I am also licensed to practice law and in good standing in the States of, Washington, Washington D.C., Michigan, and Wisconsin.

15. Relative to privacy related and/or data breach litigation, I been involved in the following relevant cases:

a. *Madrid, et al. v. Golden Valley health Centers, et al.;* Superior Court of California; County of Merced; 20-cv-01484. (Certified settlement class given final approval related to a medical data breach);

b. *J.P., et al. v. Salinas Valley Memorial Healthcare System*; Superior Court of California; County of Monterey; 20-cv-01923 (Certified settlement class given preliminary approval, pending final approval, relating to a medical data breach);

c. *Santana, et al. v. Rady Children's Hospital*; Superior Court of California, County of San Diego; 37-2014-00022411-CU-MT-CTL. (Certified settlement class given final approval, relating to a medical data breach);

d. *Knell v. FIA Card Services, N.A.*, et al., 12-CV-426 AJB(WVG)(S.D. Cal. 2014) (Co-lead counsel on a California class action involving privacy rights under Cal. Penal Code § 632 et seq. Class relief provided for a common fund in the amount of $2,750,000. Counsel obtained final approval on August 15, 2014);

e. *Hoffman v. Bank of America, N.A.*, 12-CV-539 JAH(DHB) (S.D. Cal. 2014) (Co-lead counsel on a California class action involving privacy rights under Cal. Penal Code § 632 et seq. Class relief provided for a common fund in the amount of $2,600,000. Finally approved on November 6, 2014);

f. *Zaw v. Nelnet Business Solutions, Inc., et al.*, C 13-05788 RS (N.D. Cal. 2014) (Co-lead counsel on a California class action involving privacy rights under Cal. Penal Code § 632 et seq. Class relief provided for a common fund in the amount of $1,188,110. Final approval granted on December 1, 2014);

g. *CashCall, Inc. v. Superior Court*, 159 Cal. App. 273 (2008) (Allowing the original plaintiff who lacked standing in a class action to conduct precertification discovery of the identities of potential plaintiffs with standing);

h. *Kight v. CashCall, Inc.,* 200 Cal. App. 4th 1377 (2011) (Co-lead counsel on a class action involving privacy rights under Cal. Penal Code §632 et seq. Appeals court reversing the trial courts granting of Defendant's motion for summary judgment after case was certified);

i. *Engelen v. Erin Capital Management*, LLC, et al., No. 12-55039 (9th Cir. 2013, not for publication, D.C. No.: 3:10-cv-01125-BEN-RBB) (Reversing the lower

court's granting of summary judgment to the defendant debt collector on the basis of the bona fide error defense and remanding for further proceedings);

j. *Sherman v. Yahoo!, Inc.*, 2014 U.S. Dist. LEXIS 13286; 13-CV-0041-GPCWVG (S.D. Cal.) (TCPA class action where Defendant's motion for summary judgment was denied holding that a single call or text message with the use of an ATDS may be actionable under the TCPA);

k. *Olney v. Progressive Casualty Insurance Company*, 13-CV-2058-GPCNLS, 2014 U.S. Dist. LEXIS 9146 (S.D. Cal.) (Defendant's motion to dismiss or in the alternative to strike the class allegations was denied finding that debt collection calls were not exempt from coverage under the TCPA);

l. *Iniguez v. The CBE Group, Inc.,* 13-CV-00843-JAM-AC, 2013 U.S. Dist. LEXIS 127066 (E.D. Cal.) (The court denying Defendant's motion to dismiss and to strike class allegations holding that the TCPA applies to any call made to a cellular telephone with an ATDS);

m. *Catala v. Resurgent Capital Servs., L.P.,* 08-CV-2401 NLS, 2010 U.S. Dist. LEXIS 63501 (S.D. Cal.) (Co-lead counsel on a class settlement involving the Fair Debt Collection Practices Act);

n. *Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104 (C.D. Cal. 2005) (Summary judgment was granted sua sponte in favor of a debtor where debt collector violated the Fair Debt Collection Practices Act, when its employees failed to disclose the debt collector's identity and the nature of its business in the messages left on the debtor's answering machine). This case has now been followed in at least four different districts throughout the country;

o. *Edstrom v. All Servs. & Processing*, 2005 U.S. Dist. LEXIS 2773 (N.D. Cal. 2005) (Numerous omissions from a letter sent by a debt collector to members of a homeowners association, and a statement requiring any dispute to be put in writing, violated 15 U.S.C. §1692g(a) of the FDCPA and Cal. Civ. Code

§ 1788.17. The FDCPA required strict compliance; actual confusion on debtors' part was not required);

p. *Forsberg v. Fid. Nat'l Credit Servs.,* 2004 U.S. Dist. LEXIS 7622 (S.D. Cal. 2004) (Plaintiff alleged sufficient facts to support his claim that a collection company, in its initial communication, did not comply with the statutory requirements for notice of validation of debts under the FDCPA);

q. *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063 (N.D. Cal. 2005) (Court struck Defendant's counter claim of the underlying debt in a fair debt action based on lack of subject matter jurisdiction);

r. *Geoffroy, et al. v. Washington Mutual Bank*, 484 F. Supp. 2d 1115 (S.D. Cal. 2007) (Court striking down Defendant's arbitration agreement as both procedurally and substantively unconscionable);

s. *Yang v. DTS Financial Group*, 07-CV-1731 JLS (WMc) (Holding that for profit debt settlement companies are covered under the FDCPA and can be construed as "debt collectors" under 15 U.S.C. § 1692a(6));

t. *Mason v. Creditanswers*, 2008 U.S. Dist. LEXIS 68575 (Holding that a forum selection clause causing a California consumer to litigate its claims seems contrary to the polices advanced by certain consumer protection statutes);

u. *Myers v. LHR, Inc.,* 543 F.Supp.2d 1215 (2008) (Recognizing actual and statutory damages in the amount of $92,000 in a default judgment based on violations of the State and Federal collection statutes);

v. *Yates v. Allied Intl Credit Corp.,* 578 F. Supp. 2d 1251 (2008) (Holding a debtor's claim based on the FDCPA stemming from the filing of a false police report was not subject to the litigation privilege under Cal. Civ. Code § 47(b));

w. *Owings v. Hunt & Henriques, et al.*, 2010 U.S. Dist. LEXIS 91819 (S.D. Cal.) (Recognizing that the Service Members Civil Relief Act applies to California National Guard Members and that the debt collection attorney's false declaration the court violates the FDCPA);

x. *Heathman v. Portfolio Recovery Assocs.,* LLC, 2013 U.S. Dist. LEXIS 98742 (S.D. Cal. 2013) (Holding that failing to properly list and disclose the identity of the original creditor in a state collection pleading is a violation of the Fair Debt Collection Practices Act under 15 U.S.C. § 1692e);

y. *Stemple v. QC Holdings, Inc.,* 12-cv-01997-BAS-WVG (S.D. Cal. Nov. 7, 2016) (TCPA action finally approved for $1,500,000);

z. *Abdeljalil v. GE Capital Retail Bank*, 12-cv-02078−JAH−MDD (S.D. al.) (Class Certification granted and finally approved for $7,000,000);

aa. *Calderon v. The Wolf Firm*, SACV16-1266 JLS (JESx), 2018 U.S. Dist. LEXIS 42054 (C.D. Cal. March 13, 2018) (FDCPA class action preliminarily approved on March 13, 2018);

bb. *Caldera v. Am. Med. Collection Agency*, 2017 U.S. Dist. LEXIS 99239 (C.D. Cal. June 27, 2017) (Order certifying nationwide TCPA class action);

cc. *Burkhammer v. Allied Interstate, LLC*, 2017 Cal. Super. LEXIS 109 (Sup. Ct. San Luis Obispo) (RFDCPA class action finally approved on October 30, 2017);

dd. *Moreno-Peralta v. TRS Recovery Services, Inc.,* 2017 Cal. Super. LEXIS 548 (Sup. Ct. San Luis Obispo Oct. 10, 2017) (RFDCPA class action preliminarily approved);

ee. *Maxin v. RHG & Company, Inc.,* 16-cv-2625 JLS (BLM) (S.D. Cal.) (Supplement misrepresentation class action finally approved on February 16, 2018);

ff. *McPolin v. Credit Service of Logan*, 2017 U.S. Dist. LEXIS 189236, 16-cv-116 BSJ (Utah District Court) (FDCPA class action with consumers to each receive $1,428.57, debt relief, and tradeline deletion finally approved on November 9, 2017);

gg. *Giffin v. Universal Protein Supplements Corp.*, 2018 Cal. Super. LEXIS 3, BC613414 (Sup. Ct. Los Angeles) (Supplement misrepresentation class action finally approved on February 7, 2018);

hh. *Anderson v. Phoenix Financial Services, LLC, et al.,* BCV-16-101385, 2018 Cal. Super. LEXIS 1030 (Kern Sup. Court) (FDCPA class action finally approval on July 23, 2018);

ii. *Moreno-Peralta v. TRS Recovery Services, Inc.,* 15CV-0481 (San Luis Obispo Superior Court (RFDCPA class action finally approved on July 19, 2018);

jj. *Reid v. I.C. System Incorporated*, CV-12-2661 PHX ROS, 2018 U.S. Dist. LEXIS 125663 (D. Ariz. July 26, 2018) ($3,500,000.00 TCPA Class Settlement Finally Approved on July 26, 2018);

kk. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) (Landmark case in the 9th Cir. where the Court held to expand the definition of an automatic telephone dialing system by holding that an ATDS is any "equipment which has the capacity to 1) store numbers to be called or 2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers automatically).

ll. *McCurley v. Royal Seas Cruises, Inc.,* 17-cv-00986-BAS-AGS (S.D. Cal. 2019) (Granting Plaintiff's class certification (in part) pursuant to F.R.C.P. 23, under the Telephone Consumer Protection Act).

mm. *Greenley v. Mayflower Transit, LLC*; 21-cv-339-WQH-MDD (S.D. Cal. 2022) (Certified settlement class given final approval related to privacy related claims under Cal. Penal Code § 630).

16. I am unaware of any conflicts of interest between Plaintiffs and the putative class members and between proposed class counsel and the other parties to this litigation.

17. I, and my co-counsel, have vigorously litigated this action in the best interests of the class. I have been confirmed as class counsel in multiple class actions. I am competent to serve as class counsel in this action. I have been in practice in California for approximately 19 years.

18. On these grounds, I believe that I am appropriate and qualified Class Counsel pursuant to Fed. Civ. P. 23(a)(4) and (g), and that I will adequately and fairly represent the interests of the putative class.

19. I respectfully request this Court grant Plaintiff's Motion for Preliminary Approval of this Class Action Settlement.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of August 2022 at San Diego, California.

/s/ Joshua B. Swigart

Joshua B. Swigart
*josh@swigartlawgroup.com*
**SWIGART LAW GROUP, APC**
2221 Camino Del Rio S., Suite 308
San Diego, CA 92108
Tel: 866.219.3343; Fax: 866.219.8344

*Counsel for Plaintiffs and the Putative Class*

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TRAVIS JAMES, STEFANIE SHEEHAN, KIMBERLY GAMBOA, and KOREY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVACO, INC., and DAVACO LP,<br><br>Defendants. | Case No. 3:21-cv-02318- M<br><br>Judge: Hon. Barbara M. G. Lynn |

**DECLARATION OF RACHELE R. BYRD**

**IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Rachele R. Byrd, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of California, and appear pro hac vice in this matter. I am a partner in the law firm of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and I am one of the proposed Class Counsel. I have personal knowledge of the matters stated herein and, if called upon, I could and would testify competently to those matters. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

**PROSECUTION OF THIS ACTION**

2. The Settlement Agreement is the result of competent representation and vigorous arms' length negotiations with Defendants (by and through their counsel of record), and the assistance of a neutral mediator (Mr. Christopher Nolland, Esq.) to reach the best possible outcome for the Settlement Class. Based on my experience, and after taking into account the disputed factual and legal issues involved, I believe the proposed Settlement is fair, reasonable, and adequate for the Settlement Class and free of collusion.

3. Wolf Haldenstein has vigorously pursued this litigation on behalf of Plaintiffs Travis James, Stefanie Sheehan, Kimberly Gamboa, and Korey Williams (collectively "Plaintiffs") and the putative class since its inception and dedicated time and resources to this litigation—and will continue to do so through final approval. The prosecution of this action was done solely on a contingent fee basis, and Wolf Haldenstein has been completely at risk that it would not receive any compensation for prosecuting claims against the Defendants.

4. I have extensively investigated Plaintiffs' claims and facts surrounding the Security Incident; reviewed and analyzed public information and information provided by Defendants; and thoroughly examined the legal principles applicable to the claims asserted. We worked with co-counsel to develop sufficient information and documentation to attend mediation. We participated fully in negotiations, in editing and approving settlement documents, including the notice, claim form, and settlement agreement and drafting the motion for preliminary approval.

5. I am unaware of any conflicts of interest between Plaintiffs and the putative Class Members. I have not previously represented Defendants in any matter and am not related to the representative Plaintiffs. I do not represent opposing factions within the Class in that all claims are predicated on the same facts and theories of liability and benefit Class Members equally. On these grounds, I believe I am appropriate and qualified Class Counsel, and I will vigorously and fairly represent the interests of the putative class.

6. I, and my co-counsel, have vigorously litigated and successfully negotiated settlement of this action in the best interests of the Settlement Class. I have been confirmed as class counsel in multiple class actions. I am competent to serve as class counsel in this action.

7. I am not aware of any other lawsuits commenced by any other persons against Defendants regarding these claims.

8. Based on my experience, I believe this settlement is a positive resolution for the Settlement Class and falls comfortably within the range of reasonableness. It is also my considered opinion the Claim Form, Postcard Notice, and Long-Form Notice accurately and plainly explain the settlement benefits and how to obtain them, offer clear opportunity for members of the Settlement

Class to exclude themselves if they so choose, and provides a mechanism for the Settlement Class to share their opinions about the settlement with the Court.

9. Data breach cases have limited precedential class certification decisions, and some of Plaintiffs' class-wide damage models remain untested. The path to recovery for all Settlement Class Members is not otherwise assured, as experts will disagree, and Daubert motions generally are filed to address those. This settlement provides substantive benefits the Settlement Class Members can receive in the shorter term. Ongoing litigation, without the same certainty of recovery is the alternative. And based on the tangible benefits this Settlement provides the Settlement Class Members, and weighing those against the risks, time, and expense of litigating this case, based on my experience, I fully support the settlement as proposed and respectfully request this Court grant Plaintiffs' motion.

**QUALIFICATIONS OF CLASS COUNSEL**

10. Plaintiffs' counsel are well experienced in class actions and data breach litigation and believe this settlement represents a fair resolution of this matter and that it is in the best interests of the Plaintiffs and the Settlement Class. Attached as **Exhibit A** is a true and correct copy of my firm's résumé, which includes my curriculum vitae.

11. Relative to data breach litigation, I currently serve on the Executive Committee in *In re Lakeview Loan Servicing Data Breach Litigation*, Case No. 1:22-cv-20955-DPG (S.D. Fla.), and as Co-Lead Counsel in *In re: Scripps Health Data Incident Litigation*, No. 37-2021-00024103-CU-BT-CTL (San Diego Super. Ct.) and *Hinds v. Community Medical Centers, Inc.*, No. 2:22-cv-01207-JAM-AC (E.D. Cal.). I also served as Settlement Class Counsel in *Carrera Aguallo, et al. v. Kemper Corp., et al.*, No. 1:21-cv-01883 (N.D. Ill.), where a settlement valued at over $17 million was finally approved on March 18, 2022.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 26th day of August 2022 at Poway, California.

Rachele R. Byrd

Rachele R. Byrd

byrd@whafh.com
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Tele: 619.239.4599; Fax: 619.234.4599

*Counsel for Plaintiffs and the Putative Class*

# EXHIBIT A

Wolf Haldenstein

Legal Excellence Since 1888

PROVIDING EXEMPLARY LEGAL SERVICES SINCE 1888

FIRM RESUME

Founded in 1888, Wolf Haldenstein Adler Freeman & Herz LLP is a full service law firm specializing in complex litigation in federal and state courts nationwide. The firm's practice includes litigation, both hourly and contingent, in securities, antitrust, wage & hour, consumer fraud, false marketing, ERISA, and general and commercial matters, whistleblower, false claim, trust & estate, corporate investigation, and white collar matters, and FINRA arbitration. The Firm has a particular specialty in complex class action and other representative litigation – including investor, shareholder, antitrust, ERISA, consumer, employee, and biotechnology matters – under both federal and state law.

Wolf Haldenstein's total practice approach distinguishes it from other firms. Our longstanding tradition of a close attorney/client relationship ensures that each one of our clients receives prompt, individual attention and does not become lost in an institutional bureaucracy. Our team approach is at the very heart of Wolf Haldenstein's practice. All of our lawyers are readily available to all of our clients and to each other. The result of this approach is that we provide our clients with an efficient legal team having the broad perspective, expertise and experience required for any matter at hand. We are thus able to provide our clients with cost effective and thorough counsel focused on our clients' overall goals.

270 MADISON AVENUE
NEW YORK, NY 10016
TELEPHONE: 212-545-4600
TELECOPIER: 212-686-0114
WWW.WHAFH.COM

SYMPHONY TOWERS
750 B STREET, SUITE 1820
SAN DIEGO, CA 92101
TELEPHONE: 619-239-4599
TELECOPIER: 619-234-4599

111 WEST JACKSON
SUITE 1700
CHICAGO, IL 60604
TELEPHONE: 312-984-0000
TELECOPIER: 312-214-3110

Wolf Haldenstein
Legal Excellence Since 1888

Wolf Haldenstein has been recognized by state and federal courts throughout the country as being highly experienced in complex litigation, particularly with respect to securities, consumer, ERISA, FLSA and state overtime and expense deductions, and antitrust class actions and shareholder rights litigation.

Among its colleagues in the plaintiffs' bar, as well as among its adversaries in the defense bar, Wolf Haldenstein is known for the high ability of its attorneys, and the exceptionally high quality of its written and oral advocacy.

The nature of the Firm's activities in both individual and representative litigation is extremely broad. In addition to a large case load of securities fraud and other investor class actions, Wolf Haldenstein has represented classes of corn and rice farmers in connection with the devaluation of their crops; canned tuna consumers for tuna companies' violations of antitrust laws; merchants compelled to accept certain types of debit cards; insurance policyholders for insurance companies' deceptive sales practices; victims of unlawful strip searches under the civil rights laws; and various cases involving violations of Internet users' on-line privacy rights.

The Firm's experience in class action securities litigation, in particular public shareholder rights under state law and securities fraud claims arising under the federal securities laws and regulations is particularly extensive. The Firm was one of the lead or other primary counsel in securities class action cases that have recouped billions of dollars on behalf of investor classes, in stockholder rights class actions that have resulted in billions of dollars in increased merger consideration to shareholder classes, and in derivative litigation that has recovered billions of dollars for corporations.

Its pioneering efforts in difficult or unusual areas of securities or investor protection laws include: groundbreaking claims that have been successfully brought under the Investment Company Act of 1940 regarding fiduciary responsibilities of investment companies and their advisors toward their shareholders; claims under ERISA involving fiduciary duties of ERISA trustees who are also insiders in possession of adverse information regarding their fund's primary stockholdings; the fiduciary duties of the directors of Delaware corporations in connection with change of control transactions; the early application of the fraud-on-the-market theory to claims against public accounting firms in connection with their audits of publicly traded corporations; and the application of federal securities class certification standards to state law claims often thought to be beyond the reach of class action treatment.

Wolf Haldenstein has repeatedly received favorable judicial recognition. The following representative judicial comments over the past decade indicate the high regard in which the Firm is held:

- *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012 (Sup. Ct. N.Y. Co.) – On May 2, 2013, Justice O. Peter Sherwood praised the Firm in its role as chair of the committee of co-lead counsel as follows: "It is apparent to me, having presided over this case, that class counsel has performed in an excellent manner, and you have represented your clients quite well. You should be complimented for that." In awarding attorneys' fees, the Court stated that the fee was "intended to reward class counsel handsomely for the very good result achieved for the Class, assumption of the high risk of Plaintiffs prevailing and the efficiency of effort that resulted in the settlement of the case at an early stage without protracted motion practice." May 17, 2013 slip. op. at 5 (citations omitted).

- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) – On April 9, 2013, Justice Richard B. Lowe III praised the Firm's efforts as follows: "[W]hen you have challenging cases, the one thing you like to ask for is that the legal representation on both sides rise to that level. Because when you have lawyers who are professionals, who are confident, who are experienced, each of you know that each side has a job to do [. . . .] I want to tell you that I am very satisfied with your performance and with your, quite frankly, tenacity on both sides. And it took six years, but look at the history of the litigation. There were two appeals all of the way to the Court of Appeals [. . . .] And then look at the results. I mean, there are dissents in the Court of Appeals, so that shows you the complexity of the issues that were presented in this litigation [. . . .] [I]t shows you effort that went into this and the professionalism that was exhibited [. . . .] So let me just again express my appreciation to both sides."

- *K.J. Egleston L.P. v. Heartland Industrial Partners, et al.*, 2:06-13555 (E.D. Mich.) – where the Firm was Lead Counsel, Judge Rosen, at the June 7, 2010 final approval hearing, praised the Firm for doing "an outstanding job of representing [its] clients," and further commented that "the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition they enjoy."

Wolf Haldenstein
Legal Excellence Since 1888

- *Klein, et al. v. Ryan Beck Holdings, Inc., et al.*, 06-cv-3460 (DAB) (S.D.N.Y. 2010) – where the Firm was Lead Counsel, Judge Deborah A. Batts described the Firm's successful establishment of a settlement fund as follows: "[a] miracle that there is a settlement fund at all." Judge Batts continued: "As I said earlier, there is no question that the litigation is complex and of a large and, if you will, *pioneering magnitude* ..." (Emphasis added).

- *Parker Friedland v. Iridium World Communications, Ltd.*, 99-1002 (D.D.C.) – where the Firm was co-lead counsel, Judge Laughrey said (on October 16, 2008), "[a]ll of the attorneys in this case have done an outstanding job, and I really appreciate the quality of work that we had in our chambers as a result of this case."

- *In re Dynamic Random Access Memory Antitrust Litigation*, MDL-02-1486 (N.D. Cal.) – where the Firm was co-lead counsel, Judge Hamilton said (on August 15, 2007), "I think I can conclude on the basis with my five years with you all, watching this litigation progress and seeing it wind to a conclusion, that the results are exceptional. The percentages, as you have outlined them, do put this [case] in one of the upper categories of results of this kind of [antitrust] class action. I am aware of the complexity . . . I thought that you all did an exceptionally good job of bringing to me only those matters that really required the Court's attention. You did an exceptionally good job at organizing and managing the case, assisting me in management of the case. There was excellent coordination between all the various different plaintiffs' counsel with your group and the other groups that are part of this litigation. . . . So my conclusion is the case was well litigated by both sides, well managed as well by both sides."

- *In re Comdisco Sec. Litigation,* 01 C 2110 (N.D. Ill. July 14, 2005) – Judge Milton Shadur observed: "It has to be said . . . that the efforts that have been extended [by Wolf Haldenstein] on behalf of the plaintiff class in the face of these obstacles have been exemplary. And in my view [Wolf Haldenstein] reflected the kind of professionalism that the critics of class actions . . . are never willing to recognize. . . . I really cannot speak too highly of the services rendered by class counsel in an extraordinary difficult situation."

- *Good Morning to You Productions Corp. v. Warner/Chappell Music, Inc.*, No. CV 13-04460-GHK (MRWx) (C.D. Cal., Aug. 16, 2016) – Judge George H. King

stated: "Not all, or perhaps even most, plaintiffs' class counsel could have litigated this case as successfully as did class counsel against such a fierce and exceptionally accomplished opponent."

- *Bokelman et al. v. FCH Enterprises, Inc.*, (Case No. 1:18-cv-209, D. Haw., May 3, 2019): Judge Robert J. Bryan said, "I've been impressed by the quality of the work you've done throughout here, and that is reflected, I think, in the fact that no one has objected to the settlement."

## Recent Noteworthy Results

Wolf Haldenstein's performance in representative litigation has repeatedly resulted in favorable results for its clients. The Firm has helped recover ***billions of dollars*** on behalf of its clients in the cases listed below. Recent examples include the following:

- On May 13, 2019, in *Apple Inc. v. Pepper*, No. 17-204, the Supreme Court affirmed a decision by the Ninth Circuit Court of Appeals holding that iPhone purchasers have standing to sue Apple for monopolizing the market for iPhone apps in this longstanding antitrust class action. Wolf Haldenstein has been Lead Counsel for the plaintiffs since 2007. The case was commenced in federal district court in Oakland. The Supreme Court's decision clears the way for the plaintiffs to proceed on the merits of their claim.

- On June 11, 2018, the United States Supreme Court issued a highly anticipated decision in *China Agritech, Inc. v. Michael H. Resh, et al.* Wolf Haldenstein represented the plaintiffs/respondents, having commenced the action on behalf of aggrieved shareholders of *China Agritech* after two prior cases had failed at the class certification stage.

- *In re Genetically Modified Rice Litigation*, MDL 1811 (E.D. Mo.) - Wolf Haldenstein represented U.S. rice farmers in this landmark action against Bayer A.G. and its global affiliates, achieving a global recovery of $750 million. The case arose from the contamination of the nation's long grain rice crop by Bayer's experimental and unapproved genetically modified Liberty Link rice.

- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) - a class action brought on behalf of over 27,500 current and former tenants of New York City's iconic Stuyvesant Town and Peter Cooper Village housing complexes. On April 9, 2013, Justice Richard B. Lowe III of the New York Supreme Court finally

approved settlement of the action, which totals over $173 million, sets aside $68.75 million in damages, re-regulates the apartments at issue, and sets preferential rents for the units that will save tenants significant monies in the future. The settlement also enables the tenants to retain an estimated $105 million in rent savings they enjoyed between 2009 and 2012. **The settlement is by many magnitudes the largest tenant settlement in United States history.**

- *In re Empire State Realty Trust, Inc. Investor Litig.*, Index No. 650607/2012 – The firm served as Chair of the Executive Committee of Co-Lead Counsel for the Plaintiffs in a class action settlement finally approved on May 2, 2013 that provides for the establishment of a $55 million settlement fund for investors, in addition to substantial tax deferral benefits estimated to be in excess of $100 million.

- *American International Group Consolidated Derivative Litigation*, Civil Action No. 769-VCS (Del. Ch.) The Firm acted as co-lead counsel and the settlement addressed claims alleging that the D&O Defendants breached their fiduciary duties to the Company and otherwise committed wrongdoing to the detriment of AIG in connection with various allegedly fraudulent schemes during the 1999-2005 time period.

- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, Master File No. 09 MD 2058 (S.D.N.Y.) (firm was co-lead counsel in parallel derivative action pending in Delaware (*In Re Bank of America Stockholder Derivative Litigation*, C.A. No. 4307-CS (Del. Ch.)) (increase of settlement cash recovery from $20 million to $62.5 million).

- *The Investment Committee of the Manhattan and Bronx Service Transit Operating Authority Pension Plan v. JPMorgan Chase Bank,* N.A., 1:09-cv-04408-SAS (S.D.N.Y.) (class recovered $150 million).

- *In re Tremont Sec. Law, State Law and Insurance Litig.*, No. 08-civ-11117 (TPG) (SDNY) (class recovered $100 million). The firm was court-appointed co-lead counsel in the Insurance Action, 08 Civ. 557, and represented a class of persons who purchased or otherwise acquired Variable Universal Life ("VUL") insurance policies or Deferred Variable Annuity ("DVA") policies issued by Tremont International Insurance Limited or Argus International Life Bermuda Limited from May 10, 1994 - December 11, 2008 to the extent the investment

accounts of those policies were exposed to the massive Ponzi scheme orchestrated by Bernard L. Madoff through one or more Rye funds.

- *In re Initial Public Offering Securities Litigation*, 21 MC 92 (SAS) (S.D.N.Y.) (class recovered $586 million). Wolf Haldenstein served as Co-Lead Counsel of one of the largest securities fraud cases in history. Despite the United States Court of Appeals for the Second Circuit's decision to vacate the district court's class certification decision, on remand, counsel for plaintiffs were able to press on to a settlement on April 1, 2009, ultimately recovering in excess of a half-billion dollars.

## FIRM PRACTICE AREAS

### Class Action Litigation

Wolf Haldenstein is a leader in class and derivative action litigation and is currently or has been the court-appointed lead counsel, co-lead counsel, or executive committee member in some of the largest and most significant class action and derivative action lawsuits in the United States. For example, the class action *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) was recently described by a sitting member of the U.S. House of Representatives as the greatest legal victory for tenants in her lifetime. In *Roberts*, the Firm obtained a victory in the New York Court of Appeals requiring the reregulation of thousands of apartment units in the Stuyvesant Town complex in Manhattan, New York. Many of the firm's other successful results are summarized within.

### Private Actions for Institutional Investors

In addition to its vast class action practice, the Firm also regularly represents institutional clients such as public funds, investment funds, limited partnerships, and qualified institutional buyers in private actions. The Firm has represented institutional clients in non-class federal and state actions concerning a variety of matters, including private placements, disputes with investment advisors, and disputes with corporate management.

The Firm has also acted as special counsel to investors' committees in efforts to assert and advance the investors' interests without resorting to litigation. For example, the Firm served as Counsel to the Courtyard by Marriott Limited Partners Committee for several years in its dealings with Host Marriott Corporation, and as Special Counsel to the Windsor Park Properties 7 and 8 limited partners to insure the fairness of their liquidation transactions.

### Antitrust Litigation

Wolf Haldenstein is a leader in antitrust and competition litigation. The Firm actively seeks to enforce the federal and state antitrust laws to protect and strengthen the rights and claims of businesses, organizations, Taft-Hartley funds, and consumers throughout the United States. To that end, Wolf Haldenstein commences large, often complex, antitrust and trade regulation class actions and other cases that target some of the most powerful and well-funded corporate interests in the world. Many of these interests exert strong influence over enforcement policy that is in the hands of elected officials, so that private enforcement provides the only true assurance that unfair and

anticompetitive conduct will be duly scrutinized for compliance with the law. These cases frequently bring to light concealed, unlawful behavior such as price fixing, monopolization, market allocation, monopoly leveraging, essential facilities, tying arrangements, vertical restraints, exclusive dealing, and refusals to deal. Wolf Haldenstein's Antitrust Practice Group has successfully prosecuted numerous antitrust cases and aggressively advocates remedies and restitution for businesses and investors wronged by violations of the antitrust laws. For example, in *In re DRAM Antitrust Litigation*, No. 02-cv-1486 (PJH) (N.D. Cal.) the firm successfully prosecuted an antitrust case resulting in a $315 million recovery. Many of the firm's successful results are summarized within.

Wolf Haldenstein attorneys currently serve as lead counsel, co-lead counsel, or as executive committee members in some of the largest and most significant antitrust class action lawsuits. The firm was most recently appointed lead counsel in the Salmon Antitrust Indirect Litigation pending in the U.S. District Court for the Southern District of Florida.

## Overtime and Compensation Class Actions

Wolf Haldenstein is a leader class action litigation on behalf of employees who have not been paid overtime or other compensation they are entitled to receive, or have had improper deductions taken from their compensation. These claims under the federal Fair Labor Standards Act and state labor laws allege improper failure to pay overtime and other wages, and improper deductions from compensation for various company expenses. Wolf Haldenstein has served as lead or co-lead counsel, or other similar lead role, in some of the most significant overtime class actions pending in the United States, and has recovered hundreds of millions of dollars in recovered wages for its clients. For example, in *LaVoice v. Citigroup Global Markets, Inc.*, Case No. C 07-801 (CW) (N.D. Cal.)) a $108 million settlement was secured for the class. Many of the firm's other successful wage and hour results are summarized within.

## Substantial Recoveries in Class Action and Derivative Cases in Which Wolf Haldenstein Was Lead Counsel or Had Another Significant Role

- *In re Beacon Associates Litigation*, Master File No. 09 Civ. 0777 (LBS) (S.D.N.Y.) (**$219 million** settlement in this and related action).
- *Roberts v. Tishman Speyer*, No. 100956/2007 (Sup. Ct. N.Y. Cty.) (**$173 Million** settlement).

- *In re Mutual Fund Investment Litigation,* MDL No. 1586 (D. Md.) (derivative counsel in consolidated cases against numerous mutual fund companies involved in market timing resulting in class/derivative settlements totaling more than **$300 million**).

- *Inland Western Securities Litigation*, Case No. 07 C 6174 (N.D. Ill.) (settlement value of shares valued between **$61.5 million** and **$90 million**).

- *In re Direxion Shares ETF Trust*, No. 09-Civ-8011 (KBF) (S.D.N.Y.) (class recovered **$8 million**).

- *In re BankAmerica Corp. Securities Litigation*, MDL Docket No. 1264 (JFN) (E.D. Mo.) (class recovered **$490 million**).

- *In re Dynamic Random Access Memory Antitrust Litigation*, (MD-02 1486 (N.D. Cal.) (class recovered **$325 million**).

- *In re MicroStrategy, Inc. Securities Litigation*, Civ. No. 00-473-A (E.D. Va.) (class recovered **$160 million** in cash and securities).

- *Kurzweil v. Philip Morris Cos.*, 94 Civ. 2373, 94 Civ. 2546 (S.D.N.Y.) (securities fraud) (class recovered **$116.5 million** in cash).

- *In re Starlink Corn Products Liability Litigation*, (N.D. Ill.) (class recovered **$110 million**).

- *In Computer Associates 2002 Class Action Sec. Litigation*, 2:02-CV-1226 (E.D.N.Y.) (**$130 million** settlement in this and two related actions).

- *In re Sepracor Inc. Securities Litigation, Civ. No.* 02-12338 (MEL) (D. Mass.) (classes recovered **$52.5 million**).

- *In re Transkaryotic Therapies, Inc., Securities Litigation*, C.A. No. 03-10165-RWZ (D. Mass) (class recovered **$50 million**).

- *In re Iridium Securities Litigation*, C.A. No. 99-1002 (D.D.C.) (class recovered **$43 million**).

- *In re J.P. Morgan Chase Securities Litigation,* MDL No. 1783 (N.D. Ill.) (settlement providing for adoption of corporate governance principles relating to potential corporate transactions requiring shareholder approval).

- *LaVoice v. Citigroup Global Markets, Inc.*, Case No. C 07-801 (CW) (N.D. Cal.)) (**$108 million** settlement).

- *Steinberg v. Morgan Stanley & Co., Inc.*, Case No. 06-cv-2628 (BEN) (S.D. Cal.) (**$50 million** settlement).

- *Poole v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, Case No. CV-06-1657 (D. Or.) (**$43.5 million** settlement).

- *In re Wachovia Securities, LLC Wage and Hour Litigation*, MDL No. 07-1807 DOC (C.D. Cal.) (**$39 million** settlement).

- *In re Wachovia Securities, LLC Wage and Hour Litigation (Prudential)*, MDL No. 07-1807 DOC (C.D. Cal.) (**$11 million** settlement).

- *Basile v. A.G. Edwards, Inc.*, 08-CV-00338-JAH-RBB (S.D. Cal.) (**$12 million** settlement).

- *Miguel Garcia, et al. v. Lowe's Home Center, Inc. et al.* – Case No. GIC 841120 (Barton) (Cal. Sup. Ct, San Diego) (co-lead, **$1.65 million** settlement w/ average class member recovery of $5,500, attorney fees and cost awarded separately).

- *Neil Weinstein, et al. v. MetLife, Inc., et al.* – Case No. 3:06-cv-04444-SI (N.D.Cal) (co-lead, **$7.4 million** settlement).

- *Creighton v. Oppenheimer*, Index No. 1:06 - cv - 04607 - BSJ - DCF (S.D.N.Y.) (**$2.3 million** settlement).

- *Klein v. Ryan Beck*, 06-CV-3460 (DAB)(S.D.N.Y.) (**$1.3 million** settlement).

- *In re American Pharmaceutical Partners, Inc. Shareholder Litigation,* Consolidated C.A. No. 1823-N (Del. Ch. Ct.) (**$14.3 million** settlement).

- *Egleston v. Collins and Aikman Corp.*, 06-cv-13555 (E.D. Mich.) (class recovered **$12 million**).

- *In re Merrill Lynch & Co., Inc. Global Technology Fund Securities Litigation*, 02 CV 7854 (JFK) (SDNY); and *In re Merrill Lynch & Co., Inc. Focus Twenty Fund Securities Litigation*, 02 CV 10221 (JFK) (SDNY) (class recovered **$39 million** in combined cases).

- *In re CNL Hotels & Resorts, Inc. Securities Litigation*, No. 6:04-cv-1231 (Orl-31) (class recovered **$35 million**, and lawsuit also instrumental in **$225 million** benefit to corporation).

- *In re Cablevision Systems Corp. Shareholder Derivative Litigation*, Master File No. 06-CV-4130-DGT-AKT (**$34.4 million** recovery).

- *In re Monster Worldwide, Inc. Stock Option Derivative Litigation*, Master File No. 06cv4622 (S.D.N.Y.) (**$32 million** recovery and corporate governance reforms).

- *Berger v. Compaq Computer Corp.*, Docket No. 98-1148 (S.D. Tex.) (class recovered **$29 million**).

- *In re Arakis Energy Corporation Securities Litigation*, 95 CV 3431 (E.D.N.Y.) (class recovered **$24 million**).

- *In re E.W. Blanche Holdings, Inc. Securities Litigation*, Civ. No. 01-258 (D. Minn.) (class recovered **$20 million**).

- *In re Globalstar Securities Litigation*, Case No. 01-CV-1748 (SHS) (S.D.N.Y.) (class recovered **$20 million**).

- *In re Luxottica Group S.p.A. Securities Litigation*, No. CV 01-3285 (E.D.N.Y) (class recovered **$18.25 million**).

- *In re Musicmaker.com Securities Litigation*, CV-00-2018 (C.D. Cal.) (class recovered **$13.75 million**).

- *In re Comdisco Securities Litigation*, No. 01 C 2110 (MIS) (N.D. Ill.) (class recovered **$13.75 million**).

- *In re Acclaim Entertainment, Inc., Securities Litigation*, C.A. No. 03-CV-1270 (E.D.N.Y.) (class recovered **$13.65 million**).

Wolf Haldenstein
Legal Excellence Since 1888

- *In re Concord EFS, Inc. Securities Litigation*, No. 02-2097 (MA) (W.D. Tenn) (class recovered **$13.25 million**).
- *In re Bausch & Lomb, Inc. Securities Litigation,* 01 Civ. 6190 (CJS) (W.D.N.Y.) (class recovered **$12.5 million**).
- *In re Allaire Corp. Securities Litigation,* 00-11972 (D. Mass.) (class recovered **$12 million**).
- *Bamboo Partners LLC v. Robert Mondavi Corp.,* No. 26-27170 (Cal. Sup. Ct.) (class recovered **$10.8 million**).
- *Curative Health Services Securities Litigation,* 99-2074 (E.D.N.Y.) (class recovered **$10.5 million**).
- *City Partnership Co. v. Jones Intercable,* 99 WM-1051 (D. Colo.) (class recovered **$10.5 million**).
- *In re Aquila, Inc.,* (ERISA Litigation), 04-865 (W.D. Mo.) (**$10.5 million** recovery for the class).
- *In re Tenfold Corporation Securities Litigation,* 2:00-CV-652 (D. Utah) (class recovered **$5.9 million**).
- *In re Industrial Gas Antitrust Litigation*, 80 C 3479 and related cases (N.D. Ill.) (class recovered **$50 million**).
- *In re Chor-Alkalai and Caustic Soda Antitrust Litigation*, 86-5428 and related cases (E.D. Pa.) (class recovered **$55 million**).
- *In re Infant Formula Antitrust Litigation,* MDL No. 878 (N.D. Fla.) (class recovered **$126 million**).
- *In re Brand Name Prescription Drugs Antitrust Litigation,* No. 1:94-cv-00897, M.D.L. 997 (N.D. Ill.) (class recovered **$715 million**).
- *Landon v. Freel,* M.D.L. No. 592 (S.D. Tex.) (class recovered **$12 million**).
- *Holloway v. Peat, Marwick, Mitchell & Co.,* No. 84 C 814 EU (N.D. Okla.) (class recovered **$38 million**).

- *In re The Chubb Corp.* Drought Insurance Litigation, C-1-88-644 (S.D. Ohio) (class recovered **$100 million**).

- *Wong v. Megafoods,* Civ-94-1702 (D. Ariz.) (securities fraud) (class recovered **$12.25 million**).

- *In re Del Val Financial Corp. Securities Litigation,* 92 Civ 4854 (S.D.N.Y.) (class recovered **$11.5 million**).

- *In re Home Shopping Network Shareholders Litigation,* Consolidated Civil Action No. 12868, (Del. Ch. 1995) (class recovered **$13 million**).

- *In re Paine Webber Limited Partnerships Litigation,* 94 Civ 8547 (S.D.N.Y.) (class recovered **$200 million**).

- *In re Bristol-Meyers Squibb Co. Securities Litigation,* 92 Civ 4007 (S.D.N.Y.) (class recovered **$19 million**).

- *In re Spectrum Information Technologies Securities Litigation,* CV 93-2245 (E.D.N.Y.) (class recovered **$13 million**).

- *In re Chase Manhattan Securities Litigation,* 90 Civ. 6092 (LJF) (S.D.N.Y.) (class recovered **$17.5 million**).

- *Prostic v. Xerox Corp.*, No. B-90-113 (EBB) (D. Conn.) (class recovered **$9 million**).

- *Steiner v. Hercules,* Civil Action No. 90-442-RRM (D. Del.) (class recovered **$18 million**).

- *In re Ambase Securities Litigation,* 90 Civ 2011 (S.D.N.Y.) (class recovered **$14.6 million**).

- *In re Southmark Securities Litigation,* CA No. 3-89-1402-D (N.D. Tex.) (class recovered **$70 million**).

- *Steiner v. Ideal Basic Industries, Inc.,* No. 86-M 456 (D. Colo. 1989) (securities fraud) (class recovered **$18 million**).

- *Tucson Electric Power Derivative Litigation,* 2:89 Civ. 01274 TUC. ACM (corporation recovered **$30 million**).

- *Alleco Stockholders Litigation,* (Md. Cir. Ct. Pr. Georges County) (class recovered **$16 million**).

- *In re Revlon Group, Inc. Shareholders Litigation*, No. 8362 (Del. Ch.) (class recovered **$30 million**).

- *In re Taft Broadcasting Company Shareholders Litigation,* No. 8897 (Del. Ch.) (class recovered **$20 million**).

- *In re Southland Corp. Securities Litigation,* No. 87-8834-K (N.D.Tex.) (class recovered **$20 million**).

- *In re Crocker Bank Securities Litigation*, CA No. 7405 (Del. Ch.) (class recovered **$30 million**).

- *In re Warner Communications Securities Litigation,* No. 82 Civ. 8288 (JFK) (S.D.N.Y.) (class recovered **$17.5 million**).

- *Joseph v. Shell Oil,* CA No. 7450 (Del. Ch.) (securities fraud) (class recovered **$200 million**).

- *In re Flight Transportation Corp. Securities Litigation,* Master Docket No. 4-82-874, MDL No. 517 (D. Minn.) (recovery of over **$50 million**).

- *In re Whittaker Corporation Securities Litigation,* CA000817 (Cal. Super. Ct., Los Angeles County) (class recovered **$18 million**).

- *Naevus International, Inc. v. AT&T Corp.,* C.A. No. 602191/99 (N.Y. Sup. Ct.) (consumer fraud) (class recovered **$40 million**).

- *Sewell v. Sprint PCS Limited Partnership*, C.A. No. 97-188027/CC 3879 (Cir. Ct. for Baltimore City) (consumer fraud) (class recovered **$45.2 million**).

- *In re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, 2:08-cv-285 (D.N.J.) (class recovered **$41.5 million**).

- *Egleston v. Verizon*, No. 104784/2011 (N.Y. Sup. Ct.) – Wolf Haldenstein represented a class of New York Verizon Centrex customers in an action against Verizon stemming from overbilling of certain charges. The Firm secured a settlement with a total value to the Class of over **$5 million**, which

provided, among other things, each class member with full refunds of certain disputed charges, plus interest.

- *Zelouf Int'l Corp. v. Nahal Zelouf*, Index No. 653652/2014 (Sup. Ct. N.Y. Co. 2015). In an important trial decision following an appraisal proceeding triggered by the freeze-out merger of a closely-held corporation, which also included shareholder derivative claims, Justice Kornreich of the New York Supreme Court refused to apply a discount for lack of marketability to the minority interest in the former corporation and found that the insiders stole more than $14 million dollars; the minority shareholder recovered over **$9 million**.

- *Zelouf Int'l Corp. v. Zelouf*, 45 Misc.3d 1205(A) (Sup. Ct. N.Y. Co., 2014). The Court rejected application of a discount for lack of marketability and awarded a **$10,031,438.28** judgment following an eleven day bench trial in the Commercial Division of the Supreme Court of the State of New York (New York County) on the value of a minority interest in a closely held corporation.

- *Thompson et al. v. Bethpage Federal Credit Union et al.*, No. 2:17-cv-00921-GRB (E.D.N.Y.) (**$3.6 million** settlement)

## REPRESENTATIVE REPORTED OPINIONS SINCE 1990 IN WHICH WOLF HALDENSTEIN WAS LEAD COUNSEL OR HAD ANOTHER SIGNIFICANT ROLE

### FEDERAL APPELLATE AND DISTRICT COURT OPINIONS

- *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)
- *Hymes v. Bank of America*, 408 F. Supp. 3d 171 (E.D.N.Y. 2019)
- *In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308 (S.D. Cal. 2019)
- *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018)
- *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017)
- *DeFrees v. Kirkland*, 2012 U.S. Dist. LEXIS 52780 (C.D. Cal. Apr. 11, 2012).
- *In re Beacon Associates Litig.*, 282 F.R.D. 315 (S.D.N.Y. 2012).
- *Messner v. Northshore University HealthSystem*, 669 F.3d 802, No. 10-2514 (7th Cir. Jan. 13, 2012).
- *In re Text Message Antitrust Litigation*, 630 F.3d, 622 (7th Cir. 2010).
- *In re Apple & ATTM Antitrust Litig.*, 2010 U.S. Dist. LEXIS 98270 (N.D. Cal. July 8, 2010).
- *In re Beacon Associates Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010)
- *Freeland v. Iridium World Communications Ltd.*, 545 F. Supp. 2d 59 (D.D.C. 2008).
- *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288 (N.D. Cal. 2008).
- *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007).
- *In re JP Morgan Chase & Co. Securities Litigation*, No. 06 C 4674, 2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007).
- *Schoenbaum v. E.I. Dupont De Nemours and Co.*, 2007 WL 2768383 (E.D. Mo. Sept. 20, 2007).

- *Jeffries v. Pension Trust Fund,* 99 Civ. 4174 (LMM), 2007 U.S. Dist. LEXIS 61454 (S.D.N.Y. Aug. 20, 2007).
- *Klein v. Ryan Beck,* 06-Civ. 3460 (WCC), 2007 U.S. Dist. LEXIS 51465 (S.D.N.Y. July 13, 2007).
- *Cannon v. MBNA Corp.* No. 05-429 GMS, 2007 U.S. Dist. LEXIS 48901 (D. Del. 2007).
- *In re Aquila ERISA Litig.*, 237 F.R.D. 202 (W.D. Mo. 2006).
- *Smith v.* Aon Corp., 238 F.R.D. 609 (N.D. Ill. 2006).
- *In re Sepracor Inc. Securities Litigation,* 233 F.R.D. 52 (D. Mass. 2005).
- *In re Transkaryotic Therapies, Inc. Securities Litigation,* No. 03-10165, 2005 U.S. Dist. LEXIS 29656 (D. Mass. Nov. 28, 2005).
- *In re Luxottica Group, S.p.A. Securities Litigation,* 2005 U.S. Dist. LEXIS 9071 (E.D.N.Y. May 12, 2005).
- *In re CNL Hotels & Resorts, Inc. Securities Litigation,* 2005 U.S. Dist. LEXIS 38876, No. 6:04-cv-1231-Orl-31KRS (M.D. Fla. May 9, 2005).
- *Johnson v. Aegon USA, Inc.,* 355 F. Supp. 2d 1337 (N.D. Ga. 2004).
- *Freeland v. Iridium World Communications, Ltd.,* 99-1002, 2004 U.S. Dist. LEXIS 33018 (D.D.C. Aug. 31, 2004).
- *In re Acclaim Entertainment, Inc. Securities Litigation,* 03-CV-1270 (E.D.N.Y. June 22, 2004).
- *In re Sepracor Inc. Securities Litigation,* 308 F. Supp. 2d 20 (D. Mass. 2004).
- *In re Concord EFS, Inc. Securities Litigation,* No. 02-2697 (W.D. Tenn. Jan. 7, 2004).
- *In re Pharmatrak, Inc. Privacy Litig.*, 2003 U.S. App. LEXIS 8758 (1st Cir. May 9, 2003).
- *In re PerkinElmer, Inc. Securities Litigation,* 286 F. Supp. 2d 46 (D. Mass. 2003).

Wolf Haldenstein
Legal Excellence Since 1888

- *In re Initial Public Offering Securities Litigation,* 241 F. Supp. 2d 281 (S.D.N.Y. 2003).
- *In re Comdisco Securities Litigation,* No. 01 C 2110, 2003 U.S. Dist. LEXIS 5047 (N.D. Ill. Mar. 31, 2003).
- *Berger v. Compaq Computer Corp.,* 257 F.3d 475 (2001), clarified, 279 F.3d 313 (5th Cir. 2002).
- *City Partnership Co. v. Cable TV Fund 14-B*, 213 F.R.D. 576 (D. Colo. 2002).
- *In re Allaire Corporation Securities Litigation,* Docket No. 00-11972 - WGY, 2002 U.S. Dist. LEXIS 18143 (D. Mass., Sept. 27, 2002).
- *In re StarLink Corn Products Liability Litigation,* 212 F.Supp.2d 828 (N.D. Ill. 2002).
- *In re Bankamerica Corp. Securities Litigation*, 263 F.3d 795 (8th Cir. 2001).
- *In re Comdisco Securities Litigation,* 166 F.Supp.2d 1260 (N.D. Ill. 2001).
- *In re Crossroads Systems, Inc. Securities Litigation,* Master File No. A-00-CA-457 JN, 2001 U.S. Dist. LEXIS 14780 (W.D. Tx. Aug. 15, 2001).
- *In re MicroStrategy, Inc. Securities Litigation,* 150 F. Supp. 2d 896 (E.D. Va. 2001).
- *Lindelow v. Hill,* No. 00 C 3727, 2001 U.S. Dist. LEXIS 10301 (N.D. Ill. July 19, 2001).
- *In re MicroStrategy, Inc. Securities Litigation,* 148 F. Supp. 2d 654 (E.D. Va. 2001).
- *Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Electrical Industry,* 172 F. Supp. 2d 389 (S.D.N.Y. 2001).
- *Carney v. Cambridge Technology Partners, Inc.,* 135 F. Supp. 2d 235 (D. Mass. 2001).
- *Weltz v. Lee,* 199 F.R.D. 129 (S.D.N.Y. 2001).
- *Schoers v. Pfizer, Inc.,* 00 Civ. 6121, 2001 U.S. Dist. LEXIS 511 (S.D.N.Y. Jan. 23, 2001).

- *Kurzweil v. Philip Morris Cos.*, 94 Civ. 2373 (MBM), 2001 U.S. Dist. LEXIS 83 (S.D.N.Y. Jan. 9, 2001).
- *Goldberger v. Bear, Stearns & Co.*, 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714 (S.D.N.Y. Dec. 28, 2000).
- *In re Newell Rubbermaid, Inc., Securities Litigation*, Case No. 99 C 6853, 2000 U.S. Dist. LEXIS 15190 (N.D. Ill. Oct. 2, 2000).
- *Stanley v. Safeskin Corp.*, Case No. 99 CV 454 BTM (LSP), 2000 U.S. Dist. LEXIS 14100, Fed. Sec. L. Rep. (CCH) P91, 221 (S.D. Cal. Sept. 18, 2000).
- *In re MicroStrategy, Inc. Securities Litigation*, 115 F. Supp. 2d 620 (E.D. Va. 2000).
- *In re USA Talks.com, Inc. Securities Litigation*, 2000 U.S. Dist. LEXIS 14823, Fed. Sec. L. Rep. (CCH) P91, 231 (S.D. Cal. Sept. 14, 2000).
- *In re Sotheby's Holdings, Inc. Securities Litigation*, 00 CIV. 1041 (DLC), 2000 U.S. Dist. LEXIS 12504, Fed. Sec. L. Rep. (CCH) P91, 059 (S.D.N.Y. Aug. 31, 2000).
- *Dumont v. Charles Schwab & Co., Inc.*, Civil Action No. 99-2840 2000 U.S. Dist. LEXIS 10906 (E.D. La. July 21, 2000).
- *Berger v. Compaq Computer Corp.*, Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21424 (S.D. Tex. July 17, 2000).
- *In re BankAmerica Corp. Securities Litigation*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000).
- *In re Carnegie International Corp. Securities Litigation*, 107 F. Supp. 2d 676 (D. Md. 2000).
- *Berger v. Compaq Computer Corp.*, Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21423 (S.D. Tex. Mar. 13, 2000).
- *In re Imperial Credit Industries Securities Litigation*, CV 98-8842 SVW, 2000 U.S. Dist. LEXIS 2340 (C.D. Cal. Feb. 23, 2000).
- *Sturm v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356 (N.D. Ga. 2000).
- *In re Health Management Systems Securities Litigation*, 82 F. Supp. 2d 227 (S.D.N.Y. 2000).

- *Dumont v. Charles Schwab & Co., Inc.*, Civil Action No. 99-2840, 2000 U.S. Dist. LEXIS 619 (E.D. La. Jan. 19, 2000).
- *In re MicroStrategy, Inc. Securities Litigation,* 110 F. Supp. 2d 427 (E.D. Va. 2000).
- *In re BankAmerica Corp. Securities Litigation,* 78 F. Supp. 2d 976 (E.D. Mo. 1999).
- *Kurzweil v. Philip Morris Cos.,* 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 24, 1999).
- *In re Nanophase Technologies Corp. Litigation,* 98 C 3450, 1999 U.S. Dist. LEXIS 16171 (N.D. Ill. Sept. 27, 1999).
- *In re Clearly Canadian Securities Litigation,* File No. C-93-1037-VRW, 1999 U.S. Dist. LEXIS 14273 Cal. Sept. 7, 1999).
- *Yuan v. Bayard Drilling Technologies, Inc.,* 96 F. Supp. 2d 1259 (W.D. Okla. 1999).
- *In re Spyglass, Inc. Securities Litigation,* No. 99 C 512, 1999 U.S. Dist. LEXIS 11382 (N.D. Ill. July 20, 1999).
- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11595 (N.D. Ga. June 30, 1999).
- *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,* 98 CV 3287, 1999 U.S. Dist. LEXIS 11363 (E.D.N.Y. June 1, 1999).
- *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 1368, Fed. Sec. L. Rep. (CCH) P90, 429 (N.D. Ga. Jan. 19, 1999).
- *Longman v. Food Lion, Inc*., 186 F.R.D. 331 (M.D.N.C. 1999).
- *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998).
- *Romine v. Compuserve Corp.,* 160 F.3d 337 (6th Cir. 1998).
- *Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998).
- *Walsingham v. Biocontrol Technology, Inc*., 66 F. Supp. 2d 669 (W.D. Pa. 1998).
- *Sturm v. Marriott Marquis Corp.,* 26 F. Supp. 2d 1358 (N.D. Ga. 1998).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 27 F. Supp. 2d 1324 (N.D. Ga. 1998).
- *In re MobileMedia Securities Litigation*, 28 F.Supp.2d 901 (D.N.J. 1998).
- *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377 (D.N.J. 1998).
- *In re Health Management Systems Securities Litigation*, 97 Civ. 1865 (HB), 1998 U.S. Dist. LEXIS 8061 (S.D.N.Y. May 27, 1998).
- *In re Painewebber Ltd. Partnership Litigation*, 999 F. Supp. 719 (S.D.N.Y. 1998).
- *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 1:97-cv-3183-TWT, 1998 U.S. Dist. LEXIS 23222 (N.D. Ga. Feb. 10, 1998).
- *Brown v. Radica Games (In re Radica Games Securities Litigation)*, No. 96-17274, 1997 U.S. App. LEXIS 32775 (9th Cir. Nov. 14, 1997).
- *Robbins v. Koger Properties*, 116 F.3d 1441 (11th Cir. 1997).
- *In re TCW/DW North American Government Income Trust Securities Litigation*, 95 Civ. 0167 (PKL), 1997 U.S. Dist. LEXIS 18485 (S.D.N.Y. Nov. 20, 1997).
- *Wright v. Ernst & Young, LLP*, 97 Civ. 2189 (SAS), 1997 U.S. Dist. LEXIS 13630 (S.D.N.Y. Sept. 9, 1997).
- *Felzen v. Andreas*, No. 95-2279, 1997 U.S. Dist. LEXIS 23646 (C.D. Ill. July 7, 1997).
- *Felzen v. Andreas*, No. 95-2279, 1997 U.S. Dist. LEXIS 23647 (C.D. Ill. July 7, 1997).
- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*, 964 F. Supp. 147 (S.D.N.Y. 1997).
- *Kurzweil v. Philip Morris Companies*, 94 Civ. 2373 (MBM), 1997 U.S. Dist. LEXIS 4451 (S.D.N.Y. April 8, 1997).
- *Bobrow v. Mobilmedia, Inc.*, Civil Action No. 96-4715, 1997 U.S. Dist. LEXIS 23806 (D.N.J. March 31, 1997).

- *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200 (N.D.Tex. 1997).
- *In re Painewebber Ltd. Partnerships Litigation*, 171 F.R.D. 104 (S.D.N.Y. 1997).
- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*, 95 Civ. 8422 (LAK), 1997 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 7, 1997).
- *In re Painewebber Inc. Limited Partnerships Litigation*, 94 F.3d 49 (2d Cir. 1996).
- *Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996).
- *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996).
- *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996).
- *Dresner Co. Profit Sharing Plan v. First Fidelity Bank, N.A.*, 95 Civ. 1924 (MBM), 1996 U.S. Dist. LEXIS 17913 (S.D.N.Y. Dec. 3, 1996).
- *Simon v. American Power Conversion Corp.*, 945 F. Supp. 416 (D.R.I. 1996).
- *TII Industries, Inc.*, 96 Civ. 4412 (SAS), 1996 U.S. Dist. LEXIS 14466 (S.D.N.Y. Oct. 1, 1996).
- *In re TCW/DW North American Government Income Trust Securities Litigation*, 941 F. Supp. 326 (S.D.N.Y. Oct. 1, 1996).
- *In re Painewebber Ltd. Partnership Litigation*, 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 9195 (S.D.N.Y. June 28, 1996).
- *In re Tricord Systems, Inc., Securities Litigation*, Civil No. 3-94-746, 1996 U.S. Dist. LEXIS 20943 (D. Minn. April 5, 1996).
- *In re Painewebber Limited Partnership Litigation*, 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 1265 (S.D.N.Y. Feb. 6, 1996).
- *Riley v. Simmons*, 45 F.3d 764 (3d Cir. 1995).
- *Stepak v. Addison*, 20 F.3d 398 (11th Cir. 1994).
- *Zitin v. Turley*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,123 (D. Ariz. June 20, 1994).

- *In re Southeast Hotel Properties Limited Partnership Investor Litigation*, 151 F.R.D. 597 (W.D.N.C. 1993).
- *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990).

## Notable State Court Opinions

- *William Hughes, Jr. v. Xiaoming Hu, et al.* [*In re Kandi Technologies Group*], C.A. No. 2019-0112-JTL (Del. Ch. April 27, 2020).
- *Eshaghian v. Roshanzamir*, 179 A.D.3d 596 (N.Y. App. Div. 1st Dep't 2020).
- *Cohen v. Saks, Inc.*, 169 A.D.3d 515 (N.Y. App. Div. 1st Dep't 2019).
- *Bartis v. Harbor Tech, LLC*, 147 A.D.3d 52 (N.Y. App. Div. 2d Dep't 2016).
- *Zelouf Int'l Corp. v. Zelouf*, 47 Misc. 3d 346 (N.Y. Sup. Ct. 2014).
- *McWilliams v. City of Long Beach*, 56 Cal. 4th 613 (2013).
- *Roberts v. Tishman Speyer*, 89 A.D.3d 444 (N.Y. App. Div. 1st Dep't 2011).
- *Ardon v. City of Los Angeles*, 52 Cal. 4th 241 (2011).
- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009).
- *In re Tyson Foods, Inc., Consolidated Shareholder Litigation,* 919 A.2d 563 (Del. Ch. 2007).
- *Naevus Int'l v. AT&T Corp.*, 283 A.D.2d 171, 724 N.Y.S.2d 721 (2001).
- *In re Western National Corp. Shareholders Litigation,* Consolidated C.A. No. 15927, 2000 Del. Ch. LEXIS 82 (May 22, 2000).
- *In re Cencom Cable Income Partners, L.P. Litigation,* C.A. No. 14634, 2000 Del. Ch. LEXIS 90 (May 5, 2000).
- *In re Cencom Cable Income Partners, L.P. Litigation,* Consolidated C.A. No. 14634, 2000 Del. Ch. LEXIS 10 (Jan. 27, 2000).

- *In re Marriott Hotels Properties II Limited Partnership Unitholders Litigation,* Consolidated C.A. No. 14961, 2000 Del. Ch. LEXIS 17 (Jan. 24, 2000).
- *Romig v. Jefferson-Pilot Life Insurance Company,* 132 N.C. App. 682, 513 S.E.2d 598 (Ct. App. 1999), *aff'd*, 351 N.C. 349, 524 S.E.2d 804 (N.C. 2000).
- *Wallace v. Wood,* 752 A.2d 1175 (Del. Ch. 1999).
- *Greenwald v. Batterson,* C.A. No. 16475, 1999 Del. Ch. LEXIS 158 (July 26, 1999).
- *Brown v. Perrette,* Civil Action No. 13531, 1999 Del. Ch. LEXIS 92 (May 18, 1999).
- *Seinfeld v. Robinson,* 246 A.D.2d 291, 676 N.Y.S.2d 579 (N.Y. 1998).
- *Werner v. Alexander*, 130 N.C. App. 435, 502 S.E.2d 897 (N.C. Ct. App. 1998).
- *In re Cencom Cable Income Partners, L.P. Litigation,* C.A. No. 14634, 1997 Del. Ch. LEXIS 146 (Oct. 15, 1997).
- *In re Marriott Hotel Properties II Limited Partnership Unitholders Litigation,* Consolidated C.A. No. 14961, 1997 Del. Ch. LEXIS 128 (Sept. 17, 1997).
- *In re Cheyenne Software Shareholders Litigation,* Consolidated C.A. No. 14941, 1996 Del. Ch. LEXIS 142 (Nov. 7, 1996).
- *Paramount Communications, Inc. v. QVC Network, Inc.,* 637 A.2d 34 (Del. Super. Ct. 1994).

The qualifications of the attorneys in the Wolf Haldenstein Litigation Group are set forth below and are followed by descriptions of some of the Firm's attorneys who normally practice outside the Litigation Group who contribute significantly to the class action practice from time to time.

## PARTNERS

**MARK C. RIFKIN:** ***admitted:*** New York; Pennsylvania; New Jersey; U.S. Supreme Court; U.S. Courts of Appeals for the Second, Third, Fifth, and D.C. Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Pennsylvania, the District of New Jersey, the Eastern District of Wisconsin and the Western District of Michigan. ***Education:*** Princeton University (A.B. 1982); Villanova University School of Law (J.D. 1985). Contributor, Packel & Poulin, *Pennsylvania Evidence* (1987).

A highly experienced securities class action and shareholder rights litigator, Mr. Rifkin has recovered hundreds of millions of dollars for victims of corporate fraud and abuse in federal and state litigation across the country. Since 1990, Mr. Rifkin has served as lead counsel, co-lead counsel, or trial counsel in many class and derivative actions in securities, intellectual property, antitrust, insurance, consumer and mass tort litigation throughout the country.

Unique among his peers in the class action practice, Mr. Rifkin has extensive trial experience. Over the past thirty years, Mr. Rifkin has tried many complex commercial actions in federal and state courts across the country in class and derivative actions, including *In re National Media Corp. Derivative Litig.*, C.A. 90-7574 (E.D. Pa.), *Upp v. Mellon Bank, N.A.*, C.A. No. 91-5229 (E.D. Pa.), where the verdict awarded more than $60 million in damages to the Class (later reversed on appeal, 997 F.2d 1039 (3d Cir. 1993)), and *In re AST Research Securities Litigation*, No. 94-1370 SVW (C.D. Cal.), as well as a number of commercial matters for individual clients, including *Zelouf Int'l Corp. v. Zelouf*, Index No. 653652/2013 (N.Y. Sup. Ct. 2015), in which he obtained a $10 million judgment for his client.

Mr. Rifkin also has extensive appellate experience. Over thirty years, Mr. Rifkin has argued dozens of appeals on behalf of appellants and appellees in several federal appellate courts, and in the highest appellate courts in New York, Pennsylvania, New Jersey, and Delaware.

Mr. Rifkin has earned the AV®-Preeminent rating by Martindale-Hubbell® for more than 20 years, and has been selected for inclusion in the New York Metro SuperLawyers® listing since 2010. In 2014, Mr. Rifkin was named a "Titan of the Plaintiff's Bar" by Law360®.

In 2015, Mr. Rifkin received worldwide acclaim for his role as lead counsel for the class in *Good Morning To You Productions Corp. v. Warner/Chappell Music, Inc.*, No. CV 13-04460-GHK (MRWx), in federal court in Los Angeles, successfully challenging the copyright to "Happy Birthday to You," the world's most famous song. In recognition of his historic victory, Mr. Rifkin was named a Trailblazer in Intellectual Property by the National Law Journal in 2016. In 2018, Mr. Rifkin led a team of lawyers from Wolf Haldenstein who represented the plaintiffs in *We Shall Overcome Foundation, et al. v. The Richmond Organization, Inc., et al.*, No. 16-cv-02725-DLC (S.D.N.Y.), which successfully challenged the copyright to "We Shall Overcome," called the "most powerful song of the 20th century" by the Librarian of Congress.

Mr. Rifkin lectures frequently to business and professional organizations on a variety of securities, shareholder, intellectual property, and corporate governance matters. Mr. Rifkin is a guest lecturer to graduate and undergraduate economics and finance students on corporate governance and financial disclosure topics. He also serves as a moot court judge for the A.B.A. and New York University Law School. Mr. Rifkin appears frequently in print and broadcast media on diverse law-related topics in corporate, securities, intellectual property, antitrust, regulatory, and enforcement matters.

**BETSY C. MANIFOLD**: ***admitted*****:** Wisconsin; New York; California; U.S. District Courts for the Western District of Wisconsin, Eastern and Southern Districts of New York, and Northern, Central and Southern Districts of California. ***Education***: Elmira College; Middlebury College (B.A., *cum laude*, 1980); Marquette University (J.D., 1986); New York University. Thomas More Scholar. Recipient, American Jurisprudence Award in Agency. Member: The Association of the Bar of the City of New York. Languages: French.

Ms. Manifold served as co-lead counsel in the following cases to recovery on behalf of employees: *Miguel Garcia, et al. v. Lowe's Home Center, Inc. et al.* – Case No. GIC 841120 (Barton) (Cal. Sup. Ct, San Diego) ($1.65 million settlement w/ average class member recovery of $5,500, attorney fees and cost awarded separately) and *Neil Weinstein, et al.*

*v. MetLife, Inc., et al.* – Case No. 3:06-cv-04444-SI (N.D. Cal) ($7.4 million settlement). Ms. Manifold also served as co-lead counsel in the following derivative actions: *In re Atmel Corporation Derivative Litigation*, Master File No. CV 06-4592-JF (N.D. Cal.) ($9.65 million payment to Atmel) and *In re Silicon Storage Technology Inc. Derivative Litig.*, Case No. C 06-04310 JF (N.D. Cal.) (cash payment and re-pricing of options with a total value of $5.45 million). Ms. Manifold also worked as lead counsel on the following class action: *Lewis v. American Spectrum Realty*, Case No. 01 CC 00394, Cal. Sup. Ct (Orange County) ($6.5 million settlement).

**BENJAMIN Y. KAUFMAN**: ***admitted*:** New York, United States Supreme Court, United States Court of Appeals for the Fourth Circuit, Southern, Northern and Eastern Districts of New York, District of New Jersey; and District of Colorado. ***Education***: Yeshiva University, B.A.; Benjamin N. Cardozo School of Law, Yeshiva University, J.D; New York University, Stern School of Business, M.B.A. Mr. Kaufman focuses on class actions on behalf of defrauded shareholders, investors, and consumers. Mr. Kaufman has extensive experience in complex class actions representing clients including institutional investors such as public and labor pension funds, labor health and welfare benefit funds, as well as private individuals and funds who suffered losses due to corporate fraud. Mr. Kaufman also has extensive experience litigating complex commercial cases in state and federal court.

Mr. Kaufman's successful securities litigations include *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.), a complex international securities litigation requiring evidentiary discovery in both the United States and Europe, which settled for $120 million. Mr. Kaufman was also part of the team that recovered $46 million for investors in *In re Asia Pulp & Paper Securities Litigation*, No. 01-7351 (S.D.N.Y.); and $43.1 million in *Freeland v. Iridium World Communications, Ltd.*, No. 99-1002 (D.D.C.).

Mr. Kaufman's outstanding representative results in derivative and transactional litigations include: *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-cv-7820 (S.D.N.Y.) (in settlement Trump personally contributed some of his holdings and the company adopted corporate reforms); *Southwest Airlines Derivative Litigation (Carbon County Employee Retirement System v. Kelly*) (Dist. Ct. Dallas Cnty., Tex.) (derivative matter that resulted in significant reforms to the air carrier's corporate governance and safety and maintenance practices and procedures for the benefit of the company and its shareholders); *Lynn v. Tennessee Commerce Bancorp, Inc., et al.*, No. 3:12-cv-01137 (M.D. Tenn.) ($2.6 million settlement); *In re ClubCorp Holdings Shareholder Litigation*, No. A-17-758912-B (D. Nev.) ($5 million settlement and corporate therapeutics). Mr. Kaufman

also argued the appeal in *In re Comverse Technology, Inc. Derivative Litig.*, 56 A.D.3d 49 (1st Dep't 2008) which led to the seminal New York Appellate Division opinion clarifying the standards of demand futility in New York and *In re Topps Company, Inc. Shareholders Litigation* which resulted in a 2007 decision vindicating the rights of shareholders to pursue claims in the most relevant forum notwithstanding the state of incorporation. Mr. Kaufman has also lectured and taught in the subjects of corporate governance as well as transactional and derivative litigation.

In addition, Mr. Kaufman has represented many corporate clients in complex commercial matters, including complex copyright royalty class actions against music companies. *Puckett v. Sony Music Entertainment*, No. 108802/98 (Sup. Ct. N.Y. Cnty. ); *Shropshire v. Sony Music Entertainment*, No. 06-3252 (S.D.N.Y.), and *The Youngbloods v. BMG Music*, No. 07-2394 (S.D.N.Y.). In *Mich II Holdings LLC v. Schron*, No. 600736/10 (Sup. Ct. N.Y. Cnty.), Mr. Kaufman represented certain prominent real estate investors and successfully moved to dismiss all claims against those defendants. Mr. Kaufman has also represented clients in arbitrations and litigations involving oppressed minority shareholders in closely held corporations.

Currently, Mr. Kaufman represents clients in a wide array of matters, including shareholders of a large cooperative complex alleging breach of fiduciary duty by the board of directors and property manager; purchasers of New York City taxi medallions in a class action pending in New York Supreme Court, Queens County; a New York art gallery in an action against several European insurers over insurance coverage for paintings seized while on exhibit; and shareholders of Saks, Inc. alleging that the board of directors and its investment advisor sold the company for inadequate consideration. *Cohen v. Saks*, 169 A.D.3d 51 (1st Dep't 2019).

Prior to joining Wolf Haldenstein, and prior to joining Milberg LLP in 1998, Mr. Kaufman was a Court Attorney for the New York State Supreme Court, New York County (1988-1990) and Principal Law Clerk to Justice Herman Cahn of the Commercial Division of the New York State Supreme Court, New York County (1990-1998).

Mr. Kaufman is an active member of the Commercial and Federal Litigation Section of the New York State Bar Association, the International Association of Jewish Lawyers and Jurists and the Jewish Lawyers Guild in which he serves as a Vice President. Mr. Kaufman was the Dinner Chair at the Jewish Lawyers Guild Annual Dinner in 2017, 2018, and 2019. Mr. Kaufman is a member of the Board of Trustees of Congregation

Beth Sholom in Lawrence, NY and was a member of the Board of Trustees of the Hebrew Academy of the Five Towns and Rockaways from 2015-2019.

Mr. Kaufman has been recognized by SuperLawyers® each year since 2012.

**THOMAS H. BURT**: ***admitted*:** New York; U.S. District Courts for the Southern and Eastern Districts of New York, Eastern District of Michigan. ***Education***: American University (B.A. 1993); New York University (J.D. 1997). Articles Editor with New York University Review of Law and Social Change. Mr. Burt is a litigator with a practice concentrated in securities class actions and complex commercial litigation. After practicing criminal defense with noted defense lawyer Jack T. Litman for three years, he joined Wolf Haldenstein, where he has worked on such notable cases as *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS) (S.D.N.Y.) (a novel and sweeping amalgamation of over 300 class actions which resulted in a recovery of $586 million); *In re MicroStrategy Securities Litigation*, No. 00-473-A (E.D. Va.) (recovery of $192 million); *In re DRAM Antitrust Litigation*, No. 02-cv-1486 (PJH) (N.D. Cal.) (antitrust case resulting in $315 million recovery); *In re Computer Associates 2002 Class Action Securities Litigation*, No. 02-cv-1226 (TCP) (E.D.N.Y.)(settled, together with a related fraud case, for over $133 million); *K.J. Egleston L.P. v. Heartland Industrial Partners, et al.*, 2:06-13555 (E.D. Mich.) (recovery included personal assets from former Reagan Administration budget director David A. Stockman); and *Parker Friedland v. Iridium World Communications, Ltd.*, 99-1002 (D.D.C.)(recovery of $43.1 million). Mr. Burt has spoken on several occasions to investor and activist groups regarding the intersection of litigation and corporate social responsibility. Mr. Burt writes and speaks on both securities and antitrust litigation topics. He has served as a board member and officer of the St. Andrew's Society of the State of New York, New York's oldest charity.

**RACHELE R. BYRD**: ***admitted***: California; U.S. District Courts for the Southern, Northern, Central and Eastern Districts of California, the Northern District of Illinois, and the Eastern District of Michigan; U.S. Court of Appeals for the Ninth Circuit; U.S. Supreme Court. ***Education***: Point Loma Nazarene College (B.A., 1994); University of California, Hastings College of the Law (J.D. 1997). Member: State Bar of California. Ms. Byrd is located in the firm's San Diego office and practices corporate derivative and class action litigation including securities, consumer, privacy and security, antitrust, employment and general corporate and business litigation. Ms. Byrd has played a significant role in litigating numerous class and derivative actions, including *Engquist v. City of Los Angeles*, No. BC591331 (Los Angeles Super. Ct.) (gas tax refund action that recently settled for $32.5 million and injunctive relief, valued at a minimum of $24.5

million over 3 years and $81.8 million over 10 years, following certification of the class and on the eve of a hearing on the parties' cross-motions for summary judgment); *Ardon v. City of Los Angeles*, 52 Cal.4th 241 (2011) (telephone tax refund action against the City of Los Angeles that settled for $92.5 million after a successful appeal and a groundbreaking opinion from the California Supreme Court); *McWilliams v. City of Long Beach*, Cal. Supreme Ct. No. S202037, 2013 Cal. LEXIS 3510 (April 25, 2013) (telephone tax refund action that settled for $16.6 million after a successful appeal and another groundbreaking opinion from the California Supreme Court); *Granados v. County of Los Angeles*, BC361470 (Los Angeles Super. Ct.) (telephone tax refund action that settled for $16.9 million following class certification and a successful appeal); *In re: Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-0291 (N.D. Cal.) (member of Plaintiffs' Steering Committee; settled for $85 million); *In re Robinhood Outage Litigation*, No. 20-cv-01626-JD (N.D. Cal.) (member of Plaintiffs' Executive Committee); *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR (N.D. Cal.) (ongoing antitrust class action on behalf of consumers against Apple over its monopolization of the iOS applications aftermarket that secured a favorable opinion in the U.S. Supreme Court: *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)); *Defrees v. Kirkland, et al.*, 11-04272 (JLS) (C.D. Cal.) ($12.2 million settlement reached in derivative action on the eve of trial); *Bokelman et al. v. FCH Enterprises, Inc.*, No. 18-00209-RJB-RLP (D. Haw.) (settled data breach class action; final approval granted May 3, 2019); *Carrera Aguallo, et al. v. Kemper Corp., et al.*, No. 1:21-cv-01883 (N.D. Ill.) (settled data breach class action where Ms. Byrd was Interim Co-Lead Counsel; final approval granted March 18, 2022); *In re: Scripps Health Data Incident Litigation*, San Diego Super. Ct. No. 37-2021-00024103-CU-BT-CTL (ongoing data breach class action where Wolf Haldenstein is co-lead counsel); *Hinds v. Community Medical Centers, Inc.*, No. STK-CV-UNPI-2021-10404 (San Joaquin Super. Ct.) (ongoing data breach class action where Wolf Haldenstein is co-lead counsel); *Christofferson v. Creation Entertainment, Inc.*, No. 19STCV11000 (Los Angeles Super. Ct.) (settled data breach class action; final approval granted on June 29, 2021); *In re: Hanna Andersson and salesforce.com Data Breach Litig.*, No. 3:20-cv-00812-EMC (N.D. Cal.) (settled data breach class action; final approval granted on June 25, 2021); *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534-RGK-E (C.D. Cal.) (settled data breach class action; final approval granted on December 6, 2021); *Rossi v. Claire's Stores*, No. 1:20-cv-05090 (N.D. Ill) (settled data breach class action; preliminary approval granted March 28, 2022); *Riggs v. Kroto, Inc., D/B/A/ iCanvas*, No. 1:20-cv-5822 (N.D. Ill.) (settled data breach class action; final approval granted on October 29, 2021); *Thomas v. San Diego Family Care*, San Diego Super. Ct. No. 37-2021-00026758-CU-BT-CTL (settled data breach class action; preliminary approval granted April 13, 2022); *Miller v. CSI Financial, LLC*, No. 37-

2021-00030263-CU-BT-CT (San Diego Super. Ct.) (recently settled data breach class action); *Fields v. The Regents of the University of California*, Alameda Superior Court No. RG21107152 (ongoing data breach class action); *In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (ongoing); *In re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (settled data breach class action; preliminary approval granted March 3, 2022).

**MATTHEW M. GUINEY**: ***admitted:*** New York State; United States Supreme Court; United States Courts of Appeals for the Second, Third and Ninth Circuits; U.S. District Courts for the Southern and Eastern District of New York and numerous others. ***Education*:** The College of William & Mary (B.A. in Government and Economics 1998); Georgetown University Law Center (J.D. 2002). Mr. Guiney's primary areas of practice are securities class actions under the Securities Act of 1933 and the Exchange Act of 1934, complex commercial litigation, Employee Retirement Income Security Act (ERISA) actions on behalf of plan participants, Fair Labor Standards Act of 1938 actions concerning overtime payment, and fiduciary duty actions under various state laws. Mr. Guiney has helped recover hundreds of millions of dollars for victims of corporate fraud and abuse in federal and state litigation across the country. Mr. Guiney was on the merits briefs at the United States Supreme Court on behalf of the plaintiffs/respondents in *Apple Inc. v. Pepper*, No. 17-204, 587 U.S. ___ (2019) where the Court affirmed plaintiffs' antitrust standing under *Illinois Brick*. Mr. Guiney also represented plaintiffs/respondents at the United States Supreme Court in *China Agritech v. Resh*, 584 U.S. __ (2018), where the Court addressed tolling in the class action context. Mr. Guiney also initially served as counsel of record and briefed opposition to petition for writ of certiorari, and argued and achieved a precedential reversal of motion to dismiss in a published opinion at the United States Court of Appeals for the Ninth Circuit in *Resh v. China Agritech*, No. 15-5543, 2017 U.S. App. LEXIS 9029 (9th Cir. May 24, 2017).

Some of Mr. Guiney's notable results on behalf of investors include: *Mallozzi v. Industrial Enterprises of America, Inc., et al.*, 1:07-cv-10321-DLC (S.D.N.Y.) ($3.4 million settlement on behalf of shareholders); *In re Luxottica Group S.p.A. Securities Litigation*, No. CV 01-3285 (JBW) (MDG) (E.D.N.Y.) ($18.5 million settlement on behalf of shareholders); *In re MBNA Corp. ERISA Litigation*, Master Docket No. 05-429 (GMS), (D. Del) ($4.5 million settlement on behalf of plan participants).

**MALCOLM T. BROWN**: ***admitted:*** United States District Courts for the Southern and Eastern Districts of New York, District of New Jersey and Eastern District of

Pennsylvania; United States Court of Appeals for the Second Circuit. ***Education:*** University of Pennsylvania (B.A., Political Science 1988) and Rutgers University School of Law (J.D. 1994). Mr. Brown's primary areas of practice are securities, derivative, M&A litigation and consumer class actions. Recent notable decisions include: *Johnson v. Ford Motor Co.*, 309 F.R.D. 226 (S.D. W. Va. 2015); *Thomas v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 43268 (D.S.C. Mar. 31, 2014); *In re Merkin Sec. Litig*., 2015 U.S. Dist. LEXIS 178084 (S.D.N.Y. Aug. 24, 2015). Prior to joining Wolf Haldenstein, Mr. Brown was a business litigation attorney who represented financial institutions, corporations and partnerships and advised clients on business disputes, reorganizations, dissolutions and insurance coverage matters. Notable decisions include: *Garment v. Zoeller*, 2001 U.S. Dist. LEXIS 20736 (S.D.N.Y. June 19, 2001), *aff'd* 2002 U.S. App. LEXIS 9966 (2d Cir. May 24, 2002); *Bainton v. Baran*, 731 N.Y.S.2d 161 (1st Dep't 2001).

## Special Counsel

**Justice Herman Cahn**: ***admitted:*** New York. ***Education***: Harvard Law School and a B.A. from City College of the City University of New York. Justice Herman Cahn was first elected as Judge of the Civil Court of the City of New York in 1976. He subsequently served as an Acting Justice of the Supreme Court from 1980 until 1992, when he was elected to the Supreme Court. Throughout his decades on the bench, he principally handled civil cases, with the exception of 1981 until 1987, when he presided over criminal matters. Justice Cahn was instrumental in the creation of, and a founding Justice in, the Commercial Division within the New York State Supreme Court. He served as a Justice of the Commercial Division from its inception in 1993.

Among his most notable recent cases are the consolidated cases stemming from the Bear Stearns merger with JP Morgan (*In re Bear Stearns Litigation*); litigation regarding the America's Cup Yacht Race (*Golden Gate Yacht Club v. Société Nautique de Genève*); litigation stemming from the attempt to enjoin the construction of the new Yankee Stadium (*Save Our Parks v. City of New York*); and the consolidated state cases regarding the rebuilding of the World Trade Center site (*World Trade Center Properties v. Alliance Insurance; Port Authority v. Alliance Insurance*).

Justice Cahn is a member of the Council on Judicial Administration of the Association of the Bar of the City of New York. He has also recently been appointed to the Character and Fitness Committee of the Appellate Division, First Department. He is on the Register of Mediators for the United States Bankruptcy Court, Southern and Eastern Districts of New York.

Before ascending the bench, Justice Cahn practiced law in Manhattan. He was first admitted to the New York bar in 1956. He is admitted to practice in numerous courts, including the New York State courts, the Southern District of New York and the United States Supreme Court.

## Of Counsel

**Daniel W. Krasner**: ***admitted:*** New York; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Central District of Illinois, and Northern District of Michigan. ***Education:*** Yale Law School (LL.B., 1965); Yeshiva College (B.A., 1962). Mr. Krasner is of counsel at Wolf Haldenstein. He began practicing law with Abraham L. Pomerantz, generally credited as the "Dean of the Class Action Bar." He founded the Class Litigation Group at Wolf Haldenstein in 1976.

Mr. Krasner received judicial praise for his class action acumen as early as 1978. *See, e.g.*, *Shapiro v. Consolidated Edison Co.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 96,364 at 93,252 (S.D.N.Y. 1978) ("in the Court's opinion the reputation, skill and expertise of . . . [Mr.] Krasner, considerably enhanced the probability of obtaining as large a cash settlement as was obtained"); *Steiner v. BOC Financial Corp*., [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 97,656, at 98,491.4, (S.D.N.Y. 1980) ("This Court has previously recognized the high quality of work of plaintiffs' lead counsel, Mr. Krasner"). The New York Law Journal referred to Mr. Krasner as one of the "top rank plaintiffs' counsel" in the securities and class action fields. In connection with a failed 1989 management buyout of United Airlines, Mr. Krasner testified before Congress.

More recently, Mr. Krasner has been one of the lead attorneys for plaintiffs in some of the leading Federal multidistrict cases in the United States, including the IPO Litigation in the Southern District of New York, the Mutual Fund Market Timing Litigation in the District of Maryland, and several Madoff-related litigations pending in the Southern District of New York. Mr. Krasner has also been lead attorney in several precedent-setting shareholder actions in Delaware Chancery Court and the New York Court of Appeals, including *American International Group, Inc. v. Greenberg*, 965 A.2d 763 (Del. Ch. 2009) and the companion certified appeal, *Kirschner v. KPMG LLP*, Nos. 151, 152, 2010 N.Y. LEXIS 2959 (N.Y. Oct. 21, 2010); *Teachers' Retirement System of Louisiana and City of New Orleans Employees' Retirement System, derivatively on behalf of nominal defendant American International Group, Inc., v. PricewaterhouseCoopers LLP*, No. 152 (New York, October 21, 2010); *In re CNX Gas Corp. S'holders Litig.*, C.A. No. 5377-VCL, 2010 Del. Ch.

LEXIS 119 (Del. Ch., May 25, 2010); *In re CNX Gas Corp. S'holders Litig.*, C.A. No. 5377-VCL, 2010 Del. Ch. LEXIS 139, (Del. Ch. July 5, 2010), appeal refused, 2010 Del. LEXIS 324, 2010 WL 2690402 (Del. 2010).

Mr. Krasner has lectured at the Practicing Law Institute; Rutgers Graduate School of Business; Federal Bar Council; Association of the Bar of the City of New York; Rockland County, New York State, and American Bar Associations; Federal Bar Council, and before numerous other bar, industry, and investor groups.

**PETER C. HARRAR**: ***admitted; New York;*** United States Court of Appeals for the Fourth Circuit and the United States District Courts for the Southern and Eastern Districts of New York. ***Education***: Columbia Law School (J.D. 1984); Princeton University, Phi Beta Kappa, *magna cum laude.* Mr. Harrar is of counsel at the firm and has extensive experience in complex securities and commercial litigation on behalf of individual and institutional clients.

He has represented investment funds, hedge funds, insurance companies and other institutional investors in a variety of individual actions, class actions and disputes involving mortgage-backed securities and derivative instruments. Examples include *In re EMAC Securities Litigation*, a fraud case concerning private placements of securitized loan pools, and *Steed Finance LDC v. LASER Advisors, Inc.*, a hybrid individual and class action concerning the mispricing of swaptions.

Over the years, Mr. Harrar has also served as lead or co-lead counsel in numerous securities class and derivative actions throughout the country, recovering hundreds of millions of dollars on behalf of aggrieved investors and corporations. Recent examples are some of the largest recoveries achieved in resolution of derivative actions, including *American International Group Consolidated Derivative Litigation*) ($90 million), and *Bank of America/Merrill Derivative Litigation* ($62.5 million).

**JEFFREY G. SMITH**: ***admitted:*** New York; California; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits; U.S. Tax Court; U.S. District Courts for the Southern and Eastern Districts of New York, Southern, Central and Northern Districts of California and the Districts of Colorado and Nebraska. ***Education***: Woodrow Wilson School of Public and International Affairs, Princeton University (M.P.A., 1977); Yale Law School (J.D., 1978); Vassar College (A.B., *cum laude generali*, 1974). At Yale Law School, Mr. Smith was a teaching assistant for the Trial Practice course and a student supervisor in the Legal Services Organization, a clinical program. Member: The Association of the

Bar of the City of New York; New York State and American (Section on Litigation) Bar Associations; State Bar of California (Member: Litigation Section); American Association for Justice. Mr. Smith has frequently lectured on corporate governance issues to professional groups of Fund trustees and investment advisors as well as to graduate and undergraduate business student groups, and has regularly served as a moot court judge for the A.B.A. and at New York University Law School. Mr. Smith has substantial experience in complex civil litigation, including class and derivative actions, tender offer, merger, and takeover litigation. Mr. Smith is rated "AV" by Martindale Hubble and, since its inception in 2006, has been selected as among the top 5% of attorneys in the New York City metropolitan area chosen to be included in the Super Lawyers Magazine.

**ROBERT ALTCHILER:** ***Education***: State University of New York at Albany (B.S., Finance/Marketing,1985); The George Washington University (JD, 1988).

Robert's practice focuses primarily in the areas of White Collar criminal investigations, corporate investigations, entertainment, litigation, and general corporate counseling. Robert's diverse practice had developed as a result of his extensive international business contacts and relationships in the entertainment world, in the United States and the United Kingdom. Robert had successfully defended cases and resolved matters spanning the most complex entertainment controversies, to virtually any imaginable complex criminal or corporate matter.

Robert has successfully defended individuals and corporations in a wide array of multifaceted investigations in areas such as mortgage fraud, securities fraud, tax fraud, prevailing wage, money laundering, Bank Secrecy Act, embezzlement, bank and wire fraud, theft of trade secrets, criminal copyright infringement, criminal anti-counterfeiting, Foreign Corrupt Practices Act (FCPA), International Traffic In Arms Regulations (ITAR), racketeering, continuing criminal enterprises, and circumvention of trade restrictions, among many others. Robert also specializes in non-criminal investigations relating to various topics, including finding money allegedly being hidden by individuals, ascertaining the identities of individuals actually involved in corporate matters (when a client believes those identities are being concealed), and running undercover "sting" operations as part of civil and commercial litigation support.

Because of Robert's significant business contacts in the United Kingdom, and the United States, he is frequently called upon to assist clients in various forms of complex business

matters, both domestic and international. Robert's clients look to him as a trusted, experienced, creative, fearless hand who has demonstrated an ability to navigate even the most difficult and desperate situations. Robert prides himself on his ability to develop aggressive creative winning strategies for his clients even when the clients believe their circumstances are hopeless.

In 1988, Robert started his legal career as a prosecutor in New York City, where he prosecuted a wide array of cases and headed up a variety of different investigations. As a prosecutor, he presented hundreds of cases to grand juries, and ran numerous investigations. In addition to trying several dozen serious cases, ranging from murder to fraud to narcotics violations, he also ran wiretap and grand jury investigations involving money laundering and other financial crimes, as well as a wiretap and investigation concerning a plot to assassinate a prominent NYC judge. Upon leaving the government, Robert began focusing on defending individuals and entities under government investigation and/or indictment. Early in private practice he defended numerous law enforcement officers under administrative and criminal scrutiny, in courts and administrative proceedings. His particular area of practice permitted Robert to further develop and strengthen his already close ties to law enforcement.

In addition to his practice, Robert has been an adjunct law professor at Pace University Law School since 1998, where he teaches trial advocacy, a course designed to teach law students how to be trial lawyers via a curriculum including the mock trial of a murder case. Robert is also a faculty member of the EATS Program run by Stetson Law School, an acclaimed program designed to teach law school trial advocacy professors creative and innovative pedagogical methods. Robert has also been a featured participant and lecturer at Cardozo Law School's acclaimed Intensive Trial Advocacy Program in New York City, and has also taught at Yale Law School. Robert's trial advocacy teaching requires him to constantly integrate new developments in communication theory and trial techniques into his teaching methods. Given the changing way students (and prospective jurors) communicate and digest information (via Twitter, Instagram and Snapchat, for example) Robert is a recognized leader at integrating neuroscientific principles into his teaching. By actively participating in the weekly trails his students conduct in class, and by frequently demonstrating methods, he is able to continually adapt his own communication skills and integrate cutting-edge developments into his own practice.

Robert is Special Advisor to the Dean of the Mt. Sinai School of Nursing, an adjunct professor at the school, a member of the Board of Trustees and the Chair of the Board of

Trustees Nominations Committee. In his role as Special Advisor, Robert is tasked with counselling the Dean on innovative pedagogical methods designed to facilitate teaching Narrative Care and other topics. Robert instructs faculty on various topics, and will be teaching courses at the school in the immediate future.

Robert graduated from the George Washington University Law School (formerly, The National Law Center), where he began his career as an advocate by conducting administrative hearings and trials during his second and third year. Prior to GW, Robert graduated with honors from the Business School at the State University of New York at Albany in 1985. He is also a 1996 graduate of the National Criminal Defense College and a 1997 graduate of the National Institute for Trial Advocacy's Harvard Teacher Training Program. Robert has also made dozens of television appearances on Fox, Court TV, and Tru TV, providing legal commentary on televised trials, and participating in discussions related to pertinent issues.

**JENNY YOUNG DU PONT:** ***admitted***: New York; Massachusetts; District of Columbia; U.S. Supreme Court. ***Education***: Princeton University (A.B. *cum laude*); Georgetown University Law Center/School of Foreign Service (J.D./M.S.F.S. *magna cum laude*); Order of the Coif; *Georgetown Law Journal*, Notes and Comments Editor.

Ms. du Pont has extensive experience representing domestic and international companies ranging in size from small privately-held firms to large public companies in a variety of corporate, investment, banking, insurance, finance, and employment matters. Ms. du Pont began her legal career at two AmLaw 100 firms in Washington, D.C. and London, U.K. and a decade later moved into in-house counsel roles, first with Plymouth Rock Assurance Corporation in Boston, MA, and later with Millennium Management, LLC in New York. Ms. du Pont also advises and presents on issues related to family businesses, family offices, and managing wealth transfer across generations.

In addition to her legal experience, Ms. du Pont has significant experience in the non-profit sector. Ms. du Pont was President and CEO of The Garden Conservancy in Cold Spring, New York and Executive Director of Miracle House of New York, Inc., and has acted a legal and strategic advisor to a variety of for profit and non-profit entities in New York. For more than 20 years, Ms. du Pont also has been a director, trustee, and officer for a broad range of educational, cultural, scientific, and service non-profit entities. Ms. du Pont served for a number of years as a Trustee of Phillips Exeter Academy, in Exeter, NH, and as a member and Vice Chair of the Warrant Committee

for the Town of Dover in Massachusetts. She is currently a Director of the American Friends of the British Museum and of the American Patrons of the National Galleries and Library of Scotland, serves as an Advisory Council member for the Untermyer Gardens Conservancy in Yonkers, NY and the Sing Sing Prison Museum Master Narrative Project, in Ossining, NY, and is chair of the Advisory Council for the Conservation Law Foundation in Boston, MA.

**KATE MCGUIRE**: ***admitted*:** New York; U.S. District Courts for the Southern and Eastern Districts of New York. ***Education***: University of California at Santa Cruz (B.A. 1995), Georgetown University Law Center (J.D., 1998); Member: *Georgetown Immigration Law Journal*.

Ms. McGuire has extensive experience prosecuting complex litigation. Her work encompasses consumer and data protection class actions, securities class and derivative shareholder cases and nationwide antitrust suits.

She is a member of the Firm's Consumer Protection practice group and, in that context, has worked intensively to protect classes of consumers under a range of state and federal laws. Recently, she served as a member of the co-lead counsel team in *Simerlein et al. v. Toyota Motor Corporation et al.*, 3:17-CV-01021-VAB (D. Conn.), representing more than a million owners of Sienna minivans in litigation that settled for class-wide benefits valued at between $30 and $40 million. Presently, she serves on a team representing plaintiffs in multi-district litigation against Fisher-Price and Mattel, relating to Rock 'n Play infant sleepers which are alleged to be dangerous and misleadingly marketed. She has also served as a member of the firm's lead or co-counsel teams in other consumer protection cases, including litigation based upon allegations of misrepresentations and omissions concerning the purported safety of electronic cigarettes.

Ms. McGuire has also represented plaintiffs with respect to the protection of their civil rights. For example, she represented a blind plaintiff in a suit under the Americans with Disability Act against a major trading online trading company, and represented a group of minority business owners in federal civil rights litigation concerning disparate treatment which settled for significant governance therapeutics.

**CARL MALMSTROM:** ***admitted:*** Illinois; Minnesota; United States Court of Appeals for the Seventh Circuit; Northern and Southern Districts of Illinois; Northern District of Indiana; District of Minnesota; Eastern District of Missouri; Western District of New

York. ***Education:*** University of Chicago (A.B., Biological Sciences, 1999; A.M., Social Sciences, 2001); The University of Hawai'i at Manoa (M.A., Anthropology, 2004); Loyola University Chicago School of Law (J.D., 2007). Prior to joining the firm, Mr. Malmstrom worked for the City of Chicago Department of Law in the Municipal Prosecutions Division; he is a member of the Chicago Bar Association. Mr. Malmstrom has substantial experience litigating complex class actions in several practice areas, including antitrust, consumer fraud, and data security. Representative cases in which he has represented plaintiffs include *Bokelman et al. v. FCH Enterprises, Inc.*, Case No. 1:18-cv-209 (D. Haw.), involving customers of Zippy's Restaurants in Hawaii whose personal data was stolen by hackers, *In re: Experian Data Breach Litigation*, Case No. 8:15-cv-1592 (C.D. Cal.); *Freeman-Hargis v. Taxi Affiliation Services, LLC*, Case No. 2016-CH-02519 (Cir. Ct. Cook Cty.), involving customers of several taxi services in Chicago who were unlawfully charged fees for using credit cards in taxis.

## ASSOCIATES

**PATRICK DONOVAN**: ***admitted:*** New York; U.S. District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Second and Fourth Circuits. ***Education:*** Iona College (B.A., Business Management, 2007); St. John's University School of Law (J.D. 2011). Mr. Donovan's primary areas of focus are securities, derivative and M&A litigation.

**LILLIAN GRINNELL: *admitted*:** New York; United States District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Federal Circuit. ***Education***: Bryn Mawr College (A.B., Philosophy and Political Science, 2016); New York University Law School (J.D. 2019). Prior to joining Wolf Haldenstein, Ms. Grinnell served as an Excelsior Service Fellow with the Consumer Protection and Financial Enforcement Division of the NYS Department of Financial Services.

**ROURKE DONAHUE: *admitted*:** New York. ***Education:*** University of North Carolina at Chapel Hill (B.A., Philosophy, 2017), Honors Program; Georgetown University Law Center (J.D. 2020). Prior to joining the firm, Mr. Donahue clerked for the Hon. Timothy P. Lydon, Presiding Judge of Equity, at the New Jersey Superior Court in Trenton, New Jersey. In law school, Mr. Donahue interned at the Department of Justice's Civil Division, Christie's Auction House, and Manhattan Legal Services and served as the Administrative Editor of the *Georgetown Environmental Law Review*.

**ALEX J. TRAMONTANO**: ***admitted*:** California; U.S. District Courts for the Southern, Central and Eastern Districts of California; United States Court of Appeals for the Ninth Circuit. ***Education:*** University of Massachusetts, Amherst (B.A., Political Science and Legal Studies, *cum laude*, 2008); California Western School of Law (J.D., 2011). Mr. Tramontano's primary areas of focus are securities, anti-trust, unfair and deceptive practices, civil rights and data breach related class actions. Prior to joining Wolf Haldenstein, Mr. Tramontano worked as an associate at an AmLaw 100 firm, as well as other regional law firms in southern California. Mr. Tramontano has over a decade of litigation experience defending and prosecuting complex actions on behalf of individuals and businesses in both Federal and State courts. Mr. Tramontano began his legal career as a Police Cadet at the University of Massachusetts Amherst. He went on to law school and joined the San Diego District Attorney's Office as a Certified Legal Intern before transitioning to private practice.

**OANA CONSTANTIN**: ***admitted***: California; U.S. District Court for the Central District of California. ***Education***: St. Mary's College of California (B.A. Business Management, Summa Cum Laude, 2002); Santa Clara University School of Law (J.D., 2010). Ms. Constantin's primary areas of focus are securities, anti-trust, unfair and deceptive practices, civil rights, and data breach related class actions. Prior to joining the firm, Ms. Constantin represented large corporations and well known insurers in the defense of complex claims and insurance litigation matters as part of the commercial litigation practice group at a large insurance defense firm. Ms. Constantin represented corporate clients in a variety of matters, including high-stakes products liability and securities class action litigation, as well as other complex litigation. During her time in the defense practice, Ms. Constantin obtained successful dismissal of individual defendants, and she also conducted alternative dispute resolution negotiations in order to move matters towards beneficial settlements.

## PARAPROFESSIONALS

**GREGORY STONE:** ***Education:*** University of Pennsylvania (B.S., Economics, 1979); University of California, Los Angeles (MBA, 1983). Mr. Stone is the Firm's Director of Case and Financial Analysis. He assists partners and associates in identifying and researching potential federal class action securities, derivative litigation and merger & acquisition (M&A) litigation. Mr. Stone has worked with leading securities class action firms in an analytical and investigative role for over 18 year throughout the United States, and has an extensive professional background in the accounting and investment

professions. He plays a key role in new case development, including performing investigations into potential securities fraud class actions, derivative and other corporate governance related actions. By using a broad spectrum of financial news and legal industry research tools, Mr. Stone analyzes information that helps identify and support the theories behind the firm's litigation efforts.

Wolf Haldenstein does not discriminate or tolerate harassment against any employee or applicant because of race, creed, color, national origin, sex, age, disability, marital status, sexual orientation, or alienage or citizenship status and designs its hiring practices to ensure that minority group members and women are afforded equal employment opportunities without discrimination. The Firm is in compliance with all applicable Federal, State, County, and City equal employment opportunity laws.

Wolf Haldenstein is proud of its long history of support for the rights of, and employment opportunities for, women, the disadvantaged, and minority group persons, including the participation in civil rights and voter registration activities in the South in the early 1960s by partners of the Firm; the part-time employment of disadvantaged youth through various public school programs; the varied *pro bono* activities performed by many of the Firm's lawyers; the employment of many women and minority group persons in various capacities at the Firm, including at the partner level; the hiring of ex-offenders in supported job training programs; and the use of minority and women-owned businesses to provide services and supplies to the Firm.

270 MADISON AVENUE
NEW YORK, NY 10016
TELEPHONE: 212-545-4600
TELECOPIER: 212-545-4653
WWW.WHAFH.COM

SYMPHONY TOWERS
750 B STREET, SUITE 1820
SAN DIEGO, CA 92101
TELEPHONE: 619-239-4599
TELECOPIER: 619-234-4599

111 WEST JACKSON
SUITE 1700
CHICAGO, IL 60604
TELEPHONE: 312-984-0000
TELECOPIER: 312-214-3110

Wolf Haldenstein
Legal Excellence Since 1888

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TRAVIS JAMES, et al.<br><br>*Plaintiffs*<br><br>v.<br><br>DAVACO, INC., et al.,<br><br>*Defendants*. | Case No.: 3:21-cv-02318-M<br><br>**DECLARATION OF STEVEN WEISBROT, ESQ. RE: ANGEION GROUP, LLC QUALIFICATIONS AND IMPLEMENTATION OF THE NOTICE PLAN** |

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

2. I have personal knowledge of the matters stated herein. In forming my opinions regarding notice in this action, I have drawn from my extensive class action experience, as described below.

3. I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

4. I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23* and the soon to be published George Washington Law School Best Practices Guide to Class Action Litigation.

5. I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media, and print publication in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

6. Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

7. My notice work comprises a wide range of class actions that include data breach, mass disasters, product defect, false advertising, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

8. I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

9. By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at https://www.angeiongroup.com/our_team.php.

10. As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims

processing services.

11. Angeion has extensive experience in class action administrations involving data breaches. Notable data breach cases that Angeion has administered include the following:

| Case | Case No. | Court |
|---|---|---|
| Abubaker v. Dominion Dental USA Inc. | 1:19-cv-01050 | E.D. Va. |
| Adkins v. Facebook Inc. | 3:18-cv-05982 | N.D. Cal. |
| Alexander et al. v. Otis R Bowen Center for Human Services Inc. | 43D04-2104-CT-000019 | Ind. Super. Ct. |
| Baldwin v. James Mitchell PhD et al. | CV-2018-900302.00 | Ala. Cir. Ct. |
| Carr et al. v. Beaumont Health et al. | 2020-181002-NZ | Mich. Cir. Ct. |
| Clark v. Experian Information Solutions, Inc. | 3:16-cv-00032 | E.D. Va. |
| Cotter v. Checkers Drive-In restaurants Inc. | 8:19-cv-01386 | M.D. Fla. |
| Culbertson v. Deloitte Consulting LLP | 1:20-cv-03962 | S.D.N.Y. |
| Devine v. Health Aid of Ohio Inc. | CV-21-948117 | Ohio Ct. Com. Pl. |
| Friske v Bonnier Corporation | 2:16-cv-12799 | E.D. Mich. |
| Gaston et al. v. FabFitFun Inc. | 2:20-cv-09534 | C.D. Cal. |
| Goetz v. Benefit Recovery Specialists Inc. | 2020CV000550 | Wis. Cir. Ct. |
| Heath et al. v. Insurance Technologies Corp. and Zywave Inc. | 3:21-cv-01444 | N.D. Tex. |
| Hough v. Navistar Inc. | 2021L001161 | Ill. Cir. Ct. |
| Hozza v. PrimoHoagies Franchising Inc. | 1:20-cv-04966 | D.N.J. |
| In re: 21st Century Oncology Customer Data Security Breach Litigation | 8:16-md-02737 | M.D. Fla. |
| In re: Ashley Madison Customer Data Security Breach Litigation | 4:15-md-02669 | E.D. Mo. |
| In re: Citrix Data Breach Litigation | 0:19-cv-61350 | S.D. Fla. |
| In re: Google Plus Profile Litigation | 5:18-cv-06164 | N.D. Cal. |
| In re: Hanna Andersson and Salesforce.com Data Breach Litigation | 3:20-cv-00812 | N.D. Cal. |
| In re: Herff Jones Data Breach Litigation | 1:21-cv-01329 | S.D. Ind. |
| In re: Home Depot, Inc., Customer Data Security Breach Litigation | 1:14-md-02583 | N.D. Ga. |
| Llamas et al. v. TrueFire LLC and TrueFire Inc. | 8:20-cv-00857 | M.D. Fla. |
| Madrid et al. v. Golden Valley Health Centers | 20-CV-01484 | Cal. Super. Ct. |
| McKenzie v Allconnect Inc. | 5:18-cv-00359 | E.D. Ky. |
| Nelson et al. v. Idaho Central Credit Union | CV03-20-00831/CV03-20-03221 | Idaho Jud. Dist. |
| Newman v. JM Bullion Inc. | BCV-21-100436 | Cal. Super. Ct. |
| Pagoaga v Stephens Institute d/b/a Academy of Art University | CGC 16-551952 | Cal. Super. Ct. |
| Pygin v. Bombas LLC et al. | 4:20-cv-04412 | N.D. Cal. |
| Remijas et al. v. Neiman Marcus Group LLC | 1:14-cv-01735 | N.D. Ill. |
| Riggs v. Kroto Inc., d/b/a iCanvas | 1:20-cv-05822 | N.D. Ill. |

| | | |
|---|---|---|
| Rivera v Aimbridge Hospitality, LLC | 2018-CA-7870 | Fla. Cir. Ct. |
| Sackin, et al. v. TransPerfect Global, Inc. | 1:17-cv-01469 | S.D.N.Y. |
| Slos v. Select Health Network Inc. | 71D05-2002-PL-000060 | Ind. Super. Ct. |

12. This declaration will describe the Notice Plan for the Class that, if approved by the Court, Angeion will implement in this matter, including the considerations that informed the development of the plan and why we believe it will provide due process to Class Members. In my professional opinion, the proposed Notice Plan described herein is the best practicable notice under the circumstances and fulfills all due process requirements, fully comporting with Fed. R. Civ. P. 23.

## OVERVIEW OF THE NOTICE PLAN

13. The proposed Notice Plan provides for individual direct notice via email and/or mail to all reasonably identifiable Class Members, combined with implementation of a dedicated settlement website and toll-free telephone line where Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

## DIRECT NOTICE

### Email Notice

14. The direct notice effort includes sending notice via email to Class Members for whom valid email addresses are provided to Angeion.

15. As an initial matter, Angeion designs the email notice to avoid many common "red flags" that might otherwise cause a potential Class Members' spam filter to block or identify the email notice as spam. For instance, Angeion does not include attachments to the email notice because attachments are often interpreted by various Internet Service Providers ("ISP") as spam. Rather, in accordance with industry best practices, Angeion includes a link to all operative documents so that Class Members can easily access this information.

16. Angeion will employ additional methods to help ensure that as many Class Members as possible receive notice via email. Specifically, prior to distributing email notice, Angeion will engage in an email updating process to help ensure the accuracy of recipient email addresses. Angeion also reviews email addresses for mis-transcribed characters and performs other hygiene, as appropriate.

17. Angeion also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, Angeion, after an approximate 24-72-hour rest period, which allows any temporary block at the ISP level to expire, causes a second round of email noticing to continue to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery.

**Mailed Notice**

18. Angeion will also send direct postcard Notice via first-class U.S. mail, postage pre-paid, to Class Members for whom a mailing address is provided and whose email notice could not be delivered.

19. In administering the mailed notice portion of the Notice Plan in this action, Angeion will employ the best practices described below to increase the deliverability rate of the mailed notices.

20. Angeion will cause the mailing address information for members of the Class to be updated utilizing the National Change of Address ("NCOA") database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS.

21. Notices returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS and the class member database will be updated accordingly.

22. Notices returned to Angeion by the USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc. to locate updated addresses.

23. For any Class Members where a new address is identified through the skip trace process, the class member database will be updated with the new address information and a Notice will be re-mailed to that address.

**Reminder Notices**

24. Angeion will cause reminder notices to be sent via email <u>and</u> mail to Class Members during the claim filing period.

## SETTLEMENT WEBSITE & TOLL-FREE TELEPHONE SUPPORT

25. The Notice Plan will also implement the creation of a case-specific website, where Class Members can easily view general information about this class action Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. The Settlement Website will be designed to be user-friendly and make it easy for Class Members to find information about the case. The Settlement Website will also have a "Contact Us" page whereby Class Members can send an email with any additional questions to a dedicated email address. Likewise, Class Members will also be able to submit a claim form online via the Settlement Website. The Settlement Website will also allow Class Members to submit an opt-out request online.

26. A toll-free hotline devoted to this case will be implemented to further apprise Class Members of their rights and options pursuant to the terms of the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week. Additionally, Class Members will be able to request a copy of the Long Notice or Claim Form via the toll-free hotline. Class Members can also speak with a live agent during normal business hours.

## NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005

27. Within ten days of the filing of the Settlement Agreement with this Court, Angeion will cause notice to be disseminated to the appropriate state and federal officials pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. §1715.

## CONCLUSION

28. The Notice Plan outlined above includes direct notice to all reasonably identifiable Class Members via email and/or mail, combined with the implementation of a dedicated settlement

website and toll-free hotline to further inform Class Members of their rights and options in the Settlement.

29. In my professional opinion, the Notice Plan described herein will provide full and proper notice to Class Members before the claims, opt-out, and objection deadlines. Moreover, it is my opinion that Notice Plan is the best notice that is practicable under the circumstances, fully comports with due process and Fed. R. Civ. P. 23. After the Notice Plan has concluded, Angeion will provide a final report verifying its effective implementation to this Court.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: August 25, 2022

STEVEN WEISBROT

# EXHIBIT A



# INNOVATION

## IT'S PART OF OUR DNA

class action | mass tort | legal noticing | litigation support

ANGEION GROUP

Changing the Rules

# Judicial Recognition

© Angeion Group, LLC



***IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION***

**Case No. 5:18-md-02827**

The Honorable Edward J. Davila, United States District Court, Northern District of California (March 17, 2021): Angeion undertook a comprehensive notice campaign…The notice program was well executed, far-reaching, and exceeded both Federal Rule of Civil Procedure 23(c)(2)(B)'s requirement to provide the "best notice that is practicable under the circumstances" and Rule 23(e)(1)(B)'s requirement to provide "direct notice in a reasonable manner."

***IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION***

**Case No. 1:20-cv-04699**

The Honorable John Z. Lee, United States District Court, Northern District of Illinois (October 1, 2021): The Court approves, as to form and content, the proposed Class Notices submitted to the Court. The Court finds that the Settlement Class Notice Program outlined in the Declaration of Steven Weisbrot on Settlement Notices and Notice Plan (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed settlement; (iii) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and (iv) meets all requirements of applicable law, Federal Rule of Civil Procedure 23, and due process.

***IN RE: GOOGLE PLUS PROFILE LITIGATION***

**Case No. 5:18-cv-06164**

The Honorable Edward J. Davila, United States District Court, Northern District of California (January 25, 2021): The Court further finds that the program for disseminating notice to Settlement Class Members provided for in the Settlement, and previously approved and directed by the Court (hereinafter, the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and such Notice Program, including the approved forms of notice, is reasonable and appropriate and satisfies all applicable due process and other requirements, and constitutes best notice reasonably calculated under the circumstances to apprise Settlement Class Members…

***IN RE: FACEBOOK INTERNET TRACKING LITIGATION***

**Case No. 5:12-md-02314**

The Honorable Edward J. Davila, United States District Court, Northern District of California (March 31, 2022): The Court approves the Notice Plan, Notice of Proposed Class Action Settlement, Claim Form, and Opt-Out Form, which are attached to the Settlement Agreement as Exhibits B-E, and finds that their dissemination substantially in the manner and form set forth in the Settlement Agreement meets the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Actions, the effect of the proposed Settlement (including the releases contained therein), the anticipated Motion for a Fee and Expense Award and for Service Awards, and their rights to participate in, opt out of, or object to any aspect of the proposed Settlement.

Case 3:21-cv-02318-M Document 30-1 Filed 08/26/22 Page 183 of 201 PageID 484

***CITY OF LONG BEACH v. MONSANTO COMPANY***

**Case No. 2:16-cv-03493**

The Honorable Fernando M. Olguin, United States District Court, Central District of California (March 14, 2022): The court approves the form, substance, and requirements of the class Notice, (Dkt.278-2, Settlement Agreement, Exh. I). The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

***STEWART v. LEXISNEXIS RISK DATA RETRIEVAL SERVICES, LLC***

**Case No. 3:20-cv-00903**

The Honorable John A. Gibney Jr., United States District Court, Eastern District of Virginia (February 25, 2022): The proposed forms and methods for notifying the proposed Settlement Class Members of the Settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to notice...Based on the foregoing, the Court hereby approves the notice plans developed by the Parties and the Settlement Administrator and directs that they be implemented according to the Agreement and the notice plans attached as exhibits.

***WILLIAMS v. APPLE INC.***

**Case No. 3:19-cv-0400**

The Honorable Laurel Beeler, United States District Court, Northern District of California (February 24, 2022): The Court finds the Email Notice and Website Notice (attached to the Agreement as Exhibits 1 and 4, respectively), and their manner of transmission, implemented pursuant to the Agreement (a) are the best practicable notice, (b) are reasonably calculated, under the circumstances, to apprise the Subscriber Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed settlement, (c) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice, and (d) meet all requirements of applicable law.

***CLEVELAND v. WHIRLPOOL CORPORATION***

**Case No. 0:20-cv-01906**

The Honorable Wilhelmina M. Wright, United States District Court, District of Minnesota (December 16, 2021): It appears to the Court that the proposed Notice Plan described herein, and detailed in the Settlement Agreement, comports with due process, Rule 23, and all other applicable law. Class Notice consists of email notice and postcard notice when email addresses are unavailable, which is the best practicable notice under the circumstances...The proposed Notice Plan complies with the requirements of Rule 23, Fed. R. Civ. P., and due process, and Class Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines above.

Case 3:21-cv-02318-M Document 38-1 Filed 08/26/22 Page 184 of 201 PageID 485



***RASMUSSEN v. TESLA, INC. d/b/a TESLA MOTORS, INC.***

**Case No. 5:19-cv-04596**

The Honorable Beth Labson Freeman, United States District Court, Northern District of California (December 10, 2021): The Court has carefully considered the forms and methods of notice to the Settlement Class set forth in the Settlement Agreement ("Notice Plan"). The Court finds that the Notice Plan constitutes the best notice practicable under the circumstances and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and the requirements of any other applicable law, such that the terms of the Settlement Agreement, the releases provided for therein, and this Court's final judgment will be binding on all Settlement Class Members.

***CAMERON v. APPLE INC.***

**Case No. 4:19-cv-03074**

The Honorable Yvonne Gonzalez Rogers, United States District Court, Northern District of California (November 16, 2021): The parties' proposed notice plan appears to be constitutionally sound in that plaintiffs have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.

***RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS***

**Case No. 2:18-cv-07241**

The Honorable Christina A. Snyder, United States District Court, Central District of California (November 12, 2021): The Court approves the publication notice plan presented to this Court as it will provide notice to potential class members through a combination of traditional and digital media that will consist of publication of notice via press release, programmatic display digital advertising, and targeted social media, all of which will direct Class Members to the Settlement website…The notice plan satisfies any due process concerns as this Court certified the class under Federal Rule of Civil Procedure 23(b)(1)…

***JENKINS v. NATIONAL GRID USA SERVICE COMPANY, INC.***

**Case No. 2:15-cv-01219**

The Honorable Joanna Seybert, United States District Court, Eastern District of New York (November 8, 2021): Pursuant to Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B), the Court approves the proposed Notice Plan and procedures set forth at Section 8 of the Settlement, including the form and content of the proposed forms of notice to the Settlement Class attached as Exhibits C-G to the Settlement and the proposed procedures for Settlement Class Members to exclude themselves from the Settlement Class or object. The Court finds that the proposed Notice Plan meets the requirements of due process under the United States Constitution and Rule 23, and that such Notice Plan—which includes direct notice to Settlement Class Members sent via first class U.S. Mail and email; the establishment of a Settlement Website (at the URL, www.nationalgridtcpasettlement.com) where Settlement Class Members can view the full settlement agreement, the detailed long-form notice (in English and Spanish),

and other key case documents; publication notice in forms attached as Exhibits E and F to the Settlement sent via social media (Facebook and Instagram) and streaming radio (e.g., Pandora and iHeart Radio). The Notice Plan shall also include a paid search campaign on search engine(s) chosen by Angeion (e.g., Google) in the form attached as Exhibits G and the establishment of a toll-free telephone number where Settlement Class Members can get additional information—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

***NELLIS v. VIVID SEATS, LLC***

**Case No. 1:20-cv-02486**

The Honorable Robert M. Dow, Jr., United States District Court, Northern District of Illinois (November 1, 2021): The Notice Program, together with all included and ancillary documents thereto, (a) constituted reasonable notice; (b) constituted notice that was reasonably calculated under the circumstances to apprise members of the Settlement Class of the pendency of the Litigation…(c) constituted reasonable, due, adequate and sufficient notice to all Persons entitled to receive notice; and (d) met all applicable requirements of due process and any other applicable law. The Court finds that Settlement Class Members have been provided the best notice practicable of the Settlement and that such notice fully satisfies all requirements of law as well as all requirements of due process.

***PELLETIER v. ENDO INTERNATIONAL PLC***

**Case No. 2:17-cv-05114**

The Honorable Michael M. Baylson, United States District Court, Eastern District of Pennsylvania (October 25, 2021): The Court approves, as to form and content, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release form (the "Proof of Claim"), and the Summary Notice, annexed hereto as Exhibits A-1, A-2, and A-3, respectively, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice, substantially in the manner and form set forth in ¶¶7-10 of this Order, meet the requirements of Rule 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

***BIEGEL v. BLUE DIAMOND GROWERS***

**Case No. 7:20-cv-03032**

The Honorable Cathy Seibel, United States District Court, Southern District of New York (October 25, 2021): The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action…and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

***QUINTERO v. SAN DIEGO ASSOCIATION OF GOVERNMENTS***

**Case No. 37-2019-00017834-CU-NP-CTL**

The Honorable Eddie C. Sturgeon, Superior Court of the State of California, County of San Diego (September 27, 2021): The Court has reviewed the class notices for the Settlement Class and the methods for providing notice and has determined that the parties will employ forms and methods of notice that constitute the best notice practicable under the circumstances; are reasonably calculated to apprise class members of the terms of the Settlement and of their right to participate in it, object, or opt-out; are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and meet all constitutional and statutory requirements, including all due process requirements and the California Rules of Court.

***HOLVE v. MCCORMICK & COMPANY, INC.***

**Case No. 6:16-cv-06702**

The Honorable Mark W. Pedersen, United States District Court for the Western District of New York (September 23, 2021): The Court finds that the form, content and method of giving notice to the Class as described in the Settlement Agreement and the Declaration of the Settlement Administrator: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action…(c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.

***CULBERTSON T AL. v. DELOITTE CONSULTING LLP***

**Case No. 1:20-cv-03962**

The Honorable Lewis J. Liman, United States District Court, Southern District of New York (August 27, 2021): The notice procedures described in the Notice Plan are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

***PULMONARY ASSOCIATES OF CHARLESTON PLLC v. GREENWAY HEALTH, LLC***

**Case No. 3:19-cv-00167**

The Honorable Timothy C. Batten, Sr., United States District Court, Northern District of Georgia (August 24, 2021): Under Rule 23(c)(2), the Court finds that the content, format, and method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot filed on July 2, 2021, and the Settlement Agreement and Release, including notice by First Class U.S. Mail and email to all known Class Members, is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and due process.



***IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO II)***

**Case No. 6:20-md-02977**

The Honorable Robert J. Shelby, United States District Court, Eastern District of Oklahoma (August 23, 2021): The Court approves the method of notice to be provided to the Settlement Class as set forth in Plaintiffs' Motion and Memorandum of Law in Support of Motion for Approval of the Form and Manner of Class Notice and Appointment of Settlement Administrator and Request for Expedited Treatment and the Declaration of Steven Weisbrot on Angeion Group Qualifications and Proposed Notice Plan…The Court finds and concludes that such notice: (a) is the best notice that is practicable under the circumstances, and is reasonably calculated to reach the members of the Settlement Class and to apprise them of the Action, the terms and conditions of the Settlement, their right to opt out and be excluded from the Settlement Class, and to object to the Settlement; and (b) meets the requirements of Federal Rule of Civil Procedure 23 and due process.

***ROBERT ET AL. v. AT&T MOBILITY, LLC***

**Case No. 3:15-cv-03418**

The Honorable Edward M. Chen, United States District Court, Northern District of California (August 20, 2021): The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort, as well as supplemental notice via a social media notice campaign and reminder email and SMS notices; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of this Action …(d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, Due Process under the U.S. Constitution, and any other applicable law.

***PYGIN v. BOMBAS, LLC***

**Case No. 4:20-cv-04412**

The Honorable Jeffrey S. White, United States District Court, Northern District of California (July 12, 2021): The Court also concludes that the Class Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 and provide the best notice practicable under the circumstances. The Class Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the Scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court approves the Class Notice and Notice Program and the Claim Form.

***WILLIAMS ET AL. v. RECKITT BENCKISER LLC ET AL.***

**Case No. 1:20-cv-23564**

The Honorable Jonathan Goodman, United States District Court, Southern District of Florida (April 23, 2021): The Court approves, as to form and content, the Class Notice and Internet Notice submitted by the parties (Exhibits B and D to the Settlement Agreement or Notices

Case 3:21-cv-02318-M Document 38-1 Filed 08/26/22 Page 188 of 201 PageID 489

substantially similar thereto) and finds that the procedures described therein meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and provide the best notice practicable under the circumstances. The proposed Class Notice Plan -- consisting of (i) internet and social media notice; and (ii) notice via an established a Settlement Website -- is reasonably calculated to reach no less than 80% of the Settlement Class Members.

***NELSON ET AL. v. IDAHO CENTRAL CREDIT UNION***

**Case No. CV03-20-00831, CV03-20-03221**

The Honorable Robert C. Naftz, Sixth Judicial District, State of Idaho, Bannock County (January 19, 2021): The Court finds that the Proposed Notice here is tailored to this Class and designed to ensure broad and effective reach to it…The Parties represent that the operative notice plan is the best notice practicable and is reasonably designed to reach the settlement class members. The Court agrees.

***IN RE: HANNA ANDERSSON AND SALESFORCE.COM DATA BREACH LITIGATION***

**Case No. 3:20-cv-00812**

The Honorable Edward M. Chen, United States District Court, Northern District of California (December 29, 2020): The Court finds that the Class Notice and Notice Program satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances.

***IN RE: PEANUT FARMERS ANTITRUST LITIGATION***

**Case No. 2:19-cv-00463**

The Honorable Raymond A. Jackson, United States District Court, Eastern District of Virginia (December 23, 2020): The Court finds that the Notice Program…constitutes the best notice that is practicable under the circumstances and is valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of Rule 23(c)(2) and the due process requirements of the Constitution of the United States.

***BENTLEY ET AL. v. LG ELECTRONICS U.S.A., INC.***

**Case No. 2:19-cv-13554**

The Honorable Madeline Cox Arleo, United States District Court, District of New Jersey (December 18, 2020): The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Litigation, the Settlement, and the Settlement Class Members' rights to object to the Settlement or opt out of the Settlement Class, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

***IN RE: ALLURA FIBER CEMENT SIDING PRODUCTS LIABILITY LITIGATION***

**Case No. 2:19-mn-02886**

The Honorable David C. Norton, United States District Court, District of South Carolina (December 18, 2020): The proposed Notice provides the best notice practicable under the

Case 3:21-cv-02318-M Document 30-1 Filed 08/26/22 Page 189 of 201 PageID 490

circumstances. It allows Settlement Class Members a full and fair opportunity to consider the proposed settlement. The proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all members of the Settlement Class who would be bound by the settlement. There is no additional method of distribution that would be reasonably likely to notify Settlement Class Members who may not receive notice pursuant to the proposed distribution plan.

### *ADKINS ET AL. v. FACEBOOK, INC.*

**Case No. 3:18-cv-05982**

The Honorable William Alsup, United States District Court, Northern District of California (November 15, 2020): Notice to the class is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co., 399 U.S. 306, 314 (1650).*

### *IN RE: 21ST CENTURY ONCOLOGY CUSTOMER DATA SECURITY BREACH LITIGATION*

**Case No. 8:16-md-02737**

The Honorable Mary S. Scriven, United States District Court, Middle District of Florida (November 2, 2020): The Court finds and determines that mailing the Summary Notice and publication of the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form on the Settlement Website, all pursuant to this Order, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices, and fully satisfies the of due process, Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The Court further finds that all of the notices are written in plain language and are readily understandable by Class Members.

### *MARINO ET AL. v. COACH INC.*

**Case No. 1:16-cv-01122**

The Honorable Valerie Caproni, United States District Court, Southern District of New York (August 24, 2020): The Court finds that the form, content, and method of giving notice to the Settlement Class as described in paragraph 8 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

***BROWN v. DIRECTV, LLC***

**Case No. 2:13-cv-01170**

The Honorable Dolly M. Gee, United States District Court, Central District of California (July 23, 2020): Given the nature and size of the class, the fact that the class has no geographical limitations, and the sheer number of calls at issue, the Court determines that these methods constitute the best and most reasonable form of notice under the circumstances.

***IN RE: SSA BONDS ANTITRUST LITIGATION***

**Case No. 1:16-cv-03711**

The Honorable Edgardo Ramos, United States District Court, Southern District of New York (July 15, 2020): The Court finds that the mailing and distribution of the Notice and the publication of the Summary Notice substantially in the manner set forth below meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled to notice.

***KJESSLER ET AL. v. ZAAPPAAZ, INC. ET AL.***

**Case No. 4:18-cv-00430**

The Honorable Nancy F. Atlas, United States District Court, Southern District of Texas (July 14, 2020): The Court also preliminarily approves the proposed manner of communicating the Notice and Summary Notice to the putative Settlement Class, as set out below, and finds it is the best notice practicable under the circumstances, constitutes due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfies the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23.

***HESTER ET AL. v. WALMART, INC.***

**Case No. 5:18-cv-05225**

The Honorable Timothy L. Brooks, United States District Court, Western District of Arkansas (July 9, 2020): The Court finds that the Notice and Notice Plan substantially in the manner and form set forth in this Order and the Agreement meet the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

***CLAY ET AL. v. CYTOSPORT INC.***

**Case No. 3:15-cv-00165**

The Honorable M. James Lorenz, United States District Court, Southern District of California (June 17, 2020): The Court approves the proposed Notice Plan for giving notice to the Settlement Class through publication, both print and digital, and through the establishment of a Settlement Website, as more fully described in the Agreement and the Claims Administrator's affidavits (docs. no. 222-9, 224, 224-1, and 232-3 through 232-6). The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

***GROGAN v. AARON'S INC.***

**Case No. 1:18-cv-02821**

The Honorable J.P. Boulee, United States District Court, Northern District of Georgia (May 1, 2020): The Court finds that the Notice Plan as set forth in the Settlement Agreement meets the requirements of Fed. R. Civ. P. 23 and constitutes the best notice practicable under the circumstances, including direct individual notice by mail and email to Settlement Class Members where feasible and a nationwide publication website-based notice program, as well as establishing a Settlement Website at the web address of www.AaronsTCPASettlement.com, and satisfies fully the requirements the Federal Rules of Civil Procedure, the U.S. Constitution, and any other applicable law, such that the Settlement Agreement and Final Order and Judgment will be binding on all Settlement Class Members.

***CUMMINGS v. BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO, ET AL.***

**Case No. D-202-CV-2001-00579**

The Honorable Carl Butkus, Second Judicial District Court, County of Bernalillo, State of New Mexico (March 30, 2020): The Court has reviewed the Class Notice, the Plan of Allocation and Distribution and Claim Form, each of which it approves in form and substance. The Court finds that the form and methods of notice set forth in the Agreement: (i) are reasonable and the best practicable notice under the circumstances; (ii) are reasonably calculated to apprise Settlement Class Members of the pendency of the Lawsuit, of their rights to object to or opt-out of the Settlement, and of the Final Approval Hearing; (iii) constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet the requirements of the New Mexico Rules of Civil Procedure, the requirements of due process under the New Mexico and United States Constitutions, and the requirements of any other applicable rules or laws.

***SCHNEIDER, ET AL. v. CHIPOTLE MEXICAN GRILL, INC.***

**Case No. 4:16-cv-02200**

The Honorable Haywood S. Gilliam, Jr., United States District Court, Northern District of California (January 31, 2020): Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign and provide for publication notice in People magazine, a nationwide publication, and the East Bay Times. SA § IV.A, C; Dkt. No. 205-12 at ¶¶ 13–23. The publication notices will run for four consecutive weeks. Dkt. No. 205 at ¶ 23. The digital media campaign includes an internet banner notice implemented using a 60-day desktop and mobile campaign. Dkt. No. 205-12 at ¶ 18. It will rely on "Programmatic Display Advertising" to reach the "Target Audience," Dkt. No. 216-1 at ¶ 6, which is estimated to include 30,100,000 people and identified using the target definition of "Fast Food & Drive-In Restaurants Total Restaurants Last 6 Months [Chipotle Mexican Grill]," Dkt. No. 205-12 at ¶ 13. Programmatic display advertising utilizes "search targeting," "category contextual targeting," "keyword contextual targeting," and "site targeting," to place ads. Dkt. No. 216-1 at ¶¶ 9–12. And through "learning" technology, it continues placing ads on websites where the ad is performing well. Id. ¶ 7. Put simply, prospective Class Members will see a banner ad notifying them of the settlement when they search for terms or websites that are similar to or related to Chipotle, when they browse websites that are categorically relevant to Chipotle (for example, a website related to fast casual dining or Mexican food), and when they browse websites that include a relevant keyword (for example, a fitness

website with ads comparing fast casual choices). Id. ¶¶ 9–12. By using this technology, the banner notice is "designed to result in serving approximately 59,598,000 impressions." Dkt. No. 205-12 at ¶ 18.

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." Roes, 944 F.3d at 1045 (citation omitted).

***HANLEY v. TAMPA BAY SPORTS AND ENTERTAINMENT LLC***

**Case No. 8:19-cv-00550**

The Honorable Charlene Edwards Honeywell, United States District Court, Middle District of Florida (January 7, 2020): The Court approves the form and content of the Class notices and claim forms substantially in the forms attached as Exhibits A-D to the Settlement. The Court further finds that the Class Notice program described in the Settlement is the best practicable under the circumstances. The Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's attorney's fees application and the request for a service award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process.

***CORCORAN, ET AL. v. CVS HEALTH, ET AL.***

**Case No. 4:15-cv-03504**

The Honorable Yvonne Gonzalez Rogers, United States District Court, Northern District of California (November 22, 2019): Having reviewed the parties' briefings, plaintiffs' declarations regarding the selection process for a notice provider in this matter and regarding Angeion Group LLC's experience and qualifications, and in light of defendants' non-opposition, the Court APPROVES Angeion Group LLC as the notice provider. Thus, the Court GRANTS the motion for approval of class notice provider and class notice program on this basis.

Having considered the parties' revised proposed notice program, the Court agrees that the parties' proposed notice program is the "best notice that is practicable under the circumstances." The Court is satisfied with the representations made regarding Angeion Group LLC's methods for ascertaining email addresses from existing information in the possession of defendants. Rule 23 further contemplates and permits electronic notice to class members in certain situations. See Fed. R. Civ. P. 23(c)(2)(B). The Court finds, in light of the representations made by the parties, that this is a situation that permits electronic notification via email, in addition to notice via United States Postal Service. Thus, the Court APPROVES the parties' revised proposed class notice program, and GRANTS the motion for approval of class notice provider and class notice program as to notification via email and United States Postal Service mail.

***PATORA v. TARTE, INC.***

**Case No. 7:18-cv-11760**

The Honorable Kenneth M. Karas, United States District Court, Southern District of New York (October 2, 2019): The Court finds that the form, content, and method of giving notice to the Class as described in Paragraph 9 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the Proposed Settlement, and their rights under the Proposed Settlement, including but not limited to their rights to object to or exclude themselves from the Proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clauses of the United States Constitution. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

***CARTER, ET AL. v. GENERAL NUTRITION CENTERS, INC., and GNC HOLDINGS, INC.***

**Case No. 2:16-cv-00633**

The Honorable Mark R. Hornak, United States District Court, Western District of Pennsylvania (September 9, 2019): The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise proposed Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the proposed Settlement Class. The Court finds that the notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, Rule 23 of the Federal Rules of Ci vii Procedure, and any other applicable laws.

***CORZINE v. MAYTAG CORPORATION, ET AL.***

**Case No. 5:15-cv-05764**

The Honorable Beth L. Freeman, United States District Court, Northern District of California (August 21, 2019): The Court, having reviewed the proposed Summary Notice, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

***MEDNICK v. PRECOR, INC.***

**Case No. 1:14-cv-03624**

The Honorable Harry D. Leinenweber, United States District Court, Northern District of Illinois (June 12, 2019): Notice provided to Class Members pursuant to the Preliminary Class Settlement Approval Order constitutes the best notice practicable under the circumstances, including individual email and mail notice to all Class Members who could be identified

through reasonable effort, including information provided by authorized third-party retailers of Precor. Said notice provided full and adequate notice of these proceedings and of the matter set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of F.R.C.P. Rule 23 (e) and (h) and the requirements of due process under the United States and California Constitutions.

***GONZALEZ v. TCR SPORTS BROADCASTING HOLDING LLP, ET AL.***

**Case No. 1:18-cv-20048**

The Honorable Darrin P. Gayles, United States District Court, Southern District of Florida (May 24, 2019): The Court finds that notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e)(1) and Rule 23(c)(2)(B).

***ANDREWS ET AL. v. THE GAP, INC., ET AL.***

**Case No. CGC-18-567237**

The Honorable Richard B. Ulmer Jr., Superior Court of the State of California, County of San Francisco (May 10, 2019): The Court finds that (a) the Full Notice, Email Notice, and Publication constitute the best notice practicable under the circumstances, (b) they constitute valid, due, and sufficient notice to all members of the Class, and (c) they comply fully with the requirements of California Code of Civil Procedure section 382, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.

***COLE, ET AL. v. NIBCO, INC.***

**Case No. 3:13-cv-07871**

The Honorable Freda L. Wolfson, United States District Court, District of New Jersey (April 11, 2019): The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order. The Court finds that the Notice Plan constitutes: (i) the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this…, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.

***DIFRANCESCO, ET AL. v. UTZ QUALITY FOODS, INC.***

**Case No. 1:14-cv-14744**

The Honorable Douglas P. Woodlock, United States District Court, District of Massachusetts (March 15, 2019): The Court finds that the Notice plan and all forms of Notice to the Class as set forth in the Settlement Agreement and Exhibits 2 and 6 thereto, as amended (the "Notice Program"), is reasonably calculated to, under all circumstances, apprise the members of the Settlement Class of the pendency of this action, the certification of the Settlement Class, the terms of the Settlement Agreement, and the right of members to object to the settlement or to exclude themselves from the Class. The Notice Program is consistent with the

Case 3:21-cv-02318-M Document 38-1 Filed 08/26/22 Page 195 of 201 PageID 496

requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

***IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION***

**Case No. 3:17-md-02777**

The Honorable Edward M. Chen, United States District Court, Northern District of California (February 11, 2019): Also, the parties went through a sufficiently rigorous selection process to select a settlement administrator. See Proc. Guidance for Class Action Sett. ¶ 2; see also Cabraser Decl. ¶¶ 9-10. While the settlement administration costs are significant – an estimated $1.5 million – they are adequately justified given the size of the class and the relief being provided.

In addition, the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media “marketing” – is the “best notice…practicable under the circumstances.” Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and “reminder” first-class mail notice when AEM becomes available).

Finally, the parties have noted that the proposed settlement bears similarity to the settlement in the Volkswagen MDL. See Proc. Guidance for Class Action Sett. ¶ 11.

***RYSEWYK, ET AL. v. SEARS HOLDINGS CORPORATION and SEARS, ROEBUCK AND COMPANY***

**Case No. 1:15-cv-04519**

The Honorable Manish S. Shah, United States District Court, Northern District of Illinois (January 29, 2019): The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and notice plan to be reasonable and the best practicable under the circumstances in its Preliminary Approval Order dated August 6, 2018. (Dkt. 191) Based on the declaration of Steven Weisbrot, Esq. of Angeion Group (Dkt. No. 209-2), which sets forth compliance with the Notice Plan and related matters, the Court finds that the multi-pronged notice strategy as implemented has successfully reached the putative Settlement Class, thus constituting the best practicable notice and satisfying due process.

***MAYHEW, ET AL. v. KAS DIRECT, LLC, and S.C. JOHNSON & SON, INC.***

**Case No. 7:16-cv-06981**

The Honorable Vincent J. Briccetti, United States District Court, Southern District of New York (June 26, 2018): In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr.



Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

***IN RE: OUTER BANKS POWER OUTAGE LITIGATION***

**Case No. 4:17-cv-00141**

The Honorable James C. Dever III, United States District Court, Eastern District of North Carolina (May 2, 2018): The court has reviewed the proposed notice plan and finds that the notice plan provides the best practicable notice under the circumstances and, when completed, shall constitute fair, reasonable, and adequate notice of the settlement to all persons and entities affected by or entitled to participate in the settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. Thus, the court approves the proposed notice plan.

***GOLDEMBERG, ET AL. v. JOHNSON & JOHNSON CONSUMER COMPANIES, INC.***

**Case No. 7:13-cv-03073**

The Honorable Nelson S. Roman, United States District Court, Southern District of New York (November 1, 2017): Notice of the pendency of the Action as a class action and of the proposed Settlement, as set forth in the Settlement Notices, was given to all Class Members who could be identified with reasonable effort, consistent with the terms of the Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law in the United States. Such notice constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

***HALVORSON v. TALENTBIN, INC.***

**Case No. 3:15-cv-05166**

The Honorable Joseph C. Spero, United States District Court, Northern District of California (July 25, 2017): The Court finds that the Notice provided for in the Order of Preliminary Approval of Settlement has been provided to the Settlement Class, and the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances, and was in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution, and any other applicable law. The Notice apprised the members of the Settlement Class of the pendency of the litigation;

of all material elements of the proposed settlement, including but not limited to the relief afforded the Settlement Class under the Settlement Agreement; of the res judicata effect on members of the Settlement Class and of their opportunity to object to, comment on, or opt-out of, the Settlement; of the identity of Settlement Class Counsel and of information necessary to contact Settlement Class Counsel; and of the right to appear at the Fairness Hearing. Full opportunity has been afforded to members of the Settlement Class to participate in the Fairness Hearing. Accordingly, the Court determines that all Final Settlement Class Members are bound by this Final Judgment in accordance with the terms provided herein.

***IN RE: ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION***

**MDL No. 2669/Case No. 4:15-md-02669**

The Honorable John A. Ross, United States District Court, Eastern District of Missouri (July 21, 2017): The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —is the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process.

The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

***TRAXLER, ET AL. v. PPG INDUSTRIES INC., ET AL.***

**Case No. 1:15-cv-00912**

The Honorable Dan Aaron Polster, United States District Court, Northern District of Ohio (April 27, 2017): The Court hereby approves the form and procedure for disseminating notice of the proposed settlement to the Settlement Class as set forth in the Agreement. The Court finds that the proposed Notice Plan contemplated constitutes the best notice practicable under the circumstances and is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e). In addition, Class Notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Settlement Class; (iii) the claims and issues of the Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Case 3:21-cv-02318-M Document 36-1 Filed 08/26/22 Page 198 of 201 PageID 499

***IN RE: THE HOME DEPOT, INC., CUSTOMER DATA SECURITY BREACH LITIGATION***

**Case No. 1:14-md-02583**

The Honorable Thomas W. Thrash Jr., United States District Court, Northern District of Georgia (March 10, 2017): The Court finds that the form, content, and method of giving notice to the settlement class as described in the settlement agreement and exhibits: (a) constitute the best practicable notice to the settlement class; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by settlement class members.

***ROY v. TITEFLEX CORPORATION t/a GASTITE and WARD MANUFACTURING, LLC***

**Case No. 384003V**

The Honorable Ronald B. Rubin, Circuit Court for Montgomery County, Maryland (February 24, 2017): What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make decision. To me that is a key piece of this deal. ***I think the notice provisions are exquisite*** [emphasis added].

***IN RE: LG FRONT LOADING WASHING MACHINE CLASS ACTION LITIGATION***

**Case No. 2:08-cv-00051**

The Honorable Madeline Cox Arleo, United States District Court, District of New Jersey (June 17, 2016): This Court further approves the proposed methods for giving notice of the Settlement to the Members of the Settlement Class, as reflected in the Settlement Agreement and the joint motion for preliminary approval. The Court has reviewed the notices attached as exhibits to the Settlement, the plan for distributing the Summary Notices to the Settlement Class, and the plan for the Publication Notice's publication in print periodicals and on the internet, and finds that the Members of the Settlement Class will receive the best notice practicable under the circumstances. The Court specifically approves the Parties' proposal to use reasonable diligence to identify potential class members and an associated mailing and/or email address in the Company's records, and their proposal to direct the ICA to use this information to send absent class members notice both via first class mail and email. The Court further approves the plan for the Publication Notice's publication in two national print magazines and on the internet. The Court also approves payment of notice costs as provided in the Settlement. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy.

*FENLEY v. APPLIED CONSULTANTS, INC.*

**Case No. 2:15-cv-00259**

The Honorable Mark R. Hornak, United States District Court, Western District of Pennsylvania (June 16, 2016): The Court would note that it approved notice provisions of the settlement agreement in the proceedings today. That was all handled by the settlement and administrator Angeion. The notices were sent. The class list utilized the Postal Service's national change of address database along with using certain proprietary and other public resources to verify addresses. the requirements of Fed.R.Civ.P. 23(c)(2), Fed.R.Civ.P. 23(e) (l), and Due Process....

The Court finds and concludes that the mechanisms and methods of notice to the class as identified were reasonably calculated to provide all notice required by the due process clause, the applicable rules and statutory provisions, and that the results of ***the efforts of Angeion were highly successful and fulfilled all of those requirements*** [emphasis added].

*FUENTES, ET AL. v. UNIRUSH, LLC d/b/a UNIRUSH FINANCIAL SERVICES, ET AL.*

**Case No. 1:15-cv-08372**

The Honorable J. Paul Oetken, United States District Court, Southern District of New York (May 16, 2016): The Court approves, as to form, content, and distribution, the Claim Form attached to the Settlement Agreement as Exhibit A, the Notice Plan, and all forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B-D, thereto, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated to, under all circumstances, reasonably apprise members of the Settlement Class of the pendency of the Actions, the terms of the Settlement Agreement, and the right to object to the settlement and to exclude themselves from the Settlement Class. The Parties, by agreement, may revise the Notices and Claim Form in ways that are not material, or in ways that are appropriate to update those documents for purposes of accuracy or formatting for publication.

*IN RE: WHIRLPOOL CORP. FRONTLOADING WASHER PRODUCTS LIABILITY LITIGATION*

**MDL No. 2001/Case No. 1:08-wp-65000**

The Honorable Christopher A. Boyko, United States District Court, Northern District of Ohio (May 12, 2016): The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

*SATERIALE, ET AL. v. R.J. REYNOLDS TOBACCO CO.*

**Case No. 2:09-cv-08394**

The Honorable Christina A. Snyder, United States District Court, Central District of California (May 3, 2016): The Court finds that the Notice provided to the Settlement Class pursuant to

the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.

***FERRERA, ET AL. v. SNYDER'S-LANCE, INC.***

**Case No. 0:13-cv-62496**

The Honorable Joan A. Lenard, United States District Court, Southern District of Florida (February 12, 2016): The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.

***IN RE: POOL PRODUCTS DISTRIBUTION MARKET ANTITRUST LITIGATION***

**MDL No. 2328/Case No. 2:12-md-02328**

The Honorable Sarah S. Vance, United States District Court, Eastern District of Louisiana (December 31, 2014): To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web- based forms of communication in the plan. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process. The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement. Moreover, the plan to combine notice for the Zodiac and Hayward settlements should streamline the process and avoid confusion that might otherwise be caused by a proliferation of notices for different settlements. Therefore, the Court approves the proposed notice forms and the plan of notice.

***SOTO, ET AL. v. THE GALLUP ORGANIZATION, INC.***

**Case No. 0:13-cv-61747**

The Honorable Marcia G. Cooke, United States District Court, Southern District of Florida (June 16, 2015): The Court approves the form and substance of the notice of class action settlement described in ¶ 8 of the Agreement and attached to the Agreement as Exhibits A, C and D. The proposed form and method for notifying the Settlement Class Members of the settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall

constitute due and sufficient notice to all persons and entities entitled to the notice. The Court finds that the proposed notice is clearly designed to advise the Settlement Class Members of their rights.

***OTT v. MORTGAGE INVESTORS CORPORATION OF OHIO, INC.***

**Case No. 3:14-cv-00645**

The Honorable Janice M. Stewart, United States District Court, District of Oregon (July 20, 2015): The Notice Plan, in form, method, and content, fully complies with the requirements of Rule 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled thereto. The Court finds that the Notice Plan is reasonably calculated to, under all circumstances, reasonably apprise the persons in the Settlement Class of the pendency of this action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the Settlement Class.